UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

National Women's Law Center, *et al.*,

    *Plaintiffs*,

vs.

Office of Management and Budget, *et al.*,

    *Defendants*.

Civil Action No. 17-2458 (TSC)

### DECLARATION OF ANDREA JOHNSON

I, ANDREA JOHNSON, declare as follows:

1. I am Senior Counsel for State Policy at the National Women's Law Center (NWLC) in Washington, D.C. The statements made in this declaration are based on my personal knowledge, materials I have reviewed, and information made available to me pursuant to my duties at NWLC.

2. I submit this declaration in support of Plaintiffs' Motion for Summary Judgment in *National Women's Law Center v. Office of Management and Budget*, Civil No. 17-2458 (DDC). The lawsuit challenges the Office of Management and Budget's August 29, 2017 decision to review and stay a previously approved revision by the Equal Employment Opportunity Commission to the "Employer Information Report EEO-1" (EEO-1), to collect pay data from employers in addition to the long-standing collection of data regarding sex, race, ethnicity and job category.

1

3. NWLC is a 46-year-old nonpartisan, nonprofit organization that advocates for the rights of women and girls at school, at work, at home, and in their communities. It is based in Washington, DC.

4. One of NWLC's primary and longstanding priorities is closing the gender wage gap, and in particular the race and gender wage gaps experienced by women of color.

5. Part of NWLC's mission is to educate employers, the public, and policymakers about race and gender wage gaps. In pursuit of this mission, NWLC has published numerous analyses and reports about workplace pay disparities. For example, NWLC has published the following reports: The Wage Gap State by State: 2012 Fact Sheets (April 2012); 50 Years & Counting: The Unfinished Business of Achieving Fair Pay (2013); Women, the Minimum Wage, and the Wage Gap, State by State (August 2015); The Wage Gap Over Time (September 2015); Equal Pay For Latinas (October 2016); Women and the Lifetime Wage Gap: How Many Woman Years Does it Take to Equal 40 Man Years? (April 2017); Asking for Salary History Perpetuates Pay Discrimination from Job to Job (July 2017); Union Membership is Critical for Equal Pay (March 2018); Women Experience a Wage Gap in Nearly Every Occupation (April 2018); Promoting Pay Transparency to Fight the Gender Wage Gap: Creative International Models (June 2018); The Wage Gap for Black Women: Working Longer and Making Less (August 2018). Many of these reports cite data on pay inequality across a number of factors and reflect time-consuming analysis of Bureau of Labor Statistics and Census data undertaken by NWLC staff.

6. NWLC was aware that the EEOC planned to publish aggregate pay data based on the revised EEO-1 pay data collection. This aggregate data would have potentially revealed new information about the occupational categories, industries, and locations experiencing the largest

race and gender wage gaps. If NWLC had access to this information, it would have been able to make its reports and advocacy more robust with additional data and analysis.

7. Access to the aggregate EEO-1 pay data would also have made it possible for NWLC to focus its resources, analysis, and advocacy on the jobs, industries, and regions where intervention is most urgent. Without this information, it is more difficult for NWLC to analyze race and gender pay gaps, educate the public, and target advocacy efforts and other interventions to the most urgent problems.

8. The EEO-1 pay data collection also would have benefitted NWLC's pro bono representation of individual clients with workplace discrimination claims. NWLC is frequently asked to assist individuals with potential pay discrimination claims, and typically agrees to provide pro bono advice and/or representation in one or more cases each year. For example, NWLC currently represents a female machine operator who has filed an EEOC charge for pay discrimination against a large manufacturing company that employs few women in this role.

9. Access to aggregated industry-specific data would help NWLC evaluate the strength of a pay discrimination claim and its potential for success.

10. Moreover, employer level pay data is probative evidence that may convince the EEOC to take action or prove the claim's merit to a court or jury. Because NWLC represents its clients pro bono, it must bear the costs of amassing evidence about internal pay inequities and comparators' pay practices to obtain any redress through the EEOC or in a court. For instance, in the case described above, NWLC has expended significant effort seeking to obtain and piece together information about pay practices across the manufacturing company.

11. The EEO-1 pay data collection would have provided information that would help NWLC represent its clients. If aggregate employee pay data were available as planned by the

EEOC, the availability of that data would reduce the costs to NWLC associated with representing individual clients in the EEOC charge process and beyond. In addition, because aggregate sector-wide data would be available, NWLC would have a readily available benchmark against which it could compare an employer's allegedly discriminatory practices. Because the EEOC would have employer-specific data, NWLC would be able to request that the EEOC consider an employer's pay disparities at the charge stage, opening an avenue of redress to individuals who otherwise would lack the data to show discrimination and increasing the likelihood that the charge could be resolved through the EEOC investigatory and conciliation process.

12. Following the stay of the EEO-1 pay data collection, NWLC has expended funding and staff time that would have been unnecessary absent the stay. NWLC has expended this time to engage with employers to encourage voluntary compliance with equal pay laws and changes in compensation practices and policies, including voluntary self-audits of pay practices and internal wage gaps, in order to compensate for the self-evaluation of internal wage gaps that the EEO-1 pay data collection would have required employers to undertake.

13. Further, following the stay of the EEO-1 pay data collection, in order to meet the objective of improved enforcement of pay discrimination laws and increased self-evaluation by employers of their own pay practices, NWLC has expended and will expend funding and staff time to create model state and/or local pay data collection legislation; create educational materials setting out the need for such pay data collection and the interests it serves; build coalition and grassroots support in targeted states and/or localities for these measures; and advocate at the state and local level for adoption and full implementation of such legislation. For example, NWLC organized a webinar for state legislators and advocates from across the

country that highlighted the importance of state and local pay data collection and reporting efforts in light of the stay of the EEO-1 pay data collection. NWLC worked closely with advocates and legislators in several states, including New Jersey, Rhode Island, and California, to educate them about the importance of pay data collection and reporting, and to draft legislation requiring employers to collect and report pay data. In addition, NWLC provided talking points and/or testimony in support of such legislation in California, New Jersey, Rhode Island, and Maryland.

14. NWLC is compelled to take these steps in order to pursue its mission of eradicating the pay gap.

15. As a result, NWLC staff members have diverted time away from daily operations. Several of NWLC's personnel have devoted additional time to pay data collection issues since the stay was issued, shifting them away from activity on other issues at the core of NWLC's day-to-day mission. For example, NWLC staff's ability to engage in significant federal advocacy, and produce educational and advocacy materials in support of strengthened protections against pregnancy discrimination —important work in which NWLC has long been engaged —has been hampered by the diversion of resources to issues related to equal pay and pay data collection.

16. In addition, NWLC staff were diverted from preparing the "know your rights" and legal education materials addressing issues of workplace discrimination that are key to the ultimate success of its Legal Network for Gender Equity because of the resources absorbed by reacting to the stay.

***

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing declaration is true and correct to the best of my knowledge, information, and belief.

Executed on October 31, 2018, in Washington, D.C.

*Andrea G. Johnson*
ANDREA JOHNSON