UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

National Women's Law Center, *et al.*,

    *Plaintiffs*,

vs.

Office of Management and Budget, *et al.*,

    *Defendants*.

Civil Action No. 17-2458 (TSC)

## DECLARATION OF HECTOR E. SANCHEZ

I, Hector E. Sanchez, declare as follows:

1. My name is Hector E. Sanchez. I am the Executive Director of the Labor Council for Latin American Advancement (LCLAA). The statements made in this declaration are based on my personal knowledge, materials I have reviewed, and information made available to me pursuant to my duties at LCLAA.

2. I submit this declaration in support of Plaintiffs' Motion for Summary Judgment in *National Women's Law Center v. Office of Management and Budget*, Civil No. 17-2458 (DDC). The lawsuit challenges the Office of Management and Budget's August 29, 2017 decision to review and stay a previously approved revision by the Equal Employment Opportunity Commission to the "Employer Information Report EEO-1" (EEO-1), to collect pay data from employers in addition to the long-standing collection of data regarding sex, race, ethnicity and job category.

3. LCLAA is a national 501(c)(3) representing the interests of approximately 2 million Latino/a trade unionists throughout the United States and Puerto Rico, as well as other

1

non-unionized Latino workers. Its headquarters is in Washington, DC, and it has 52 chapters around the country.

4. LCLAA was founded in 1972 by local Latino trade union committees to promote participation by Hispanic trade unionists. Its mission is to assist workers to advance their rights in their workplace and convince employers to take steps to improve working conditions, both through advocacy and through training and counseling workers and union members. LCLAA's dues-paying membership includes individual workers, union members, and students. LCLAA helps its members to pursue their common goal of improving the working conditions of Latino and Latina employees, both at individual employers and throughout the economy.

5. Closing the pay gap has been an increasing focus of LCLAA's work in recent years. The pay gap burdens Latinas especially as they experience the largest gender wage gap of any group of working women in the United States.

6. In 2012, LCLAA created the Trabajadoras Initiative,[1] which specifically seeks to protect and advance the interests of Latina workers on issues that impact them, including seeking to eradicate the persistent pay gap. In 2012, LCLAA passed a resolution calling on the AFL-CIO and its affiliates to conduct advocacy and outreach aimed at eradicating pay discrimination. LCLAA has passed subsequent resolutions related to fair pay, along with reaffirming its commitment to protecting and defending the rights of Latina workers in all sectors and industries across the United States. Among other things, the most recent resolution reaffirmed this priority and LCLAA's commitment to "work in partnership with Trabajadoras to win the full range of labor rights" from employers and governments.

7. At the national and Chapter level, LCLAA does work to educate its members about the pay gap and how to use collective action and organizing to close this pay gap. In

---

[1] "Trabajadoras" translates to "working women."

addition, it has both led and supported campaigns aimed at raising awareness about the pay gap as well as potential solutions. Among these, LCLAA launched its Trabajadoras initiative in 2012 to meet the unique needs of Latina workers, including an emphasis on obtaining equal pay for Latinas. The strategy of Trabajadoras combines grassroots mobilizing, research, and education. This initiative includes a fellowship program to empower Latina workers by providing them with the information they need to improve their working conditions and organizing Latina workers to advance their priorities, including obtaining equal pay. This one-year fellowship program provides trainings to promote gender equity, engagement in coalition building, participation and coordination of civic engagement efforts, and increased awareness about Latina worker priorities, including closing the gender wage gap. Our Trabajadoras Fellows engage with LCLAA chapters across the country and provide similar trainings for members.

8. LCLAA has also trained its Chapter Presidents about the pay gap and the Chapter leadership has shared this information with their membership and mobilized members to act on the ground in states around the country. Beginning in 2016, and continuing to the present, LCLAA has hosted an annual National Latina Equal Pay Summit, which provides information, education and solutions to closing the pay gap. The 2018 Summit is scheduled for November 1, 2018 in Atlanta, Georgia.

9. LCLAA periodically issues reports to educate workers, employers, and union leaders about the challenges encountered by Latinos and Latinas in the workforce. The reports discuss data compiled and published by the Government on income and employment—including EEO-1 data.[2] LCLAA uses these reports in advocating for policy change and enforcement of

---

[2] *See, e.g., Trabajadoras: Challenges and Conditions of Latina Workers in the United States*, Labor Council for Latin American Advancement (2012) at 30.

3

equal pay laws, and in educating its members on ways to negotiate with employers and encourage them to follow practices that reduce workforce discrimination.

10. LCLAA was aware that the EEOC planned to publish aggregate pay data based on the revised EEO-1 pay data collection, as has been the EEOC's longstanding practice.

11. Had the revised EEO-1 aggregate pay data been available, as planned, in upcoming reports, LCLAA would have presented statistics on pay equity within industries and across the nation, based on this data. This information would have materially improved LCLAA's and its members' ability to negotiate with and educate employers and to fulfill LCLAA's mission of improving the condition of Latinos and Latinas in the workforce.

12. The stay of the revised EEO-1 makes that plan impossible, impeding LCLAA's plans. To replicate the same information LCLAA would obtain from the revised EEO-1, LCLAA would have to convince thousands of employers to voluntarily provide data and then employ statisticians to analyze the resulting raw data—efforts that would require enormous expense and *still* likely be unsuccessful, given LCLAA's inability to require employers to comply. Without the revised EEO-1 pay data collection, any attempt to compile such data would almost certainly underreport pay inequities, because employers with significant disparities would be particularly unlikely to provide data voluntarily.

13. Because the revised EEO-1's aggregate pay data is unavailable, LCLAA is pursuing the possibility of conducting surveys of workers on Latina pay equity issues. LCLAA has obtained initial cost estimates for such a survey, which suggests that the survey will be very costly. LCLAA currently is exploring how to fund it. They stay requires that any survey include detailed questions on pay equity that would be unnecessary (or, at a minimum, significantly less urgent) if the annual EEO-1 reports included aggregate pay data in addition to its general

aggregate demographic information. The inclusion of such questions will increase the cost of the design, implementation, and analysis of the surveys.

14. The stay of the revised EEO-1 forced LCLAA to redeploy its limited staff resources away from their daily operations.

15. Initially, each of LCLAA's employees had to spend time working on responses to the stay, from discussions related to the Latino/a worker survey and contract development discussed above to explaining the implications of the change to Chapter presidents and other members. This has restricted LCLAA's ability to carry out its daily operations. For example, LCLAA recently launched a first-of-its-kind fellowship for Latina workers, the Latina Gender Equity Fellowship. The first class of Fellows began their fellowships on November 1, 2017. LCLAA was not able to spend needed time to do necessary follow up and additional project development because the personnel it had intended to deploy to work on these matters have instead needed to engage in activity related to the EEO-1 pay data collection, including the survey, contracting, and other responses discussed above.

16. Similarly, LCLAA had planned to work on educational materials related to the NAFTA renegotiations, including its impact on women, to help its members understand its implications for Latino/a workers. This type of educational initiative is a core and common part of LCLAA's daily operations—but LCLAA was not able to engage in those tasks following the stay of the EEO-1 pay data collection because it was working on the tasks described above.

***

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing declaration is true and correct to the best of my knowledge, information, and belief.

Executed on October 29, 2018, in Washington, D.C.

_____
Hector E. Sanchez