UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*,<br><br>   *Plaintiffs*,<br><br>  vs.<br><br>OFFICE OF MANAGEMENT AND BUDGET, *et al.*,<br><br>   *Defendants*. | Civil Action No. 17-2458 (TSC) |

**PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINSTRATIVE RECORD AND MEMORANDUM IN SUPPORT**

**Introduction And Background**

  Plaintiffs hereby move to compel completion of the Administrative Record in this case.[1] Plaintiffs have identified a discrete collection of records that the Office of Management and Budget ("OMB") must have considered when it decided to review and stay its prior approval of the Equal Employment Opportunity Commission's ("EEOC") revised EEO-1 Report, and which were not included in the Administrative Record compiled by Defendants. *See* Dkt. No. 25-1 (including a Declaration of Dominic J. Mancini ("Mancini Decl.") attaching the Administrative Record Index ("AR Index"), and a Declaration of Victoria A. Lipnic ("Lipnic Decl.")).

  OMB issued the review and stay decision with a short memorandum (the "Rao Memorandum"), in which it asserted that the post-approval release of document formatting

---

[1] Plaintiffs sought to meet and confer with Defendants regarding this motion pursuant to Local Civil Rule 7(m) by email on January 8, 2019. Defendants' counsel declined to do so in light of their furloughed status, resulting from the lapse in federal appropriations.

1

instructions ("data file specifications") justified its reversal in position regarding a long-planned collection of pay data that the EEOC had found necessary to enforce the nation's antidiscrimination laws.[2] The documents that Plaintiffs now request be included in the Administrative Record are all EEOC or OMB records that bear directly on the sufficiency of OMB's justification for its decision. Specifically, Plaintiffs request that the Court order that the Administrative Record be completed with the following documents:

1. Exhibits A-G to the Declaration of Benjamin Link. *See* Dkt. No. 22-2. These are archived EEOC webpages that are directly related to OMB's original approval of the EEO-1 Report and the data file specifications cited by OMB in the Rao Memorandum. Exhibit A is the EEOC's sample data collection form, to which the EEOC's Sixty-Day Federal Register Notice linked. Link Decl. ¶ 4, Ex. A. Exhibit B is a webpage that EEOC published after OMB's approval of the pay data collection titled "2017 EEO-1 Survey." Link Decl. ¶ 5, Ex. B. That webpage, the 2017 EEO-1 Survey landing page, provides weblinks to other webpages, including: (1) a revised EEO-1 Instruction Booklet, (2) a data file layout for the 2017 EEO-1 survey, (3) a sample 2017 EEO-1 form (both under the heading "Data File Specifications"), (4) a questions and answers page, and (5) a fact sheet for small businesses. Archived versions of the webpages to which these five weblinks direct are attached to the Link Declaration as Exhibits C-G. Link Decl. ¶ 6-10, Exs. C-G.

2. An April 14, 2017 memorandum from Peggy Mastroianni to Acting Chair Lipnic regarding EEOC's Response to EEAC's Argument that Relevant Circumstances Have Changed

---

[2] The complete legal and factual background is set forth in Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment at 3-12 ("Pls.' Mem."), Dkt. No. 22-1 .

After OMB's Approval of the EEO-1 Report. *See* Declaration of Lenora M. Lapidus, attached hereto, Ex. A.

3.   The correspondence referenced in the Declarations of Dominic Mancini and Acting Chair Lipnic, *see* Dkt. No. 25-1, relied on in Defendants' Cross-Motion for Summary Judgment ("Defs.' Mem."), *see* Dkt. No. 27.

As set forth below, caselaw in this Circuit requires the inclusion of the above materials (collectively the "excluded material") in the Record.

## Standard Of Review

When a court reviews an agency's action under the Administrative Procedure Act ("APA"), it must "review the whole record or those parts of it cited by a party." 5 U.S.C. § 706; *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971) ("[R]eview is to be based on the full administrative record that was before the Secretary at the time he made his decision."). A reviewing court "should have before it neither more nor less information than did the agency when it made its decision." *IMS, P.C. v. Alvarez,* 129 F.3d 618, 623 (D.C. Cir. 1997). Reviewing "less than the full administrative record" might "allow a party to withhold evidence unfavorable to its case." *Walter O. Boswell Mem'l Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C. Cir. 1984). "Agencies bear the responsibility of compiling the administrative record, which must include all of the information that the agency considered 'either directly or indirectly.'" *Univ. of Colo. Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12 (D.D.C. 2015) (quoting *Marcum v. Salazar,* 751 F. Supp. 2d 74, 78 (D.D.C. 2010)).

