**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

NATIONAL WOMEN'S LAW CENTER, *et al.*,

          *Plaintiffs*,

      v.

OFFICE OF MANAGEMENT AND BUDGET, *et al.*,

          *Defendants*.

---

No. 1:17-cv-02458 (TSC)

<u>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR IN THE
ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**</u>

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.  OMB'S DECISION TO INITIATE A REVIEW AND STAY OF COMPONENT 2
PENDING RECONSIDERATION IS A PRELIMINARY DECISION RENDERED IN
THE CONTEXT OF AN INFORMAL ADJUDICATION. ................................................. 2

II.  BECAUSE THE CHALLENGED RECONSIDERATION DECISION WAS RENDERED
AS THE FIRST STEP IN AN INFORMAL ADJUDICATION, PLAINTIFFS LACK
STANDING TO ASSERT THEIR CLAIMS. .................................................................... 5

III.  THE CHALLENGED RECONSIDERATION DECISION IS SUPPORTED BY
SUBSTANTIAL EVIDENCE AND IS NEITHER ARBITRARY NOR CAPRICIOUS.... 7

A.  OMB's Interpretation Of Its Own Regulations Is Entitled to Deference .................... 8

B.  Substantial Evidence Supports OMB's Decision to Initiate A Review and Stay of
Component 2 Pending Reconsideration. ................................................................. 13

IV.  THE DECISION TO INITIATE A REVIEW AND STAY OF COMPONENT 2 PENDING
RECONSIDERATION DOES NOT VIOLATE SECTION 3518(e) OF THE PRA. ........ 17

V.  THE PROPER REMEDY IN THIS CASE, IF ANY, IS TO REMAND TO THE AGENCY
FOR FURTHER EXPLANATION, WITHOUT VACATUR. .......................................... 18

CONCLUSION ...................................................................................................................... 19

## INTRODUCTION

In their opening brief, Defendants explained why Plaintiffs' challenge to an intermediate decision of the Office of Management and Budget ("OMB") to initiate a review and stay of a previously-approved collection of information ("Component 2") submitted by the Equal Employment Opportunity Commission ("EEOC") pending OMB's reconsideration fails as a matter of law. Plaintiffs lack standing to challenge a decision rendered in connection with administrative proceedings to which they are not a party (a deficiency that is all the more glaring given their inability to demonstrate an entitlement to obtain Component 2 pay data in the first instance). And, on the merits, Plaintiffs' claims fare no better because (1) OMB's interpretation of its own ambiguous regulations is entitled to deference and (2) substantial evidence supports OMB's decision to initiate a review and stay of Component 2 pending reconsideration.

In response, Plaintiffs recycle many of the arguments proffered in their opening brief. Plaintiffs spend an inordinate amount of brief territory attempting to convince the Court that OMB's interpretation of its regulations is flawed (or non-existent) and that the record does not support OMB's decision to initiate a review and stay of Component 2. But Plaintiffs' arguments regarding OMB's interpretation of its own regulations flounder in the face of settled case law holding that courts must defer to an agency's interpretation of its own ambiguous regulations unless the interpretation is plainly erroneous or inconsistent with the text of the regulations—a showing that Plaintiffs cannot meet here. And, Plaintiffs' insistence that the Rao Memorandum does not adequately articulate the bases for OMB's decision is belied by the content of the memorandum itself, which more than satisfies the "brief statement of denial" required by the Administrative Procedure Act ("APA").

Plaintiffs fare no better in their attempt to nitpick the record on which OMB issued its reconsideration decision in an effort to demonstrate that the challenged decision is arbitrary and

capricious.  As Defendants have previously explained, the Paperwork Reduction Act ("PRA") and its implementing regulations require OMB to monitor previously-approved collections of information for continued compliance.  The PRA further authorizes OMB to withdraw its approval or, as here, initiate a review and stay of the collection where, as here, the agency has determined that the requirements of § 1320.10 have been met.  In this PRA-specific context, a "reasonable fact-finder" would likely find that the record fully supports OMB's reconsideration decision for the reasons set forth in Defendants' opening brief and those articulated below.

Accordingly, because Plaintiffs' claims fail as a matter of law, the Court should dismiss this action, or in the alternative, grant summary judgment in favor of Defendants and deny Plaintiffs' motion for summary judgment.

## ARGUMENT

### I.  OMB'S DECISION TO INITIATE A REVIEW AND STAY OF COMPONENT 2 PENDING RECONSIDERATION IS A PRELIMINARY DECISION RENDERED IN THE CONTEXT OF AN INFORMAL ADJUDICATION.

"Agencies perform their administrative functions both through rulemaking and adjudication." *Neustar, Inc. v. FCC*, 857 F.3d 886, 893 (D.C. Cir. 2017).  Rulemakings "generally involve broad applications of more general principles rather than case-specific individual determinations."  *Id.*  "By contrast, agencies may use informal adjudications when they are not statutorily required 'to engage in the notice and comment process' or to 'hold proceedings on the record. . . .'"  *Id.*  (internal citation omitted).  OMB's decision to initiate a review and stay of the EEOC's Component 2 pay data as set forth in the Rao Memorandum was rendered in the context of an informal adjudication.  *See* Defs.' Mem. at 16-17, 29-30; *see also* 5 U.S.C. § 551(7) (defining adjudication as the "agency process for the formulation of an order").

