# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Case No. 1:17-cv-02458 (TSC) |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**BRIEF OF *AMICI CURIAE***
**DIRECTEMPLOYERS ASSOCIATION, INC. and AMERICAN SOCIETY OF EMPLOYERS**
**IN SUPPORT OF DELAYING SUBMISSION OF EEO-1 COMPONENT 2 DATA**
**UNTIL REPORTING OF 2019 PAY INFORMATION**

EDWARD LEE ISLER, D.C. Bar No. 417076
MICAH E. TICATCH, D.C. Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Telephone (703) 748-2690
Fax (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com

*Pro hac vice pending (filed concurrently herewith):*
JOHN C. FOX (CA Bar No. 135668)
JAY J. WANG (CA Bar No. 206127)
FOX, WANG & MORGAN P.C.
315 University Avenue
Los Gatos, CA 95030
Telephone: (408) 844-2350
Fax:  (408) 844-2351
jfox@foxwangmorgan.com
jwang@foxwangmorgan.com

*Counsel for Amici Curiae*

**TABLE OF CONTENTS**

I.      IDENTITY AND INTEREST OF *AMICUS CURIAE* ........................................................1

II.     ARGUMENT ...........................................................................................................................4

        A.      INTRODUCTION ........................................................................................................4

        B.      REQUIRING COMPONENT 2 REPORTING BY MAY 31, 2019
                IS SIMPLY NOT POSSIBLE FOR THE VAST MAJORITY
                OF EMPLOYERS..........................................................................................................4

        C.      REQUIRING COMPONENT 2 REPORTING BY MAY 31, 2019
                WOULD DEFEAT THE VERY PURPOSE PLAINTIFFS PROVIDE
                AS THE REASON FOR SEEKING TO VACATE THE PRIOR STAY ...............9

III.    CONCLUSION.......................................................................................................................11

# TABLE OF AUTHORITIES

STATUTES AND REGULATIONS

81 Fed. Reg. 45479, 45483 (July 14, 2016)........................................................................4

82 Fed. Reg. 43362 ..............................................................................................................1

Rehabilitation Act of 1973, Section 503................................................................................3

Vietnam Era Veterans' Readjustment Assistance Act, (38 U.S.C. Section 4212) .........................3

## I.    IDENTITY AND INTEREST OF *AMICUS CURIAE*

DirectEmployers Association, Inc. ("DE") and the American Society of Employers ("ASE") (collectively "*Amici Curiae*") submit this Brief in support of Defendants' position as to compliance with this Court's March 4, 2019 Order vacating the Office of Management and Budget's stay of the Equal Employment Opportunity Commission's revised EEO-1 Survey and the September 15, 2017 *Federal Register* Notice (82 Fed. Reg. 43362) announcing the same.[1] *Amici Curiae* submits this Brief on behalf of their Member companies as the "missing party" impacted as to any question regarding the timing of the called-for reporting of pay data as Component 2 to the EEO-1 Survey required of certain employers (hereinafter "Component 2 reporting"). *Amici Curiae* do not concern themselves with the merits of the dispute between the parties (as the Court has decided the merits issues). Rather, *Amici Curiae* take as a given the Court's Order that Component 2 reporting will occur. The question now and suddenly before this Court is thus not whether, but only when, Component 2 reporting shall begin.

Based on employer data collected in late March 2019 from DE Member companies in a customized Survey, DE and ASE seek a reasonable runway of time to prepare for and deliver complete and accurate data in response to Component 2 reporting.  That reasonable runway for the vast majority of DE Members would be the next EEO-1 Survey reporting period in the Spring of 2020, as noted more fully below.

*Amici Curiae* offer the unique perspective not possessed by either party to the pending case as to the time necessary for employers to provide the at-issue employer compensation data. *Amici Curiae* have surveyed DE's 900+ Member companies (essentially the Fortune 1000) and can report

---

[1] This brief was authored in whole by DE's outside counsel, Fox, Wang & Morgan P.C., with assistance from local counsel Isler Dare, P.C., and no party's counsel authored this brief in whole or in part.  No party's counsel contributed money that was intended to fund preparing or submitting this brief.  No person, other than the amici curiae and their Members, contributed money that was intended to fund preparation or submission of this brief.

from recent real-time empirical information that (a) this is not a simple "Hit the Send button" and comply data delivery, and (b) it is not possible for the vast majority of DE Member companies, at this late date, to supply the Component 2 reporting by May 31, 2019.  It is simply impractical and would be an exercise in futility for the Court to require reporting of employee W-2 earnings and hours worked data as part of Component 2 reporting by May 31, 2019. Were the Court to order a May 31, 2019 reporting date, DE's Survey, described more fully below, reveals that there would necessarily be widespread forced non-compliance given the inability of even well-intentioned companies to comply and report Component 2 reporting by May 31, 2019.

