**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, et al. ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 17-2458 (TSC) |
| v. ) | |
| ) | |
| OFFICE OF MANAGEMENT AND ) | |
| BUDGET, et al.[1] ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' SUBMISSION IN RESPONSE TO**
**THE COURT'S QUESTIONS RAISED**
**DURING THE MARCH 19, 2019 STATUS CONFERENCE**

1.      On March 4, 2019, this Court issued a Memorandum Opinion and Order ("Order")

vacating the decision of the Office of Management and Budget ("OMB") to stay and reconsider its

2016 Paperwork Reduction Act ("PRA")[2] approval of the United States Equal Employment

Opportunity Commission's ("the EEOC") revised EEO-1 information collection ("collection of

Component 2 pay data").  *See* Mem. Op. at 40-41, ECF No. 45 (Mar. 4, 2019); *see also* Order at 1, ECF

No. 46 (Mar. 4, 2019).  The Order further provided that OMB's "previous approval" of the EEOC's

collection of Component 2 pay data "shall be in effect."  Order at 1.  In response to the questions that

the Court raised during the March 19, 2019 status conference, *see* Status Conf. Tr. at 15, lines 18-25

(Mar. 19, 2019), this Submission describes how the EEOC proposes to undertake and close the

---

[1] Pursuant to Rule 25(d), Paul Ray, in his official capacity as Acting Director of the Office of Information and Regulatory Affairs ("OIRA"), is substituted for Neomi Rao, in her former official capacity as Director of OIRA.

[2] 44 USC 3501 *et seq.*

collection of Component 2 pay data under the revised EEO-1 information collection that is now back in effect.

2.       By approving the revised EEO-1 information collection on September 29, 2016, OMB authorized the EEOC to collect Component 2 pay data from employers twice during the three-year approval period, which expires on September 30, 2019. *See* 81 Fed. Reg. 45479, 45484 (July 16, 2016). But for OMB's decision to stay the collection of this data, employers would have gathered 2017 Component 2 data during a pay period of their choice[3] between October 1, 2017, and December 31, 2017, and submitted that data to the EEOC on or before March 31, 2018. *Id.* Employers also would have collected 2018 Component 2 data during one pay period between October 1, 2018, and December 31, 2018, and submitted that data to the EEOC on or before March 31, 2019. *See id.* However, due to OMB's stay decision, the EEOC could not conduct or sponsor, and employers had no legal obligation to gather or submit, Component 2 pay data between August 29, 2017, and March 4, 2019, when this Court vacated the stay.

3.       As a result of the Court's reinstatement of the revised EEO-1 Component 2 collection, the EEOC will need to modify or adjust the deadlines for employers to collect retroactively 2018 Component 2 pay data and submit the relevant data to the EEOC by September 30, 2019. Title VII of the Civil Rights Act of 1964 authorizes the Acting Chair "to administer the operations of the Commission," 42 U.S.C. § 2000e-4(a)—an authority she has previously exercised to modify and adjust the original time periods for approved data collections as appropriate for the orderly administration of the collections. *See, e.g.*, www.eeoc.gov/eeoc/newsroom/wysk/impact_of_lapse.cfm (FAQs regarding extension of 2018 EEO-1 reporting deadline from March 1, 2019, through May 31, 2019,

---

[3] The EEOC instructs employers to report data from one single payroll period (*i.e.*, any time period covered by one single payroll cycle) of their choosing that occurred between October 1 and December 31 of the reporting year. *See* 81 Fed. Reg. at 45484.

as a result of partial lapse in government appropriations); www.eeoc.gov/eeoc/newsroom/release/7-22-13.cfm (press statement announcing September 30 submission deadline).  Plaintiffs do not purport to challenge the EEOC's independent statutory authority to administer the operation of its collection of information, including the authority to modify and adjust the collection requirements, and the EEOC's use of the information.  Instead, Plaintiffs' claims focus exclusively on OMB's authority to stay and reconsider its prior PRA approval.

4.      The Acting Chair has determined that it is necessary to exercise her Title VII administrative authority to adjust the collection deadline to September 30, 2019, in order to accommodate the significant practical challenges for the EEOC to collect Component 2 data in response to the Court's Order.

5.      As explained in detail in the attached Declaration of Samuel C. Haffer, Ph.D. ("Haffer Decl."), the EEOC's Chief Data Officer, the data processes used to collect EEO-1 demographic data are not capable of collecting employers' 2018 Component 2 data.  *See* Haffer Decl. ¶¶ 9-13, 14, 20-21.  That is because the EEOC collects EEO-1 data from approximately 80,000 employers, and its current data processes are programmed to collect 140 data fields for the Component 1 demographic collection.  *Id.* ¶ 20.  In contrast, for each Component 2 report collected from an employer, there will be 3,360 data fields of pay data to be addressed.  *Id.*  According to Dr. Haffer, it would take nine months to modify the EEOC's current processes to support the collection of large amounts of sensitive Component 2 pay data from 2018. *See id.* ¶ 21.  The EEOC has determined that modifying its current processes is not currently a viable option for collecting Component 2 data from employers. *Id.* ¶¶ 9-13, 14, 20-21.

6.      Instead, the EEOC has determined that utilizing a data and analytics contractor is the only alternative.  *Id.* ¶ 24.  The contractor would perform the information collection for 2018 EEO-1

Component 2 data, including providing the processes, procedures, and systems to undertake and close the collection by September 30, 2019, at a cost in excess of $3 million. *Id.* ¶¶ 24-26.

7.      Although having a contractor perform the 2018 EEO-1 Component 2 collection is preferable to using the EEOC's existing processes, Dr. Haffer warns that there is a serious risk that the expedited data collection process may yield poor quality data because of the limited quality control and quality assurance measures that would be implemented due to the expedited timeline. *Id.* ¶¶ 27, 29, 32. As Dr. Haffer has explained, this will be the first time that the EEOC collects Component 2 pay data from employers. *See id.* ¶¶ 13, 20, 22. It also will be the first time that the EEOC utilizes the contractor to perform a collection of information on an expedited basis. *Id.* ¶¶ 27, 29, 32.

8.      The risk of poor data quality would be compounded if calendar year 2017 EEO-1 Component 2 data were also collected. *Id.* ¶ 23. The EEOC has concerns that requiring employers to gather and report calendar year 2017 Component 2 data at the same time as the collection of calendar year 2018 Component 2 data without more extensive and well-developed quality assurance and quality control processes in place could decrease response rates and increase errors in the entire data collection process. *See id.*

For the foregoing reasons, and with the caveats delineated in the attached Haffer Declaration, the EEOC informs the Court that it is able to undertake and close the collection of 2018 EEO-1 Component 2 data by September 30, 2019.

Dated: April 3, 2019                                  Respectfully submitted,

                                                      JOSEPH H. HUNT
                                                      Assistant Attorney General

                                                      CARLOTTA WELLS
                                                      Assistant Branch Director

                                                      */s/ Tamra T. Moore*
                                                      Tamra T. Moore

4

Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C.  20005
Tel.:  (202) 305-8628
Fax:  (202) 616-8460
Email:  Tamra.Moore@usdoj.gov