A party may seek to supplement the record produced by the agency in "one of two ways." *WildEarth Guardians v. Salazar,* 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009). First, a party may seek to include "evidence that should have been properly a part of the administrative record but was excluded by the agency." *Id.* In such a case, supplementation is appropriate if the agency "did

3

not include materials that were part of its record, whether by design or accident." *Marcum,* 751 F. Supp. 2d at 78. A plaintiff may establish such circumstances by putting forth "concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Id.* (citation omitted). The plaintiff should identify the allegedly omitted material "with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record." *Banner Health v. Sebelius*, 945 F. Supp. 2d 1, 17 (D.D.C. 2013). *See also Univ. of Colo. Health*, 151 F. Supp. at 12. For clarity, Plaintiffs will refer to this standard for supplementation as "completing" the Administrative Record.

The second method for supplementation regards "extra-judicial evidence that was not initially before the agency but [which] the party believes should nonetheless be included in the administrative record[.]" *WildEarth Guardians,* 670 F.Supp.2d at 5 n.4. Such circumstances require a showing of one of three "unusual circumstances." *Am. Wildlands v. Kempthorne,* 530 F.3d 991, 1002 (D.C. Cir. 2008). Those circumstances include: (1) when "the agency 'deliberately or negligently excluded documents that may have been adverse to its decision,'" (2) when "background information [is] needed 'to determine whether the agency considered all the relevant factors,'" and (3) when "the 'agency failed to explain administrative action so as to frustrate judicial review.'" *City of Dania Beach v. FAA,* 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting *Am. Wildlands,* 530 F.3d at 1002). Plaintiffs will refer to this standard as supplementing the Administrative Record.[3]

---

[3] Litigants have at times used the term "supplement" to refer both to completing a record with information that was in fact before the agency at the time of decision and to adding extra-record evidence that was not before the agency, causing some confusion between the standards. As courts in this district recently have clarified, the unusual circumstances requirement is best interpreted to apply only to the latter type of supplementation—adding extra-record

4

**Argument**

The excluded material was all before OMB at the time that it issued the decision to review and stay its prior approval of EEOC's pay data collection. Plaintiffs have put forward evidence that OMB considered this material, compelling the conclusion that the excluded material is therefore required to complete the Administrative Record. Even if the Court were to determine otherwise, the Record should be supplemented with the excluded material because Plaintiffs have shown the "unusual circumstances" necessary to do so.

I.   **OMB Had Considered The Excluded Material At The Time It Stayed The Pay Data Collection.**

All three categories of excluded material were before OMB when it issued the Rao Memorandum and OMB considered the material in its decisionmaking process. Plaintiffs have identified the material with specificity, either by attaching the excluded documents to their filings, or by referring to documents referenced in Defendants' declarations. The excluded material should therefore be added to complete the Administrative Record.

   A.   **Archived EEOC Webpages Attached To Plaintiffs' Motion For Summary Judgment.**

Plaintiffs first request that the Record be completed with archived EEOC webpages providing information to employers regarding the data to be collected by the revised EEO-1. As explained in Plaintiffs' concurrently filed Reply in Support of Their Motion for Summary Judgment and Opposition to Defendants' Cross-Motion for Summary Judgment ("Pls.' Reply Mem."), these documents are properly understood to be part of the Administrative Record

---

information—because "for judicial review to be effective, materials that were before the agency should be included in the administrative record irrespective of whether those materials are adverse to the agency's decision or otherwise satisfy any of the three unusual circumstances." *Univ. of Colo. Health*, 151 F. Supp. 3d at 14 (quotation omitted).

already, due to Defendants' catchall inclusion of "[m]aterials related to OMB's 2016 approval of the EEO-1 form" in the Record. *See* Pls.' Reply Mem. at 19 n. 6. To the extent Defendants dispute that these documents are part of the existing Administrative Record, however, Plaintiffs request that they be added to complete the Record.

One of these webpages is a sample data collection form to which the EEOC's Sixty-Day Notice in the Federal Register links. Link Decl. ¶ 4, Ex. A. Because Defendants agree that the Sixty-Day Notice itself is part of the Record, AR Index at VI.a, government webpages to which it links should appropriately be treated as an intrinsic part of the Notice.[4]

Second, Plaintiffs have identified a webpage published by EEOC after OMB's approval of the pay data collection titled "2017 EEO-1 Survey." Link Decl. ¶ 5, Ex. B. This webpage links to the "data file specifications" cited by the Rao Memorandum as the basis for its decision, among other explanatory information for employers. Link Decl. ¶¶ 7-8, Exs. D-E; *see also id.* ¶¶ 6, 9-10, Exs. C & F-G. The Rao Memorandum's reliance on the supposed burden imposed by the post-approval release of the data file specifications establishes that the data file specifications themselves and the related explanatory material provided by EEOC on these webpages were considered by OMB in the decision to issue the review and stay. *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 79 (D.D.C. 2018) ("If a document was substantively cited, the [agency] clearly considered that document. After all, to know what the document said the [agency] had to at least