Indeed, Plaintiffs do not point to, nor is there, either any statutory or regulatory provision requiring OMB "to engage in the notice and comment process," or any statutory or regulatory

provisions requiring the agency "to hold proceedings on the record."  *Neustar*, 857 F.3d at 893 (internal quotation marks and citation omitted).  The Rao Memorandum does not amend a prior legislative rule, nor does the memorandum invoke OMB's "general legislative authority." *Conference Grp., LLC v.  F.C.C.*, 720 F.3d 957, 965 (D.C. Cir. 2013).  Put another way, because the Rao Memorandum lacks "the hallmarks of legislative rulemaking," *see id.*, it falls into "the vast category of 'informal adjudications' in which agencies routinely engage."  *Safe Extensions, Inc. v. F.A.A.*, 509 F.3d 593, 604 (D.C. Cir. 2007).

Plaintiffs resist this conclusion, asserting that OMB's decision to initiate a review and stay of Component 2 pending reconsideration was not rendered in an adjudicative context because it does not have any retroactive effect.  *See* Pls.' Opp. at 3.  There is no merit to this argument.  As an initial matter, the D.C. Circuit has made clear that "although an adjudication by its nature is retroactive, it may be proper to enter an adjudicatory order without retroactive effect."  *Neustar*, 857 F.3d at 895; *see also id.* ("'By retroactive effect,' we are usually referring to an order or penalty with economic consequences, 'not retroactive application of the rule itself.'" (internal citation omitted)).  This is in contrast to "rules, which include 'an agency statement of . . .  future effect.'" *Id.* (internal citations omitted); *see also id*. at 893 ("Rulemaking scenarios generally involve broad applications of more general principles rather than case-specific individual determinations.").  In other words, "[t]his prospective-retroactive distinction consistently focuses on the application of principles in the past or future." *Id.*  at 896.

Here, OMB applied its existing regulations to the EEOC's previously-approved Component 2 pay data collection of information and concluded that a review and stay pending reconsideration was necessary to ensure continued compliance with the PRA and its regulatory requirements.  The Rao Memorandum, which memorializes this intermediate decision, does not

purport to announce any "new principles or rules" applicable to agencies seeking to obtain approval of a collection of information but rather, makes a "case-specific individual determination[]" that "relate[s] back" to the previously-approved Component 2 pay data collection of information and its continued compliance with the PRA. *Id.* at 893, 896; *see also Safari Club Int'l v. Zinke*, 878 F.3d 316, 333 (D.C. Cir. 2017) ("[A]djudications immediately bind parties by retroactively applying law to their past actions.").

Nor is OMB's decision to initiate a review and stay of Component 2 pending reconsideration intended "solely . . . to relieve employers of burdens associated with future collections." Pls.' Opp. at 3. To be sure, the challenged reconsideration decision has some "tangential impact" on employers whose obligation to submit Component 2 pay data is stayed pending OMB's reconsideration of any new information collection package submitted by the EEOC. *Neustar*, 857 F.3d at 895. But "some tangential impact on other [similarly-situated, non-party] entities [does not] necessarily transform an informal adjudication into a rulemaking since 'the nature of adjudication is that similarly situated non-parties may be effected by the policy or precedent applied, or even merely announced in dicta, to those before the tribunal.'" *Id.* (internal citation omitted); *see also Conference Grp.*, 702 F.3d at 966 ("The fact that an order rendered in an adjudication 'may affect agency policy and have general prospective application' . . . does not make it a rulemaking . . . ." (internal citation omitted)). This principle applies with even more force where, as here, Plaintiffs are not a "similarly-situated, non-party" in relation to the EEOC, the party involved in the underlying adjudicative proceedings. *See id.*

In short, the challenged reconsideration decision was rendered in the context of an informal adjudication and is an individualized (and preliminary), case-specific determination involving the EEOC. *See* AR OMB_0000299-300. The reconsideration decision is not intended to impact law

or policy but to ensure Component 2's continued compliance with the PRA and its regulatory requirements, *see* 44 U.S.C. § 3504(a)(1)(A), (a)(1)(B)(i), (c)(1); 5 C.F.R. § 1320.10(f), (g), the latter of which is evident by the Rao Memorandum's request that the EEOC submit "a new [Component 2] information collection package . . . to OMB for review."  AR OMB_0000300; *see also* 5 C.F.R § 1320.10(f).

## II.     BECAUSE THE CHALLENGED RECONSIDERATION DECISION WAS RENDERED AS THE FIRST STEP IN AN INFORMAL ADJUDICATION, PLAINTIFFS LACK STANDING TO ASSERT THEIR CLAIMS.