**DirectEmployers Association, Inc.**

DE represents the largest consortium of federal government contracting businesses in the United States, all of which are also employers with 100 or more employees and almost all of which are required to annually file the EE0-1 Survey (university Members are not as they file IPEDS reports; neither are state government employer Members which file EEO-4 Surveys).  Established in 2001, DE is a Member-owned and managed non-profit consortium of over 920 companies, most of them from within the Fortune 1000.  DE is organized in Indiana, and its headquarters office is in Indianapolis, Indiana.

DE specializes in talent acquisition and helping companies comply with the regulatory obligations the Office of Federal Contract Compliance Programs ("OFCCP") imposes on covered federal government contractors and subcontractors.  As an Association, DE seeks to bring compliance professionals together to cultivate labor market efficiencies and reduce costs for employers.  DE's services assist contractors in complying with the OFCCP's Vietnam Era Veterans' Readjustment Assistance Act, (38 U.S.C. § 4212 ("Section 4212")) mandatory job listing requirements and the outreach and positive recruitment requirements of both Section 503 of the Rehabilitation Act of 1973 ("Section 503") and Section 4212.  DE's innovative Partner

Relationship Manager (PRM) aids employers in tracking, recording, and maintaining partner outreach efforts with diversity, disability, veteran, female, and other minority organizations. DE also daily delivers over two million jobs its Members have available to state workforce (employment) agencies throughout the country through a data pipeline known as the National Labor Exchange (NLx), which is widely viewed as the backbone of our nation's state employment offices.

### American Society of Employers

ASE is a not-for-profit employer association serving Michigan's business community. Member organizations rely on ASE to be their source for information and support on all matters affecting the employment relationship. Since 1902, ASE's principal function has been to provide people-management information and services to address Human Resource issues Michigan employers face. ASE Members include Ford Motor Company, General Motors Company, and Henry Ford Health Systems.

*Amici Curiae* have a strong and demonstrable interest in this case because almost all of their Member companies are subject to the Title VII EEO-1 reporting requirement, and thus will be affected by the newly reinstated requirement mandating Component 2 reporting by May 31, 2019. Realistically, because guidance from the U.S. Equal Employment Opportunity Commission ("EEOC") as to the submission of such information may not be available until April 3, 2019 at the earliest, employers in fact will have only a little more than one month to know how to report the relevant data, gather budget to write code to extract the data in the way called for, quality control check the reporting results to test the data to ensure they are complete and accurate, and design upload reports to deliver the data to the EEO-1 reporting portal in the manner and format required. With such a short timeframe, *Amici Curiae* on behalf of their employer Members seek to provide

information that would warrant implementation of the Component 2 reporting as part of the 2019 EEO-1 Survey due next Spring 2020.

## II.    ARGUMENT

### A.    INTRODUCTION

Plaintiffs seek information from Defendants related to compliance with the Court's March 4, 2019 Order vacating the stay related to reporting of Component 2 reporting in EEO-1 Reports.  Plaintiffs also seek information from Defendants to provide guidance to the Court related to expectations for compliance with the Court's Order.  While not explicitly stated, Plaintiffs imply that they seek a remedy from this Court requiring Defendants to implement Component 2 reporting by employers as part of the 2018 EEO-1 Survey due by May 31, 2019.

However, the practical implication of requiring Component 2 reporting by May 31, 2019 is that the processing time needed for employers to reasonably comply is measured in months, and not days or even weeks.  Furthermore, because of the timeframe anticipated by a reporting deadline of May 31, 2019, the very probable outcome would be the production of either no report, or incomplete and/or inaccurate pay data to the EEOC that would leave Plaintiffs' objectives in requiring production of such data unfulfilled.