---

[4] Defendants have removed the original versions of these webpages from the Internet, but Plaintiffs obtained archived copies from the Internet Archive (Wayback Machine) at www.archive.org. Courts routinely take judicial notice of documents archived in the Internet Archive. *See, e.g.*, *Distributorsoutlet.com, LLC v. Glasstree, Inc.*, No. 11-cv-6079, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (collecting cases); *Erickson v. Neb. Mach. Co.*, No. 15-cv-1147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) (collecting cases). Defendants have not disputed the authenticity and accuracy of these documents, which were filed with Plaintiffs' Motion for Summary Judgment.

read it, and by citing the document to justify a substantive factual proposition, the [agency] is purporting to have relied on the document and its contents. As such, these documents were before the [agency] and belong in the administrative record."). Of course, if OMB failed to consider the data file specifications, yet relied on them anyway, then its substantive decision was necessarily arbitrary and capricious.

### B. April 14, 2017 Mastroianni Memorandum.

The April 14, 2017 memorandum from Peggy Mastroianni to Acting Chair Lipnic regarding "EEOC's Response to EEAC's Argument that Relevant Circumstances Have Changed After OMB's Approval of the EEO-1 Report," which Defendants produced in response to a Freedom of Information request, is also required to complete the Administrative Record. *See* Lapidus Decl., Ex. A. This memorandum analyzes concerns raised in a letter from the Equal Employment Advisory Council, OMB_0000305-311, and on which Defendants now assert they relied in issuing the review and stay—despite having introduced no Record evidence of any analysis thereof. Defs.' Mem. at 22-24.

The Memorandum was sent to the Acting Chair of the EEOC, EEOC's primary decisionmaker. The Acting Chair was directly involved in the interagency consultation process regarding the review and stay, as she set out in a declaration submitted in support of Defendants' Motion for Summary Judgment. *See* Lipnic Decl. ¶ 4. In addition, both that declaration and the Declaration of the Deputy Administrator of OMB's Office of Information and Regulatory Affairs, reference an EEOC memo "addressing third-party petition for rescission of component two of revised EEO-1 form," which was shared with OMB by email on July 14, 2017. Lipnic Decl. ¶ 4.d; Mancini Decl. ¶ 3. This appears to be a reference to the Mastroianni Memorandum. Moreover, the Acting Chair emailed the Deputy Administrator about the data collection the same day she received the Mastroianni Memorandum and over the following weeks, and met with the

7

Deputy Administrator and other OMB representatives less than three weeks later. Lipnic Decl. ¶¶ 4.c-d; Mancini Decl. ¶ 3. It is implausible that EEOC's principal written analysis of the question never arose in these communications and did not inform the Acting Chair's discussion of the question. It is therefore appropriate to conclude that the Mastrioanni Memorandum was either considered by OMB directly, as a result of the July 14, 2017 email, or indirectly, via Acting Chair Lipnic's knowledge of it and subsequent interagency discussion with OMB regarding the very same subject addressed in the Memorandum.[5]

### C.  Materials Identified in Defendants' Declarations.

Defendants argue that the Rao Memorandum is sufficiently detailed to explain the basis for its decision because it "summarizes the four months of meetings, emails, and conference calls between OMB and EEOC during which each issue underlying the Administrator's decision to review and stay was discussed." Defs.' Mem. at 30 (citing Mancini Decl., Lipnic Decl.). Yet neither the Rao Memorandum nor the Record now produced by Defendants reveal what OMB's actual analysis and conclusions (if any) were to justify its decision to review and stay the pay data collection. Defendants cannot ask the Court to accept their conclusory justifications while at the same time refusing to provide agency analysis that they assert supported those conclusions. *Kirwa v. U.S. Dep't of Def.*, 285 F. Supp. 3d 257, 270 (D.D.C. 2018).

Having put the Mancini and Lipnic Declarations, both of which reference information exchanged between the agencies, before the Court, Defendants certainly cannot contest that such information was considered by OMB in its decisionmaking process.  Nor can Defendants claim that substantive analysis or conclusions in the materials referenced by the Mancini and Lipnic

---

[5] Any privileged quality the Memorandum may once have had was waived as a result, among other reasons, of its release during the FOIA process.

Declarations may be withheld as deliberative, as they have now incorporated the analysis and conclusions from this interagency consultation process into their justification for their final decision. Defs.' Mem. at 30 (the Rao Memorandum "merely memorializes the concerns that the EEOC and OMB had already raised and discussed"); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975) (deliberative documents may lose their privileged character when an agency chooses to adopt or incorporate them by reference into its final document).

The Record should therefore be completed with the excluded material.