As Defendants explained in their opening summary judgment brief, Plaintiffs lack standing to challenge a preliminary decision issued in connection with an informal adjudication to which there are only two parties—OMB and the EEOC.  *See* Defs.' Mem. at 16-17 (citing *Conference Grp.* 720 F.3d at 963-64).  Plaintiffs do not dispute that they are not parties to the underlying administrative proceedings.  *See* Pls.' Opp. at 4-5.  Instead, they insist that notwithstanding their non-party status, they nevertheless have standing to challenge OMB's reconsideration decision because of its "immediate effect of relieving employers from their obligation to provide pay data." *Id.* at 4.  Plaintiffs are wrong.

First, a non-party to an informal adjudication has standing to sue only where the non-party can "'point to a particular imminent application of the disputed agency policy . . . the firmness of which is not in dispute, on a fast-arriving date certain.'"  *Conference Grp.*, 720 F.3d at 964 (internal citation omitted).  Plaintiffs have not demonstrated that they satisfy this test.  Plaintiffs do not contend that they face any risk of "an imminent application" of the disputed agency policy to themselves because they are not subject to the EEOC's disclosure requirements.  *See id.* (plaintiff lacks standing to challenge FCC order because it "does not identify any imminent [FCC] enforcement action against it").   Indeed, as Plaintiffs acknowledge, to the extent that the challenged reconsideration decision has any impact beyond the EEOC, it impacts employers'

obligation to disclose Component 2 pay data pending OMB's reconsideration decision. *See* Pls.'
Opp. at 4 ("Defendants' actions have and continue to have the immediate effect of relieving
employers from their obligation to provide pay data. . . ."). And, the fact that Plaintiffs are unable
to point to any statutory or regulatory provision requiring the disclosure of Component 2 pay data,
*see* Defs.' Mot. to Dismiss Mem. at 12-14, serves only to further buttress their inability to challenge
OMB's reconsideration decision due to a lack of standing.

It also bears mentioning that Plaintiffs are wrong on the "firmness" of OMB's decision to
initiate a review and stay of the EEOC's Component 2 pay data collection of information pending
reconsideration. *See Conference Grp.*, 720 F.3d at 964. As Defendants have previously explained
(and contrary to Plaintiffs' claims otherwise), the challenged reconsideration decision is *not* final
agency action within the meaning of the APA. *See* Defs.' Mot. to Dismiss Mem. at 20-29. Rather,
it is the first step in the agency's reconsideration process, *see* 5 C.F.R. § 1310.10(f), (g)—an
administrative process that includes the EEOC's discretion to determine how best to respond to
the concerns raised in the August 2017 Rao Memorandum and should culminate in a final
(reviewable) decision by OMB to approve or disapprove, or instruct the agency to make a
substantive or material change (a non-public, non-reviewable interim action). *See* Defs.' Mot. to
Dismiss Mem. at 24-26 (explaining that 5 C.F.R. Part 1320 governs the remaining steps in the
reconsideration process); *see also* 44 U.S.C. § 3507(e)(1). Thus, there is no merit to Plaintiffs'
assertion that OMB's application of the PRA can "*never* be challenged."[1] Pls.' Opp. at 5 (emphasis

---

[1] Plaintiffs' reliance on the Supreme Court's decision in *Dole v. United Steelworkers of America*,
494 U.S. 26 (1990), is misplaced. As an initial matter, *Dole* involved a challenge to OMB's final
(and thus reviewable) decision to disapprove three provisions of a Department of Labor standard,
which required chemical manufacturers to provide "'material safety data sheets' to downstream
manufacturers." *Dole*, 494 U.S. at 29. Moreover, although the *Dole* Court held that the Paperwork
Reduction Act does not authorize OMB to review and countermand agency regulations mandating
disclosure by regulated entities directly to third parties," *id.* at 31, Congress amended the PRA

in original).    To the contrary, both the APA and PRA make clear that OMB's decision rendered

at the conclusion of the agency's reconsideration process would be a reviewable, final agency

action.    *See* 44 U.S.C. § 3507(e)(1). But where, as here, Plaintiffs challenge OMB's

reconsideration decision rendered in the context of an (ongoing) informal adjudication to which

Plaintiffs are not a party, and Plaintiffs cannot show that they risk "immediate application" of the

disputed agency decision, "the firmness of which is not in dispute," they lack standing to bring

their claims. *Conference Grp.*, 720 F.3d at 964.

## III.   THE CHALLENGED RECONSIDERATION DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS NEITHER ARBITRARY NOR CAPRICIOUS.

Plaintiffs not only lack standing to assert their claims, but their claims also fail on the merits

because OMB's decision to initiate a review and stay of Component 2 pending reconsideration is

neither arbitrary nor capricious in violation of the APA.  *See* Defs.' Mem. at 22-29.  The Court's

review is narrow, deferential, and limited to determining whether substantial evidence supports

OMB's reconsideration decision.  *See Neustar*, 857 F.3d at 893 ("These informal adjudications

still must comply with the familiar APA standard banning arbitrary and capricious actions."); *see*

*also Cognitive Professional Servs. Inc. v. Sm. Bus. Admin.*, 254 F. Supp. 3d 22, 32-33 (D.D.C.