### B.    REQUIRING COMPONENT 2 REPORTING BY MAY 31, 2019 IS SIMPLY NOT POSSIBLE FOR THE VAST MAJORITY OF EMPLOYERS

A confidential Survey of DE employer Member companies subject to the Component 2 reporting requirements reveals that fewer than 30% of them could comply with the Component 2 reporting requirement by May 31, 2019.[2]  The Component 2 reporting breaks into two parts:

---

[2] All of DE's employer Members (other than universities and public employers, which file like reports) will be required to produce Component 2 reporting as part of their EEO-1 reporting obligations due to their employment of 100 or more employees.  *See* Agency Information Collection Activities; Notice of Submission for OMB Review, Final Comment Request:  Revision of the Employer Information Report (EEO-1), 81 Fed. Reg. 45479, 45483 (July 14, 2016).

(1) "Hours Worked" reporting, broken down by race, sex, and ethnicity for employees within each of the 10 EEO-1 reporting categories and sorted within each of the 12 new pay bands; and (2) "Pay Data" reporting, broken down by race, sex, and ethnicity within each of the 10 EEO-1 reporting categories and sorted within each of the 12 new pay bands.  DE surveyed its employer Members regarding time-to-delivery of each kind of data required, since different computer systems and different vendors and electronic data integration tools (to the extent vendors are involved) capture and report the two kinds of data Component 2 reporting seeks.  The eight-question DE Survey was made up of two sets of four questions: the first set of four questions related to "hours worked" reporting and the second set of four questions related to total employee counts for the "pay data" reporting (since some employers can more quickly comply with one requirement as opposed to the other).

In response to a Bloomberg Law article dated March 20, 2019 reporting this Court's decision that Defendants had until April 3, 2019 to advise this Court whether employers would have to turn over Component 2 reporting by the May 31, 2019 deadline, DE conducted a confidential Survey of its employer Members through SurveyMonkey, an online survey development cloud-based software.  The online, confidential Survey was open to DE employer Members from March 21, 2019 until 3:00 p.m. Eastern Standard Time on March 25, 2019.  In that time, DE received 178 responses from its employer Members, though not all Members answered every one of the eight questions provided on the Survey.

### "Hours Worked" Reporting

As to the "hours worked" data which Component 2 reporting requires, 129 out of 178 employers (72.5%) who responded to the question about the "hours worked" requirement reported they would not be able to report the total number of hours worked at each establishment broken down by race, sex, and ethnicity for employees within each of the 10 EEO-1 reporting categories

and sorted within each of the 12 pay bands identified as part of the Component 2 reporting by
<u>May 31, 2019</u>.  Only approximately 27.5% of DE's employer Members reported their ability to
provide the "hours worked" data of the Component 2 reporting by May 31, 2019.  *See* **Exhibit A**
to the **attached** Declaration of Candee J. Chambers, Executive Director of DE, which is a true and
correct compilation of DE's confidential Member Survey results as reported by the SurveyMonkey
software.

Also, 98 out of the 129 employers reporting that they could <u>not</u> be ready to report by
May 31, 2019 cited staffing limitations as an issue, while 100 out of those same 129 employers
also cited technology limitations (employers were free to denote both limitations as an issue, hence
the differing number of employers replying to one limitation operating on their company versus
another limitation).  *Id.*  Additional Member comments concerning the inability to gather hours
worked data before May 31, 2019 related to the need to re-deploy staff members to design and
undertake the needed reporting, insufficient time to prepare the data, need for customized computer
programming, the need to acquire or build electronic and computerized data sorting tools, need to
create templates for upload, reliance upon third-party payroll vendors for data, and difficulty
gathering data due to the data not being centrally stored or stored on multiple electronic platforms.
*Id.*

In reference to whether the employer would need to seek a new budget allocation within
the company to secure either more IT/software or more data clean-up services, or to pay vendor
delivery fees (Question 4 of the Survey), 107 out of 166 employer Members who responded to the
question (64.5%) reported they would need to start a new mid-budget year budget amendment
process to obtain new budgetary allocations within the company to secure more IT/software or
more data clean-up services, or to pay vendor delivery fees.  *Id.*

In reference to the earliest date by which companies could accurately and completely report the requested "hours worked" data as part of the Component 2 reporting (Question 3 of the Survey), 91 employers out of 121 employers who responded to Question 3 (81.8%) reported that they would need until the time the next EEO-1 Survey reporting cycle in 2020 was due to be able to provide complete and accurate Component 2 reporting.[3] *Id.* Only 22 of the 121 employers that responded to Questions 3 (18%) reported that they could be ready to report the "hours worked" data by September 30, 2019 (the end of FY2019). Thus, collectively, only 71 employers (49+22) of 178 (40%) could be ready to file the "hours worked" portion of Component 2 by the end of Fiscal Year 2019, six months from now.