**II.   "Unusual Circumstances" Require Supplementing The Record With The Excluded Material.**

Even if the Court concludes that the excluded material does not meet the requirements for completing the Administrative Record, it should still grant Plaintiffs' request to supplement the Record, because Plaintiffs have shown "unusual circumstances." *City of Dania Beach*, 628 F.3d at 590 (quoting *Am. Wildlands*, 530 F.3d at 1002).

**A. OMB Deliberately Or Negligently Excluded Documents That May Have Been Adverse To The Review And Stay Decision.**

Of the excluded material, both the data file specifications and the related archived EEOC webpages attached to the Link Declaration and the Mastroianni Memorandum meet the first example of unusual circumstances—they were deliberately or negligently excluded documents that may have been adverse to OMB's decision. *City of Dania Beach*, 628 F.3d at 590. First, the documents plainly were adverse to OMB's decision to review and stay the pay data collection. The data file specifications (and associated webpages) reveal that the post-PRA approval release of the data file specifications could not have had a sufficient impact on EEO-1 filers to justify a review and stay. *See* Pls.' Mem. at 14-18; Pls.' Reply Mem. at 16-21. Similarly, review of the Mastroianni Memorandum reveals that it is adverse to OMB's decision, as it concludes:

9

> Publication of the file specifications after OMB's approval of the pay data collection is not a 'significant' change that warrants OMB's reconsideration. As noted above, EEOC indicated in the 30-day notice its intent to post updated specifications, and stated that it would provide support to employers and HRIS vendors as they transitioned to the new reporting requirements.  EEAC had notice of these data specifications, was probably familiar with the 2016 version, and had ample opportunity to raise questions or concerns before OMB's approval of the revised EEO-1, but did not do so.

Lapidus Decl., Ex. A at 2-3.

Second, both the archived EEOC webpages and the Mastroianni Memorandum are EEOC records in that agency's possession. They likely were obtained by OMB either in its interagency consultation with EEOC regarding the review and stay or its own internal analysis. Given their centrality to the issue OMB was considering, they certainly should have been obtained, barring negligence. Both of these categories of excluded material therefore meet the standard for unusual circumstances and should be added to the Administrative Record.

> **B. The Excluded Material Should Be Added To The Record Because It Is Required To Determine Whether OMB Considered All Relevant Factors And Because OMB Failed To Explain Its Review And Stay, Frustrating Judicial Review.**

As explained in Plaintiffs' summary judgment briefing, the Rao Memorandum is unacceptably conclusory. *See* Pls.' Mem. at 19-20, 25; Pls.' Reply Mem. at 14-15. While, as Plaintiffs explain, the failure to provide a reasoned explanation supports judgment in their favor, *see id*., should the Court conclude otherwise, supplementation with the excluded material is required to determine whether OMB considered all relevant factors when reaching its decision to review and stay the pay data collection. *Am. Wildlands*, 530 F.3d at 1002. Correspondingly, OMB's complete lack of explanation for its decision frustrates judicial review. *Id*. This conclusion is required because the Record is devoid of OMB reasoning. *See* Pls.' Reply Mem. at 17-27.  Under these circumstances, judicial review is impossible absent additional information in the Record.

First, the archived EEOC webpages and the Mastrioanni Memorandum provide specific information about the data file specifications upon which OMB based its decision and therefore meet these two factors in determining unusual circumstances. *See United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 5 (D.D.C. 2017) (record supplementation required because record provided by agency was insufficient to answer outstanding factual questions). Second, Defendants rely on the interagency consultation summarized in the Mancini and Lipnic Declarations to justify the brevity of the Rao Memorandum. Defs.' Mem. at 29-30. Since neither the Rao Memorandum itself nor the Record reveal any OMB analysis regarding the supposed burden imposed by the data file specifications or the other supposed justifications for the review and stay, adding these communications to the Record is necessary to determine what factors OMB did consider and to permit meaningful judicial review.

## Conclusion

Plaintiffs respectfully request that, should the Court determine that it cannot grant their motion for summary judgment based on the material presently before the Court, that the Court grant their motion to complete the administrative record. A proposed order is submitted herewith.

Dated: January 15, 2019

Respectfully submitted,

/s/ *Robin F. Thurston*
Robin F. Thurston (DC Bar No. 1531399)
Javier M. Guzman (DC Bar No. 462679)
Jeffrey B. Dubner (DC Bar No. 1013399)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
rthurston@democracyforward.org
jguzman@democracyforward.org
jdubner@democracyforward.org

Fatima Goss Graves (DC Bar No. 481051)
Emily J. Martin (DC Bar No. 991968)
Sunu Chandy (DC Bar No. 1026045)
Maya Raghu (DC Bar No. 1035558)
National Women's Law Center
11 Dupont Circle, NW, Ste 800
Washington, DC 20036
(202) 588-5180
fgraves@nwlc.org
emartin@nwlc.org
schandy@nwlc.org
mraghu@nwlc.org

*Attorneys for Plaintiffs*