2017) (observing that there is "no functional difference between what . . . [the APA's arbitrary and

capricious standard] requires and what would be required by the substantial evidence test").

Accordingly, courts "defer to [an agency's] reading of its own [ambiguous] regulations unless that

reading is plainly erroneous or inconsistent with the regulations'" and will "'accept the [agency's]

findings of fact so long as they are supported by substantial evidence on the record as a whole."

---

legislatively overturning the decision.  *See* H.R. Rep.  104-37, at 2 ("The legislation includes third-party disclosure requirements in the definition of collection of information to overturn the Supreme Court's decision in *Dole v. United Steelworkers of America*."); *see also* 44 U.S.C. § 3502(3)(A) (defining "collection of information" to include "disclosure to third parties").

*Neustar*, 857 F.3d at 896 (internal citation omitted).

As explained below (and in Defendants' opening summary judgment brief, *see* Defs.' Mem. at 17-30), OMB's decision to initiate a review and stay of Component 2 pending reconsideration easily satisfies this standard. Nor do Plaintiffs' arguments about either OMB's interpretation of its own regulations or the contents of the Administrative Record (including the Rao Memorandum) compel a different conclusion. Accordingly, the Court should uphold OMB's decision to initiate a review and stay of Component 2 pending reconsideration.

**A. OMB's Interpretation Of Its Own Ambiguous Regulations Is Entitled to Deference.**

It is well-settled law that an agency's interpretation of its own ambiguous regulations is entitled to deference unless the interpretation is "plainly erroneous or inconsistent with the regulation." *See* Defs.' Mem. at 20 (quoting *Decker v. Nw. Entl. Def. Ctr.*, 568 U.S. 597, 613 (2013)); *see also Neustar*, 857 F.3d at 896. In this case, "neither the PRA nor OMB's regulations define when 'relevant circumstances have changed,' what constitutes a 'material error' in the burden estimates initially provided, or when 'good cause exists' warranting OMB's decision to initiate a review and stay of a previously-approved collection of information." Defs.' Mem. at 20 (citing 5 C.F.R. § 1320.10(f), (g)). But as the Rao Memorandum and the Administrative Record demonstrate, in the context of its obligation to monitor previously-approved collections of information for continued compliance with the PRA and its regulatory requirements, OMB reasonably determined that the release of Component 2's data specifications *after* the public comment period *and* OMB's approval of Component 2 constitutes a "relevant change in circumstances" or reveals a "material error in the burden estimates" initially provided by the EEOC sufficient to trigger § 1320.10(f), *see* AR OMB_0000299; *see also* Defs.' Mem. at 22-30 (detailing the bases for OMB's decision as set forth in the AR), and that the practical utility, burden, privacy,

and confidentiality concerns attendant with Component 2 as currently formulated provide "good cause" to stay the effectiveness of the new Component pending OMB's reconsideration as required under § 1320.10(g).  *See id.*  Under these circumstances, OMB's interpretation of § 1320.10(f) and (g) is neither "plainly erroneous nor inconsistent with the text of the regulations."

Nor do the arguments that Plaintiffs proffer in response, *see* Pls.' Opp. at 7-14, compel a different conclusion.  Plaintiffs' contention that the Court should not defer to OMB's interpretation of § 1320.10(f) and (g) because the regulations' reference to "materially in error," "relevant change" in circumstances, and "good cause" have "commonly understood and easily applicable meanings" is belied by their failure to cite to any cases in support of their argument.  *See id.* at 5-6.  Perhaps that is because there is ample case law that supports OMB's position that these terms are in fact ambiguous.  *See, e.g.*, *Krizman v. Merit Sys. Prot. Bd.*, 77 F.3d 434, 440 (Fed. Cir. 1996) (court's interpretation of the phrase "good cause" in the Merit Systems Protection Board's regulation does not rely on a "statutory or court rule" but rather the agency's interpretation of its own ambiguous regulation, which is entitled to deference); *Doyle v. Shalala*, 62 F.3d 740, 745-746 (5th Cir. 1995) (holding that the Social Security Act's reference to "relevant circumstances" in the provisions governing the computation of benefits is ambiguous and that the Secretary's interpretation of the term as set forth in the challenged regulation is entitled to deference); *Porter v. United States*, 163 F.3d 1304, 1315-20 (Fed. Cir. 1998) (deferring to the Air Force's interpretation of the term "material error of fact" because "[n]either the statute nor the regulations" defines the term and the Air Force's interpretation is a permissible reading of the statute).

Equally meritless is Plaintiffs' argument that deference is not warranted because the Rao Memorandum fails to articulate OMB's interpretation of § 1320.10(f) and (g) and is, in Plaintiffs' view, "conclusory."  Pls.' Opp. at 10-12.  Where, as here, the challenged decision is rendered in

the context of an informal adjudication, "the APA requires only (i) prompt notice of the denial of

any written application, and (ii) a brief statement of the grounds for the denial."   *New Life*

*Evangelist Ctr., Inc. v. Sebelius*, 753 F. Supp.  3d 103, 117 (D.D.C. 2010) (quoting 5 U.S.C. §

555(e)).   The D.C. Circuit has explained that the APA's requirement that an agency provide a

"brief statement" of its decision simply requires "the agency [to] explain 'why it chose to do what

it did.'"   *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) (quoting Henry J.