**"Pay Data" Reporting**

As to the "pay data" which Component 2 reporting requires, 113 out of 161 employers (70.2%) who responded to the question about uploading the total number of employees within each pay band reported they would <u>not</u> be able to report the total number of employees broken down by race, sex, and ethnicity within each of the 10 EEO-1 reporting categories and sorted within each of the 12 pay bands identified as part of the Component 2 reporting by May 31, 2019. *Id*. This means that fewer than 30% of the surveyed employer Members of DE noted an ability to report the total number of employees in each pay band for "pay data" purposes by <u>May 31, 2019</u>.

Specifically, 94 out of the 112 (84%) employers answering why they could not be ready to report by May 31, 2019 cited staffing limitations as an issue, while 91 out of those same 112 employers (81%) cited technology limitations. *Id*. Additional comments concerning the inability to gather the number of employees in each pay band before May 31, 2019 related to the need for customized computer programming and data sorting, reliance on payroll vendor reports, and

---

[3] Those employers who responded to Question 1 that they could report hours worked data by May 31, 2019 did not answer Questions 2, 3, and 4, which asked about employers which could not file by May 31, 2019.

having to manually obtain and integrate race, sex, and ethnicity information since those are not normally part of payroll records.  *Id*.

In reference to whether the employer would need to seek a new budget allocation within the company to secure either more IT/software, secure more data clean-up services, or to pay vendor delivery fees to obtain data reporting the total number of employees in each pay band (Question 8 of the Survey), 105 out of 159 (66.0%) employer Members who responded to the question reported they would need to start a new mid-budget year budget amendment process to obtain new budgetary allocations within the company to secure more IT/software, to secure more data clean-up services, or to pay new vendor delivery fees to obtain employee totals by race, sex, and ethnicity for each pay band.  *Id*.

In reference to the earliest date by which companies could accurately and completely report the requested number of employees in each pay band as the "pay data" part of the Component 2 reporting (Question 7 of the Survey), 91 employers out of the 111 employers who responded to Question 7 (82.0%) reported that they would need until the time of the next EEO-1 Survey reporting cycle in 2020 was due to be able to provide complete and accurate Component 2 reporting as to the total number of employees in each pay band by race, sex, and ethnicity.[4]  *Id*.

Given the foregoing evidence from employers actually tasked with satisfying the requirements of the Component 2 reporting, a May 31, 2019 reporting date is simply not feasible. The parties have simply missed the 2018 reporting year for lack of enough forewarning to the employer community of the called for reporting date.  Spooling up the called for reporting data is clearly a complicated procedure requiring most companies <u>more than</u> six months' notice.

---

[4] Those employers who responded to Question 5 that they could report total employees in each pay band by May 31, 2019 did not answer Questions 6, 7, and 8, which asked about employers which could not file by May 31, 2019.

### C.     REQUIRING COMPONENT 2 REPORTING BY MAY 31, 2019 WOULD DEFEAT THE VERY PURPOSE PLAINTIFFS PROVIDE AS THE REASON FOR SEEKING TO VACATE THE PRIOR STAY

Given the potential issues with providing accurate and complete data by May 31, 2019, implementing Component 2 reporting by May 31, 2019 would defeat the very objective Plaintiffs sought to obtain in bringing suit, and would leave their stated interests unfulfilled.  As this Court noted in its Memorandum Opinion dated March 4, 2019, both the National Women's Law Center ("NWLC") and the Labor Council for Latin American Advancement ("LCLAA") claim injury resulting from the Office of Management and Budget's ("OMB") prior stay as to the revised EEO-1 Survey due to their inability to more robustly advocate on behalf of their constituents with additional data and analyses.  Possession of the Component 2 reporting would allow NWLC, it told this court, to "focus its resources, analysis, and advocacy on the jobs, industries, and regions where intervention is most urgent," and allow LCLAA to improve its ability "to negotiate with and educate employers and to fulfill LCLAA's mission of improving the condition of Latinos and Latinas in the workplace."  However, without accurate and complete information, Plaintiffs would be placed in the same position as if the stay had not been lifted.