Friendly, *Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969

Duke L.J. 199, 222)).

Here, the Rao Memorandum more than satisfies this minimal requirement.  It expressly

states that OMB's conclusion that § 1320.10(f) is triggered (that is, that "relevant circumstances

have changed and/or that the burden estimates provided by the EEOC at the time of initial

submission are materially in error") based on the release of the Component 2 data specifications

*after* the public comment period and OMB approval.   *See* AR OMB_0000299.   As the Rao

Memorandum explains, "[a]s a result, the public did not receive an opportunity to comment on the

method of data submission to EEOC.  In addition, EEOC's burden estimate did not account for the

use of these particular data file specifications, which may have changed the initial burden

estimate."   *Id.*

The same is true of OMB's assessment that good cause exists to initiate a stay of the

effectiveness of Component 2 as required under § 1320.10(g).  The Rao Memorandum explains

that OMB's "good cause" finding is based on the agency's concern that certain aspects of

Component 2 are "contrary to the standards of the PRA," including OMB's concern that "some

aspects" of the previously-approved collection of information "lack practical utility, are

10

unnecessarily burdensome, and do not adequately address privacy and confidentiality issues."[2] *Id.* at AR OMB_0000230.  Because the Rao Memorandum states "why [OMB] chose to do what it did," *see Tourus Records*, 259 F.3d at 737 (internal quotation marks and citation omitted), Plaintiffs' argument to the contrary fails as a matter of law.[3]

Finally, in a last ditch effort to convince this Court that deference to OMB's interpretation of its own regulations is unwarranted, Plaintiffs advance two arguments that fall short of salvaging their claims.  As an initial matter, Plaintiffs' argument that deference to OMB's interpretation of § 1320.10(f) and (g) is not warranted because it "is not consistent with any prior practice, because OMB's exercise of its review and stay authority is novel," *see* Pls.' Opp. at 10-11, is nonsensical. It is well-established that courts defer to an agency's interpretation of its own ambiguous regulations unless the interpretation is "plainly erroneous or inconsistent with the regulation[s]."

---

[2] Contrary to Plaintiffs' claims otherwise, OMB has not "abandoned" its "good cause" standard. As Defendants explained in its opening brief, OMB's concerns about the lack of utility of, and burden imposed by Component 2, including whether Component 2 adequately safeguards against privacy and confidentiality issues, satisfy either articulation of "good cause" because their existence is "contrary to the standards of the PRA." *See* AR OMB_000300; *see also* Defs.' Mem. at 21 n. 4, 25-28.

[3] Plaintiffs take issue with the "conclusory" nature of the Rao Memorandum. *See* Pls.' Opp. at 10-21.  Defendants disagree with this characterization of the memorandum.  As Defendants have previously explained, prior to its issuance, the EEOC and OMB had engaged in in-person and telephonic discussions across months regarding OMB's concerns about Component 2's ongoing compliance with the PRA and its regulatory requirements.  *See* Defs.' Mem. at 29-30.  The Memorandum simply memorializes the issues raised in the interagency discussions and requests that the EEOC "submit a new information package" that addresses those concerns.   AR OMB_0000230. Although the memorandum memorialized an intermediate reconsideration step, its written explanation is also entirely consistent with the PRA's requirements, *see* 44 U.S.C. § 3507(e)(1), and OMB's practice with respect to its disapproval of collections of information.  *See, e.g.*, https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201404-1545-016 ("OMB is disapproving this collection because of Treasury's failure to meet the terms of the agreement between OMB and Treasury regarding this collection.  Treasury is advised that it must seek standard PRA approval for collections of information related to compliance checks."); *see also* https://www.reginfo.gov/public/do/PRAViewICR?ref_nbr=201610-0703-003 ("This collection should be resubmitted with the correct racial and ethnic categories per OMB guidance on these matters.").

*Decker*, 568 U.S. at 613; *see Neustar*, 857 F.3d at 896.   The Court should not countenance Plaintiffs' attempt to establish a new "heightened" standard that permits deference only where an agency's interpretation is "consistent with prior practice."   There is nothing "novel" about OMB's exercise of its regulatory authority, despite the fact that its interpretation of these regulatory provisions is first announced in the context of these proceedings.   As the D.C. Circuit has long held, "'[t]he general principle is that when as an incident of its adjudicatory function an agency interprets a statute [or regulation], it may apply that new interpretation in the proceeding before it.'"   *Neustar*, 857 F.3d at 895 (internal citation omitted); *see also Miguel-Miguel v. Gonzales*, 500 F.3d 941, (9th Cir. 2007) (quoting *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974)) ("[A]n agency 'is not precluded from announcing new principles in an adjudicative proceeding. . . .'").