Specifically, as evidenced by the employers' responses to DE's Survey, the only way for Companies obligated to report by May 31, 2019 would be to rely on those resources currently available, without the budget and manpower necessary to ensure any data delivery, let alone one which was both complete and accurate.

Moreover, given the limited period of time to review and comprehend any guidance from the EEOC as to the formatting of required reporting, employers are left to make assumptions about the limited guidance the EEOC has been able to offer thus far.  Finally, and most importantly, given the time constraints, at best, employers will have incomplete information to report, and without the time necessary to test and verify their data, let alone test or verify data from third-party

payroll or Human Resource vendors from which the vast number of employers must procure the information, given that such vendors may physically house and control hours and pay data for many employers.

Obtaining either (a) no data; (b) incomplete data; or (c) inaccurate data would run afoul of the very purposes for which Plaintiffs sought the data: to accurately analyze them. At this point, implementation of the Component 2 reporting in relation to 2018 pay information would not provide quality information to the government, nor would it minimize the burden imposed on employers required to produce these data. Only with a proper runway of time and guidance to reporting employers (such as would be available by installing the Component 2 reporting due in the spring of 2020 for 2019 pay and hours of work data) and telling those employers NOW that the reports would (positively, absolutely) be due then, can Plaintiffs' interests be served.

## III.    **CONCLUSION**

Based on the foregoing, *Amici Curiae* respectfully request this Court to require compliance with this Court's March 4, 2019 Order (vacating the prior stay) beginning with the 2020 EEO-1 Survey containing 2019 calendar year data, and for such further relief as this Court may deem just and proper.

April 1, 2019

Respectfully Submitted,

_____/s/  Edward Lee Isler_____
EDWARD LEE ISLER, D.C. Bar No. 417076
MICAH E. TICATCH, D.C. Bar No. 1005398
ISLER DARE, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Telephone (703) 748-2690
Fax (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com

JOHN C. FOX (CA Bar No. 135668)
JAY J. WANG (CA Bar No. 206127)
*Pro Hac Vice pending (filed concurrently herewith)*
FOX, WANG & MORGAN P.C.
315 University Avenue
Los Gatos, CA 95030
Telephone: (408) 844-2350
Fax:  (408) 844-2351
jfox@foxwangmorgan.com
jwang@foxwangmorgan.com

*Counsel for Amici Curiae
DirectEmployers Association, Inc. and
American Society of Employers*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Case No. 1:17-cv-02458 (TSC) |
| | ) |
| | ) |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**DECLARATION OF CANDEE CHAMBERS IN SUPPORT OF *AMICI CURIAE* BRIEF**

In support of Movants DirectEmployers Association, Inc. ("DE") and the American

Society of Employers' ("ASE") *Amici Curiae* Brief, I, Candee J. Chambers, do declare as

follows:

1.      I am the Executive Director of DE, a position I have held since 2017. I have been

with DE since 2013, and previously served as DE's Vice-President of Compliance and

Partnerships, where I oversaw the creation of strategic partnerships with a multitude of

organizations, and managed the relationship with the National Association of State Workforce

Agencies. In addition to my current daily responsibilities as Executive Director, I regularly

provide guidance to DE's employer members related to Affirmative Action regulations,

Affirmative Action Plan development, outreach responsibilities to organizations related to

1

diversity in employee selection and retention. I also serve as Chair of the Indiana Industry Liaison Group.

2.      I hold a Senior Professional in Human Resources certification ("SPHR"), and a certification as a Senior Certified Professional ("SHRM-SCP") from the Society for Human Resource Management ("SHRM"). I am also a Senior Certified Affirmative Action Professional ("SR. CAAP").

3.      I have personal knowledge of the following facts in this declaration; except as to those matters stated on information and belief, and as to those matters I believe them to be true. If called upon as a witness, I could and would testify competently thereto. I am making this declaration in support of the Amicus Brief being filed by DE and ASE.