Finally, there is no basis to invalidate OMB's decision to initiate a review and stay of Component 2 pending reconsideration based on Plaintiffs' interpretation of § 1320.10.   *See* Pls.' Opp. at 13-14.   Plaintiffs contend that "OMB's stated reasons for the review and stay . . . do not meet the legal requirements of § 1320.10(f) and (g)."   *Id.* at 13.   But Congress has charged OMB with administering the PRA, including the obligation to monitor previously-approved collections of information, and it is OMB's interpretation that controls unless it is plainly erroneous or inconsistent with the regulations.   *See Safari Club*, 878 F.3d at 326.   And, in making this assessment, courts are instructed that "'an agency's interpretation need not be the only possible reading of a regulation—or even the best one—to prevail[.]'"   *Pacific Ranger*, 211 F. Supp. 3d at 210 (internal citations omitted).   Here, the Rao Memorandum delineates the factual basis for OMB's determination that "relevant circumstances had changed," that there is a "material error" in the burden estimates initially submitted, and that "good cause exists" sufficient to initiate a review and stay of Component 2 under § 1320.10.   *See* AR OMB_0000299-300.   Because this

interpretation is not plainly erroneous nor inconsistent with the text of § 1320.10(f) and (g), it is entitled to deference. *See Pacific Ranger*, 211 F. Supp. 3d at 210.

### B. Substantial Evidence Supports OMB's Decision to Initiate A Review and Stay Of Component 2 Pending Reconsideration.

Defendants have also shown that substantial evidence supports OMB's decision to initiate a review and stay of Component 2 pending reconsideration. *See* Defs.' Mem. at 22-28; *see also Cognitive Professional Servs.*, 254 F. Supp. 3d at 32-33 (applying substantial evidence test to judicial review of informal adjudication). To that point, the Rao Memorandum articulates OMB's dual concerns about Component 2 data. First, the data specifications were released after the public comment period and OMB's approval of the collection of information. *See* AR OMB_0000299. This timing suggests that the initial burden estimates did not include information about the burdens the new data file specifications could impose. *See id.* The subsequent release of the data specifications thus had to "change[] the initial burden estimates." *Id.* Second, the Rao Memorandum explains that certain aspects of Component 2 as currently formulated "lack practical utility, are overly burdensome, and do not adequately address privacy and confidentiality concerns." AR OMB_0000299-0000300. And, as the record reflects, OMB's concerns are not overstated.[4] In the early months of 2017, OMB received interested stakeholder letters expressing

---

[4] Defendants will file a full response to Plaintiffs' motion to compel under the time frame set forth in the Local Rules but note for current purposes that Defendants do not object to the inclusion of Exhibits A through G, attached to Plaintiffs' motion to compel but do object to the inclusion of the emails referenced in the two Declarations submitted with Defendants' opening summary judgment brief to the extent that the emails are not already contained in the Administrative Record. The Declarations' reference to emails exchanged between the two Defendant agencies is meant only to demonstrate that, despite Plaintiffs' claim to the contrary, *see* Compl. ¶¶ 98, 106-09, the EEOC and OMB consulted prior to the issuance of the August 2017 Rao Memorandum. In any event, the two Declarations' reference to conference calls and the record itself sufficiently demonstrate Defendants' compliance with the "consultation" requirement of § 1320.10(g). Under these circumstances, and because it appears that Plaintiffs have abandoned this claim, *see generally* Pls.' Mem. & Opp., there is no reason to include the emails in the record.

concern about potential burden imposed by the formatting changes required by Component 2 and objecting to their inability to provide comment on Component 2's formatting changes prior to OMB approval. *See, e.g.*, AR OMB_0000305-0000311; OMB_0000321-0000328; OMB_0000332-0000340; OMB_0000367-370. There is also substantial evidence in the record that supports OMB's concerns about the practical utility of, and the burdens imposed by Component 2, including "privacy and confidentiality issues." *See, e.g.*, AR OMB_0000336; OMB_0000338-39; *see also, e g.* OMB_0000101; OMB_0000368.

In response, Plaintiffs recycle many of the arguments advanced in their opening brief, *see* Pls.' Opp. at 14-24, the gist of which amounts to no more than their strong disagreement that a review and stay of Component 2 pending reconsideration is warranted. Defendants have already explained that Plaintiffs' attempt to nitpick the record and apply their own interpretation of § 1320.10 is without merit. *See* Defs.' Mem. at 22-29. The Court must uphold OMB's decision to initiate a review and stay of Component 2 pending reconsideration unless the "'record is so compelling that no reasonable factfinder' could have reached the agency's conclusion' or when the agency has 'ignore[d] evidence contradicting its position.'" *Id.* (quoting, among other cases, *Pac. Ranger*, 211 F. Supp.3d at 22). Plaintiffs have not satisfied this heavy burden. Given OMB's ongoing responsibility to monitor previously-approved collections of information and the new obligations imposed on employers by Component 2, "a reasonable factfinder" likely would find that the release of the Component 2 data specifications to be used by employers in their submissions to the EEOC only *after* the public comment period and OMB's approval constitutes a "relevant change in circumstances" and/or a "material error in the burden estimates initially submitted" as required under § 1320.10(f). Indeed, this is so particularly given that the data file specifications will be used by a significant number of employer-filers. *See* Defs.' Mem. at 24 n.5.