4.      On March 18, 2019, as Executive Director of DE, I became aware of Plaintiffs' request for a Status Conference in determining the U.S. Equal Employment Opportunity Commission's ("EEOC") compliance with the court order vacating the stay in reporting of employee compensation data ("Component 2" data) on regulatorily required EEO-1 Surveys in the matter of *National Women's Law Center, et al. v. Office of Management and Budget, et al.*, U.S. District Court for the District of Columbia, Case No. 1:17-cv-02458 (TSC). As DE is an employer member-owned and managed non-profit corporation that maintains partner outreach efforts on behalf of its employer members with diversity, disability, veteran, female, and other minority organizations, efforts related to collection of employee compensation data by the EEOC from employers is an issue of significance to DE and its employer members.

5.      On March 20, 2019, I received notice via an article in Bloomberg Law of this Court's decision during a March 19, 2019 status conference that federal agencies had until April 3, 2019 to advise the court whether employers would have to turn worker pay data over to the government by the May 31, 2019 deadline for submission of the 2019 EEO-1 Report.

2

https://www.bloomberglaw.com/exp/eyJjdHh0IjoiRExOVyIsImlkIjoiMDAwMDAxNjktOTZiO S1kOGY3LWFiN2QtZGVmZjAwOGEwMDAyIiwic2lnIjoiaENTSHVSR0Nxb25hOUpDOUxC Nm1zTW9GSHpZPSIsInRpbWUiOiIxNTUzMDgwMTc0IiwidXVpZCI6ImFNSW5saWc4RFdn bVBvZmvZmsyT2xQNWc9PTRHRG84WTEyZW5IaTZzNmNCV1JnSUE9PSIsInYiOiIxIn0=?usert ype=External&bwid=00000169-96b9-d8f7-ab7d-
deff008a0002&qid=6281647&cti=LFSM&uc=1320029013&et=FIRST_MOVE&emc=bdlnw_bf :6&bna_news_filter=true.

6.    The BNA article reported that this Court would set a deadline by which the EEOC would have to begin collecting Component 2 data as part of the EEO-1 Survey.

7.    Based on this information, on March 20, 2019 DE began to prepare a survey for its employer members regarding the ability of its members to provide Component 2 pay data as part of the 2018 EEO-1 Survey due by May 31, 2019 to provide this Court relevant information related to the setting of any deadline for the due date for collection of Component 2 pay data.

8.    DE provided its over 920 employer members the survey on Thursday, March 21, 2019, with responses due by 3:00 p.m. on Monday, March 25th. In that time, DE received 178 responses from its employer members to the survey, though some only answered questions relevant to them. Because our Surveys of Members are always confidential to allow for candid reporting, we do not know exactly which Members responded to our pay data reporting Survey. However, our 923 Members heavily populate the Fortune 1000 List and include many major companies including Amazon, Boeing, Google, LinkedIn, Facebook, Northrup-Grumman, Cisco Systems, John Deere, CVS, International Paper Company, KPMG, Lockheed Martin, FedEx, Eli Lilly, American Electric Power, and Cardinal Health Systems, among others.

9.    Attached as **Exhibit "A"** to this declaration is a true and correct copy of the results of the survey DE provided to its employer members, and a summary of the responses

3

Members provided as to the ability of employers to provide Component 2 pay data on the 2019

EEO-1 Survey due by May 31, 2019, or by the end of the federal Fiscal Year (September 30,

2019) or by the next EEO Survey reporting Survey window in the Spring of 2020, and some of

the reasons why any deadline would not be feasible.

I declare under the penalty of perjury that the foregoing is true and correct.

Respectfully Submitted,

Dated: March 30, 2019

Candee J. Chambers
DECLARANT

4

# EXHIBIT A
# to the Declaration of
# Candee J. Chambers

EEO-1 Pay Data Survey

**Q1 By May 31, 2019, could your company electronically upload to the EEO-1 reporting site the TOTAL number of hours worked at each of your Company's establishments broken down by race, sex and ethnicity for employees (as a group: not individual hours worked) within each of the usual 10 EEO-1 reporting categories (per the usual Component 1 EEO-1 Report Survey) AND also sorted within EACH of the following (new) 12 pay bands set out below?Note: For salaried employees, you would report actual hours worked, or 40 hours if the employee works a full-time schedule of 40 or more hours per week. Pay Bands Pay Bands Label 1 $19,239 and under. 2 $19,240-$24,439. 3 $24,440-$30,679. 4 $30,680-$38,999. 5 $39,000-$49,919. 6 $49,920-$62,919. 7 $62,920-$80,079. 8 $80,080-$101,919. 9 $101,920-$128,959. 10 $128,960-$163,799. 11 $163,800-$207,999. 12 $208,000 and over.**