14

Likewise, based on the current record, a "reasonable factfinder" could find that the utility, burden, confidentiality, and privacy concerns raised in stakeholder letters during the comment period present "good cause" under § 1320.10 to initiate a review and stay of Component 2's effectiveness pending OMB's reconsideration.  As Defendants explained in their opening brief, several comment letters observed that, as currently formulated it may be possible for third parties to obtain an employers' aggregate pay data and "reverse engineer" the dataset to identify the pay and salary information for individual employees or utilize a "possible mosaic effect," which would allow a third party to extrapolate the same information based on publicly-available information. *See* Defs.' Mem. at 28 (discussing the concerns raised in AR OMB_0000368 and OMB_0000101). In OMB's view, the possibility that third parties would be able to obtain highly-sensitive information using aggregate pay data derived from Component 2 in the previously-approved collection is an infirmity that is contrary to the PRA, thus constituting good cause to initiate a stay and review of Component 2 pending reconsideration.  *Id.*

Plaintiffs respond merely that it is improper for OMB to initiate a review and stay of Component 2 based on comment letters the agency received during the public comment period. *See* Pls.' Opp. at 20-24.  Yet OMB did not initiate a review and stay based on those comment letters along.  OMB considered a number of petitions that arrived after the agency's initial approval of the collection.  *See* Defs.' Mem. at 23-28.  Moreover, Plaintiffs point to no provision in either the PRA or its implementing regulations that bars OMB from considering the comment letters submitted during the public comment period preceding OMB's approval of a collection of information.  That is because there is no such provision barring their consideration.  And the absence of any such provision in the PRA's statutory and regulatory scheme makes sense given OMB's responsibility to monitor previously-approved collections of information for continued

15

compliance with the Act and its regulatory requirements.  *See* 44 U.S.C. § 3504(a)(1)(B)(i) (establishing oversight responsibilities for collections of information); *see also* 44 U.S.C. § 3517(b) (authorizing the OMB Director to take "appropriate remedial action, if necessary" over approved collections of information when petitioned).  Indeed, the PRA's statutory and regulatory scheme require OMB to consider and weigh the burden and practical utility of a collection of information, which are often competing considerations that considered in isolation (or as Plaintiffs suggest ignored because the agency already considered the concern in the initial approval process), could result in the approval of a collection of information that is inconsistent with the PRA's requirements.

In any event, the APA does not bar OMB from considering public comments received during the public comment period preceding OMB's initial approval of a collection of information. "[T]he APA 'sets forth the full extent of judicial authority to review agency action for procedural correctness.'" *New Life Evangelistic Ctr.*, 753 F. Supp. 3d at 119 (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)).  In the context of informal adjudications, "'courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA' or the governing legislation."  *Id.* (quoting *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654 (1990)).  But this is precisely the result of Plaintiffs' arguments, many of which seek to impose upon OMB substantive requirements that are required by neither the PRA, its implementing regulations, nor the APA.  *See, e.g.*, Pls.' Opp. at 14, 26-29 (seeking to invalidate the challenged decision based on the Rao Memorandum's failure to address any purported impact of OMB's decision to initiate a review and stay of Component 2 on the EEOC's substantive authority); *see also, e.g.*, *id.* at 20-24 (arguing that it is arbitrary and capricious for OMB to review comment letters received prior to approval of Component 2).

At bottom, Plaintiffs simply disagree with OMB's decision to initiate a review and stay of Component 2 pending reconsideration and with OMB's interpretation of its own regulations and the record material supporting the agency's reconsideration.  But this disagreement is insufficient to vacate the challenged decision. As applied in the context of its assessment that Component 2 as currently formulated does not comply with the PRA, OMB's interpretation of its own ambiguous regulations is entitled to deference and substantially supported by the record at this first step of OMB's reconsideration process, which includes the EEOC's discretion to determine the manner in which it may address OMB's concerns and, at its conclusion, a final and reviewable decision by OMB.

## IV.   THE DECISION TO INITIATE A REVIEW AND STAY OF COMPONENT 2 PENDING RECONSIDERATION DOES NOT VIOLATE SECTION 3518(e) OF THE PRA.

Finally, Defendants have already explained why there is no merit to Plaintiffs' argument that OMB's decision to initiate a review and stay of Component 2 pending reconsideration violates § 3518(e) of the PRA.  *See* Defs.' Mem. at 30-32.   This statutory provision provides in relevant part that "[n]othing in . . . [the PRA] shall be interpreted as increasing or decreasing the authority of [OMB] . . . under the laws of the United States, with respect to the substantive policies and programs of departments, agencies, and offices, including the substantive authority of any Federal agency to enforce the civil rights laws." 44 U.S.C. § 3518(e).   The challenged reconsideration decision does not impact the EEOC's substantive authority under the Civil Rights Act of 1964 (let alone decrease it as Plaintiffs argue).  *See* Defs.' Mem. at 30.  Indeed, as the Rao Memorandum makes clear, OMB has expressly requested that the EEOC "submit a new information collection package" for Component 2 for the former's review to determine compliance with the PRA.   This is in direct contrast to Plaintiffs' interpretation of § 3518(e), which appears to prioritize other agencies' substantive authority over OMB's authority under the PRA.  Section 3518(e) does not

support such an interpretation.