Answered: 178    Skipped: 0

| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| Yes | 27.53% | 49 |
| No | 72.47% | 129 |
| Not Sure | 0.00% | 0 |
| TOTAL | | 178 |

EEO-1 Pay Data Survey

# Q2 Why not? You may choose more than one answer.

Answered: 122    Skipped: 56



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| Technology limitations (hardware and/or software) | 81.97% | 100 |
| Staffing limitations | 80.33% | 98 |
| Other (please specify) | 15.57% | 19 |
| Total Respondents: 122 | | |

| # | OTHER (PLEASE SPECIFY) | DATE |
|---|---|---|
| 1 | We can't get reports in an accurate fashion. | 3/25/2019 8:11 AM |
| 2 | It's possible to do but requires staffing to build a report. Not feasible to redeploy a staff member to this reporting need that may not actually be needed by the end of May without jeopardizing other projects. | 3/22/2019 11:11 AM |
| 3 | Short window of time to prepare | 3/22/2019 10:00 AM |
| 4 | Report not yet available. Would need more time to develop. | 3/21/2019 10:19 AM |
| 5 | Custom programming and data sorting to get the required information. | 3/21/2019 10:04 AM |
| 6 | Multiple unknown variables may appear during this process that may be of an urgency for the organization. | 3/20/2019 4:44 PM |
| 7 | Technology upgrade scope of work will need more time within current work schedule | 3/20/2019 4:43 PM |
| 8 | We are changing to a new system on April 1st. | 3/20/2019 4:39 PM |
| 9 | clarification on hours worked for exempt (excludes vacation, leaves of absence, holidays, etc.) | 3/20/2019 4:04 PM |
| 10 | Need to create templates for upload | 3/20/2019 4:04 PM |
| 11 | We are not an EEO-1 employer but rather an EEO-4. Absent that, we likely would be able to do so. | 3/20/2019 4:00 PM |
| 12 | Data is not stored centrally | 3/20/2019 3:57 PM |
| 13 | Incentive and daily rate employee data takes time to compile | 3/20/2019 3:51 PM |
| 14 | We will need to create an ad hoc report with the payroll vendor, which will require considerable time to create, test and utilize. | 3/20/2019 3:51 PM |

EEO-1 Pay Data Survey

| 15 | Our HRMS may be able to do this but we need a project team to figure out how to extract that data from the correct location in the system and add it to the EEO-1 report. This was just in the beginning stages for us when the government stayed this decision so we did not get very far in completing the steps. This means we now will have to finish what was started and that will be a huge effort to pull people off of other urgent business projects they are already on. | 3/20/2019 3:49 PM |
|----|----|----|
| 16 | We are an educational institution and we file IPEDS, not EEO1 | 3/20/2019 3:47 PM |
| 17 | Difficult to obtain data | 3/20/2019 3:46 PM |
| 18 | Have not determined how or where to gather the data from or if we can even produce it in the format that is needed. | 3/20/2019 3:45 PM |
| 19 | Data gathering difficulties | 3/20/2019 3:33 PM |

EEO-1 Pay Data Survey

## Q3 If asked to file the data specified in Question 1 (above), in future EEO-1 Survey's, what is the earliest date by which your Company could do so?

Answered: 121    Skipped: 57



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| By May 31, 2019 | 0.00% | 0 |
| By September 30, 2019 | 18.18% | 22 |
| By the time of the 2020 EEO-1 Survey | 81.82% | 99 |
| TOTAL | | 121 |

EEO-1 Pay Data Survey

## Q4 Would uploading to the EEO-1 Survey portal the data Question 1 (above) describes require you to go back to seek a new budget allocation within your company to secure either more IT/software, or for data clean-up, or vendor delivery fees?