### V.   THE PROPER REMEDY IN THIS CASE, IF ANY, IS TO REMAND TO THE AGENCY FOR FURTHER EXPLANATION, WITHOUT VACATUR.

Despite Plaintiffs' attempt to craft their own steadfast rule, "vacatur is not necessarily indicated even when an agency acts arbitrarily and capriciously." *Fox Television Stations, Inv. v. F.C.C.*, 280 F.3d 1027, 1048 (D.C. Cir. 2002). "In fact, [the D.C. Circuit] has 'commonly remanded without vacating an agency's rule or order where the failure lay in lack of reasoned decisionmaking, but also where the order was otherwise arbitrary and capricious.'" *Air Transport Ass'n of Am., Inc. v. U.S. Dep't of Agriculture*, 317 F. Supp. 3d 385, 390 (D.D.C. 2018) (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety and Health Admin.*, 920 F.2d 960, 966-67 (D.C. Cir. 1960)). Should this Court determine that there are "deficiencies" in OMB's reasoning, the Court should "exercise[] its discretion" to remand "with or without vacatur." *Air Transport Ass'n of Am.*, 317 F. Supp. 3d at 390.

In exercising this discretion, courts consider the two prongs of the *Allied-Signal* test: (1) "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)"; and (2) "the disruptive consequences of an interim change that may itself be changed." *Fox*, 280 F.3d at 1048 (quoting *Allied-Signal, Inc. v. U.S. Nuclear Reg. Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)). OMB lawfully exercised its statutory and regulatory authority to review and stay a previously-approved collection of data that it believes is contrary to the standards of the PRA (as currently formulated). Plaintiffs try to undermine OMB's exercise of its authority by picking apart the Administrator's memorandum—a memorandum that was not even required under the governing statutes or regulations—summarizing the ongoing consultation and review process with respect to the EEOC's collection of aggregate pay data. This case does not present the "fundamental flaw" present in the cases cited by Plaintiffs, nor the "lack of notice" that

cannot be cured by additional explanation.  *See, e.g. Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014).  Indeed, Plaintiffs do not dispute OMB's authority to initiate a review and stay of a previously-approved collection of information, *see* Pls.' Opp. at x.  If the Court agrees that OMB has regulatory authority to issue a review and stay but finds fault with the Administrator's Memorandum, which provided only a summary of her decisionmaking, the logical step is for the Court to remand without vacatur to allow OMB to more fully explain its decision.

And, when, as here, "the first prong of the *Allied-Signal* analysis supports remand without vacatur, the second prong is only barely relevant."  *Air Transport Ass'n of Am.*, 317 F. Supp. 3d at 390 (internal citations and quotations omitted).  Even so, the "disruptive" consequences that would stem from vacatur counsel in favor of remand without vacatur.  To that point, after issuance of the August 2017 Rao Memorandum, the EEOC published a Federal Register notice instructing EEO-filers not to submit Component 2 pay data with their EEO-1 forms as a result of OMB's decision to initiate a review and stay of Component 2 pending reconsideration.  *See* 82 Fed. Reg. 43,362 (Sept. 15, 2017).   Under these circumstances, a vacatur order could upset the current expectation of filers, who may not be aware of this litigation nor its potential impact on their obligation to complete their Component 2 submissions.   And, given the ongoing nature of the underlying proceedings, a vacatur order could itself constitute "an interim change that may itself be changed" if, during the intervening time period, OMB were to issue a final decision approving or disapproving the challenged collection of information or the EEOC exercises its own discretion to modify Component 2 and submit a new package to OMB for review.  *See Allied-Signal*, 988 F.2d at 150-51.  Given the foregoing, if the Court determines that remand is appropriate, Defendants respectfully request that the Court decline to exercise its discretion to vacate OMB's decision to stay and instead remand to OMB for further explanation.

## CONCLUSION

Accordingly, for the reasons set forth in Defendants' motion to dismiss, their opening summary judgment brief and herein, the Court should dismiss Plaintiffs' suit.  Alternatively, the Court should grant summary judgment for Defendants and deny Plaintiffs' motion for summary judgment.


Dated: January 23, 2019                    Respectfully submitted,

                                           JOSEPH H. HUNT
                                           Assistant Attorney General

                                           CARLOTTA WELLS
                                           Assistant Branch Director

                                           */s/ Tamra T. Moore*
                                           Tamra T. Moore
                                           Rachael L. Westmoreland
                                           Trial Attorneys
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           1100 L Street, N.W.
                                           Washington, D.C.  20005
                                           Tel.:  (202) 305-8628
                                           Fax:  (202) 616-8460
                                           Email:  Tamra.Moore@usdoj.gov