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| Yes | 64.46% | 107 |
| No | 35.54% | 59 |
| TOTAL | | 166 |

EEO-1 Pay Data Survey

Q5 By May 31, 2019, could your company electronically upload to the EEO-1 reporting site the TOTAL number of employees reported at each of your Company's establishments broken down by race, sex and ethnicity within each of the 10 EEO-1 reporting categories (per the usual Component 1 EEO-1 Report Survey) AND also sorted within EACH of the following (new) 12 pay bands?Note 1: To determine which pay band against which to report an employee's hours worked, you would be asked to add together the employee's wages, tips, overtime, bonuses and "other earnings." Note 2: "W-2 earnings" would mean for this report wages, tips, overtime, bonuses and "other earnings." Pay Bands Pay Bands Label 1 $19,239 and under. 2 $19,240-$24,439. 3 $24,440-$30,679. 4 $30,680-$38,999. 5 $39,000-$49,919. 6 $49,920-$62,919. 7 $62,920-$80,079. 8 $80,080-$101,919. 9 $101,920-$128,959. 10 $128,960-$163,799. 11 $163,800-$207,999. 12 $208,000 and over.



Answered: 161    Skipped: 17

| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| Yes | 29.81% | 48 |
| No | 70.19% | 113 |
| Not Sure | 0.00% | 0 |
| TOTAL | | 161 |

EEO-1 Pay Data Survey

# Q6 Why not? You may choose more than one answer.

Answered: 112    Skipped: 66



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| Technology limitations (hardware and/or software) | 81.25% | 91 |
| Staffing limitations | 83.93% | 94 |
| Other (please specify) | 13.39% | 15 |
| Total Respondents: 112 | | |

| # | OTHER (PLEASE SPECIFY) | DATE |
|---|---|---|
| 1 | Requires a new report to be built. | 3/22/2019 11:12 AM |
| 2 | Report not yet available. Will have to be developed. | 3/21/2019 10:20 AM |
| 3 | Custom programming and data sorting required. | 3/21/2019 10:06 AM |
| 4 | Ulti-Pro our vendor who creates the file for us to send to EEO - we upload the file directly. Currently we set up our establishments in Ulti-Pro, and create a file. The new process would have to be created by Ulti-Pro for our company. | 3/21/2019 9:41 AM |
| 5 | Our corporate office runs all of our EEO-1 data and I don't know if their systems are set up to readily obtain this data. | 3/20/2019 6:14 PM |
| 6 | We would need to ask for assistance from our payroll department and I'm not sure of their planned projects for the year that may be of urgency as well. | 3/20/2019 4:45 PM |
| 7 | Need to create templates for upload | 3/20/2019 4:05 PM |
| 8 | EEO-4 employer | 3/20/2019 4:01 PM |
| 9 | Need more clarity as to determining pay period and time to figure out the best approach. | 3/20/2019 3:55 PM |
| 10 | Compliance would have to get access to W-2 payroll records which is outsourced to a payroll company, provide the compensation data to IT to write some sort of query to get the data and into the format needed. You have to schedule IT support into their workloads which may be backlogged with other requests | 3/20/2019 3:54 PM |
| 11 | same as prior answer. W-2 data is typically not pulled for snapshot reports. This is a custom pull | 3/20/2019 3:52 PM |
| 12 | This would require a custom report from our payroll vendor which would require a significant investment of resources and money. | 3/20/2019 3:52 PM |

EEO-1 Pay Data Survey

| 13 | We would have to determine where in our HRMS the Box 1 data is located and how to capture that data and move it into the report. That calls for multiple IT and Payroll resources to help HR extract that data. | 3/20/2019 3:51 PM |
|----|----|----|
| 14 | Time requirement, could do it but not by May 31 | 3/20/2019 3:48 PM |
| 15 | We file IPEDS | 3/20/2019 3:47 PM |

EEO-1 Pay Data Survey

# Q7 If asked to file the data specified in Question 5 (above), in future EEO-1 Survey's, what is the earliest date by which your Company could do so?

Answered: 111    Skipped: 67



| ANSWER CHOICES | RESPONSES | |
| --- | --- | --- |
| By May 31, 2019 | 0.00% | 0 |
| By September 30, 2019 | 18.02% | 20 |
| By the time of the 2020 EEO-1 Survey | 81.98% | 91 |
| TOTAL | | 111 |

EEO-1 Pay Data Survey

## Q8 Would uploading (to the EEO-1 Survey reporting site) the data Question 5 (above) describes require you to go back to seek a new budget allocation within your Company to secure either more IT/software, or for data clean-up, or vendor delivery fees?

Answered: 159     Skipped: 19



| ANSWER CHOICES | RESPONSES | |
|---|---|---|
| Yes | 66.04% | 105 |
| No | 33.96% | 54 |
| TOTAL | | 159 |