UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> OFFICE OF MANAGEMENT AND BUDGET, *et al.*, <br><br> *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 17-cv-2458 (TSC) |

**MOTION FOR LEAVE TO FILE *AMICI CURIAE* BRIEF ON BEHALF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, HR POLICY ASSOCIATION, ASSOCIATED BUILDERS AND CONTRACTORS, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, CENTER FOR WORKPLACE COMPLIANCE,  THE INSTITUTE FOR WORKPLACE EQUALITY, THE NATIONAL ASSOCIATION OF MANUFACTURERS, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, NATIONAL RETAIL FEDERATION, RESTAURANT LAW CENTER, RETAIL LITIGATION CENTER, INC., AND SOCIETY FOR HUMAN RESOURCE MANAGEMENT**

The Chamber of Commerce of the United States of America (the "Chamber"), the HR Policy Association ("HRPA"), Associated Builders and Contractors ("ABC"), Associated General Contractors of America ("AGC"), the Center for Workplace Compliance ("CWC"), The Institute for Workplace Equality ("the Institute"), the National Association of Manufacturers ("The NAM"), National Federation of Independent Business ("NFIB"), National Retail Federation ("NRF"), the Restaurant Law Center ("RLC"), Retail Litigation Center, Inc., and the Society for Human Resource Management ("SHRM") (collectively referred to as "*Amici*") respectfully move for leave to file an *amicus curiae* brief to ensure the Court hears the perspective of the employer community regarding the specific challenges, operational and

1

system obstacles, and financial burdens that must be overcome before employers are able to comply with Component 2 of the Equal Employment Opportunity Commission's ("EEOC") revised Employer Information Form ("Revised EEO-1").  Given that the impact of Component 2 falls squarely on the shoulders of the employer community, it is important that their capabilities, constraints, and interests — which have not been addressed by the parties — be heard.  Simply put, employers cannot quickly meet a data collection and filing deadline for Component 2 data given the necessary lead time, substantial cost, and technological obstacles to compliance.  In addition, gathering data retroactively for 2018 in Component 2 form is simply impractical.  In support of their motion, *Amici* -- who represent the interests of hundreds of thousands of businesses of all sizes -- state the following:

    1.    The Chamber is the world's largest business federation.  It represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.  An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts.  To that end, the Chamber regularly files *amicus curiae* briefs in cases raising issues of concern to the nation's business community, including, specifically, employers.  The Chamber is also an employer which must file the Revised EEO-1 Report.

    2.    HRPA is a public policy advocacy organization representing the chief human resource officers of major employers. HRPA consists of more than 375 of the largest corporations doing business in the United States and globally. Collectively, their companies employ more than 10 million employees in the United States, nearly 9 percent of the private sector workforce. Since its founding, one of HRPA's principle missions has been to ensure that

laws and policies affecting human resources are sound, practical, and responsive to labor and employment issues arising in the workplace.

3.   ABC is a national construction industry trade association representing more than 21,000 members. ABC membership represents all specialties within the U.S. construction industry and is comprised primarily of firms that perform work in the industrial and commercial sectors, including government contractors.

4.   AGC is a nationwide trade association of construction companies and related firms. It came into existence in 1918, and over time it has become the recognized leader of the construction industry in the United States. Today, it has more than 26,000 members in 88 chapters stretching from Puerto Rico to Hawaii. These members construct both public and private buildings, including offices, apartments, hospitals, laboratories, schools, shopping centers, factories and warehouses. They also construct a wide variety of other structures, such as highways, bridges, tunnels, dams, airports, industrial plants, pipelines, power lines and both clean and waste water facilities.  The EEO-1 reporting requirement applies to a great many, if not most of these firms, and they therefore have a great interest in this Court's recent ruling on the nature and scope of that requirement.  Indeed, they are deeply concerned that they cannot meet a May 31, 2019 deadline, and further, that they would risk future liability for mistakes they would inevitably make in attempting to do so.

5.   Founded in 1976, CWC (formerly the Equal Employment Advisory Council ("EEAC")), is the nation's leading nonprofit association of employers dedicated exclusively to helping its members develop practical and effective programs for ensuring compliance with fair employment and other workplace requirements.  Its membership includes more than 200 major U.S. corporations, collectively providing employment to millions of workers. CWC's directors

and officers include many of industry's leading experts in the field of equal employment opportunity and workplace compliance. Their combined experience gives CWC a unique depth of understanding of the practical as well as legal considerations relevant to the proper interpretation of fair employment policies and requirements.

6.      The Institute, formerly known as The OFCCP Institute, is a national not-for-profit membership organization that trains and educates Federal contractors and subcontractors (collectively, "contractors") in understanding and complying with their affirmative action and equal employment obligations.  It helps contractors understand and effectively respond to and comply with the new complex and technology-based affirmative action and non-discrimination compliance obligations through training and education.  The Institute's Members are representative of nine diverse industries, with over 498,000 employees, annual revenues ranging from below $10 million to over $1 billion, and a total of 8,965 separate establishments.

7.      The NAM is the largest manufacturing association in the United States, representing small and large manufacturers in every industrial sector and in all 50 states. Manufacturing employs more than 12 million men and women, contributes $2.25 trillion to the U.S. economy annually, has the largest economic impact of any major sector and accounts for more than three-quarters of all private-sector research and development in the nation.  The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States.

8.      NFIB is the nation's leading small business association, representing members in Washington, D.C., and all 50 state capitals.  Founded in 1943 as a nonprofit, nonpartisan organization, NFIB's mission is to promote and protect the right of its members to own, operate and grow their businesses.

9.     NRF is the world's largest retail trade association, representing all aspects of the retail industry. NRF's membership includes discount and department stores, home goods and specialty stores, Main Street merchants, grocers, wholesalers, chain restaurants, and Internet retailers. Retail is the nation's largest private sector employer, supporting one in four U.S. jobs—42 million working Americans. Contributing $2.6 trillion to annual GDP, retail is a daily barometer for the nation's economy. NRF regularly advocates for the interests of retailers, large and small, in a variety of forums, including before the legislative, executive, and judicial branches of government. As the industry umbrella group, NRF periodically submits *amicus* briefs in cases raising significant issues that are important to the retail industry.

10.    RLC is a public policy organization affiliated with and founded by the National Restaurant Association, the largest trade association representing the restaurant and foodservice industry in the world.  The National Restaurant Association was founded in 1919 and launched RLC in 2015 to provide courts with the industry's perspective on legal issues significantly impacting our industry.  Specifically, RLC highlights the potential industry-wide consequences of pending federal, state, and/or local government actions, such as this one.  One of its core functions is to provide collective advocacy for the industry, as it is doing in this litigation.  It is a very labor-intensive industry comprised of over one million restaurants and other foodservice outlets employing almost 15 million people–approximately 10 percent of the U.S. workforce.  Restaurants and other foodservice providers are the nation's second largest private-sector employer and many are required to comply with EEO-1 reporting obligations.  RLC routinely advocates on behalf of the industry on matters of workforce policy and represents the interests of the National Restaurant Association members in matters before the courts.

11. SHRM works to create better workplaces where employers and employees thrive together. As the voice of all things work, workers and the workplace, SHRM is the foremost expert, convener and thought leader on issues impacting today's evolving workplaces. With 300,000+ Human Resource and business executive members in 165 countries, SHRM impacts the lives of more than 115 million workers and families globally.

12. *Amici* have a substantial interest in the outcome of this case. *Amici* are strongly committed to the eradication of discrimination in the workplace and are long-standing supporters of reasonable and necessary steps designed to achieve the goal of equal employment opportunity for all -- steps that include non-discriminatory compensation practices and compliance with applicable laws and other legal requirements. *Amici* are also strongly committed to ensuring compliance with employment-related reporting obligations. Any requirement to comply with Component 2 in the near future would, however, impose an extraordinary and wholly unrealistic burden on employers.

13. District Courts have "inherent authority" to grant participation by an *amicus curiae*. *Youming Jin v. Ministry of State Sec.,* 557 F. Supp. 2d 131, 136 (D.D.C. 2008). In determining whether to grant leave to participate as an *amicus*, this Court has "broad discretion." *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 519 F. Supp. 2d 89, 93 (D.D.C. 2007). Participation by an *amicus curiae* is generally allowed when "the information offered is timely and useful." *Ellsworth Assocs. v. United States,* 917 F. Supp. 841, 846 (D.D.C. 1996) (internal citation omitted). Thus, the "filing of an *amicus* brief should be permitted if it will assist the judge 'by presenting ideas, arguments, theories, insights, facts or data that are not to be found in the parties' briefs.'" *Northern Mariana Islands v. United States*, No. 08-1572, 2009 WL 596986, at *1 (D.D.C. Mar. 6, 2009) (quoting *Voices for Choices v. Ill. Bell Tel. Co.,* 339

F.3d 542, 545 (7th Cir. 2003)).  In short, courts generally permit third parties to participate as *amicus curiae* when they have "relevant expertise and a stated concern for the issues at stake in [the] case," *District of Columbia v. Potomac Elec. Power Co.,* 826 F. Supp. 2d 227, 237 (D.D.C. 2011).

14.     Here, the Motion is timely.  It was only on March 4, when the Court issued its Opinion, that employers' immediate capabilities and constraints in submitting Component 2 data to the EEOC became an issue.  And it was only on March 19 that the Court gave the government until April 3 to provide a submission on the EEOC's anticipated timeline for implementing Component 2.  Consideration of *Amici*'s brief will not delay the proceeding, as it is filed on the same date (April 3) the Court will receive the government's submission.  The brief will provide critical information necessary for consideration by the Court in its ruling — information that is not being provided by the parties to this case.

15.     This Court has allowed *amicus curiae* participation when the *amicus* "has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."  *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003) (citing *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997)).  *Amici*'s participation in this case would be appropriate on this ground.  *Amici* have unique information and perspective that will help the Court in its decision, particularly as the Court weighs and considers the formidable challenges employers face regarding compliance.  *Amici* provide the unique perspective of the practicalities of the workplace and the Human Resource Information Systems ("HRIS") and payroll systems that will need to be accessed to satisfy the requirements of Component 2.  Although OMB and EEOC are defendants in this litigation, it is the nation's employers that must implement the EEOC's reporting requirements and the Court's decision.  It

will take employers time to obtain resources, make technological adjustments, and develop the requisite expertise to comply with this new, substantial recordkeeping obligation.

16. Ensuring that the practicalities of the workplace and employers' systems and resources are considered is critical to ensuring the reasonableness of any timetable for an employer's compliance with a completely new, and substantially expanded, recordkeeping obligation. *Amici* will also provide key information as to why employers could not have reasonably foreseen the change in circumstances that would now require immediate compliance as a result of the Court's Opinion.

17. The impact of the Opinion's remedy on employers nationwide is of vital concern to members of *Amici*, the vast majority of which are employers who are immediately affected by the Court's Opinion. The Revised EEO-1 Report significantly expands the data collection obligations of employers from 180 data fields to 3,660 data fields, all of which are to be completed for each employer location. Accurate and fully-verified Revised EEO-1 Reports are not automatically generated using existing technology, as the proposed changes require different database systems (e.g., HRIS and Payroll) to interact with each other.

18. *Amici*, including the Chamber, HR Policy Association, the Center for Workplace Compliance, The Institute for Workplace Equality, the National Association of Manufacturers and the Society for Human Resource Management, as well as other interested members of the public such as human resource organizations, actively participated in providing information to OMB (and the EEOC) describing substantial monetary burdens and time-consuming payroll and HRIS system challenges employers faced in light of the significantly expanded data collection requirements in the Revised EEO-1 Report.[1] Employer data collected and provided to OMB

---

[1] *See* Letter from Chamber of Commerce of the U.S. to Bernadette Wilson, Acting Executive Officer, Executive Secretariat, EEOC (Apr. 1, 2016), JA153; Letter from Chamber of Commerce of the U.S. to John M. Mulvaney,

demonstrated that the EEOC had grossly understated the burden that compliance with Component 2 of the Revised EEO-1 Report would have on employers.

19. The attached *amici curiae* brief satisfies the standards for submission. *See* Ex. 1. As is explained more fully above and in their brief, the *amici curiae* brief sets forth information and arguments of the employer community that no other party has presented to this Court. This information and these arguments are essential to understanding the impact and the timeline for compliance with Component 2. Given that this Court's March 4, 2019 Opinion has a direct, immediate, and substantial impact on all employers throughout the United States with 100 or more employees, we urge the Court to grant this request and consider the capabilities, constraints and, interests of the employer community.

20. Counsel for *Amici* have conferred with counsel for all parties. Defendants do not oppose this Motion. Plaintiffs stated they oppose this Motion on the basis of timeliness. *Amici* believe their filing now, as the Court considers information from the EEOC regarding next steps and a timeline for implementation of the Court's March 4, 2019 Opinion, is timely and important for all the reasons stated above and in the attached *Amici* brief.

## CONCLUSION

For these reasons, *Amici* respectfully requests leave to file their attached *amici curiae* brief.

---

Dir., OMB (Feb. 27, 2017), JA 046; Letter from Mark Wilson, HR Policy Ass'n to John Mulvaney, Dir. OMB (Apr. 13, 2017), JA065; Letter from Equal Employment Advisory Council to Hon. Mick Mulvaney, Dir., OMB (Mar. 20, 2017), JA022;; Letter from Center for Workplace Compliance to Hon. Neomi Rao, Administrator, OIRA (July 21, 2017), JA030.; The OFCCP Institute Comment, available at: https://www.regulations.gov/document?D=EEOC-2016-0002-0278 (last visited Apr. 3, 2019); NAM EEOC EEO-1 Revision Comments, available at: https://www.regulations.gov/document?D=EEOC-2016-0002-0235 (last visited Apr. 3, 2019); SHRM Comment on EEOC Feb 2016 EEO1 Proposal, available at: https://www.regulations.gov/document?D=EEOC-2016-0002-0911 (last visited Apr. 3, 2019).

Dated: April 3, 2019

Respectfully submitted,

Seyfarth Shaw LLP

/s/ *Lawrence Z. Lorber*
Lawrence Z. Lorber (D.C. Bar No. 103127)
Seyfarth Shaw LLP
975 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 828-5341
Facsimile:  (202) 828-5393

Camille A. Olson (*pro hac vice* pending)
Annette Tyman (*pro hac vice* pending)
Richard B. Lapp (*pro hac vice* pending)
Seyfarth Shaw LLP
233 S. Wacker Dr. Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Counsel for *Amici Curiae*
Chamber of Commerce of the United States
HR Policy Association
Associated Builders and Contractors
Associated General Contractors of America
Center for Workplace Compliance
Institute for Workplace Equality
National Association of Manufacturers
National Federation of Independent Business
National Retail Federation
Retail Litigation Center, Inc.
Restaurant Law Center
Society for Human Resource Management

Respectfully submitted,

McGuiness, Yager & Bartl LLP

 s/ G. Roger King
G. Roger King (0022025)
McGuiness, Yager & Bartl LLP
1100 13th Street, NW, Suite 850

10

Washington, DC 20005
Phone: (202) 375-5004
Facsimile: (202) 789-0064
rking@chrolaw.com

Co-Counsel for Amicus Curiae
HR Policy Association

*Additional Amici Co-Counsel*
Daryl Joseffer (DC Bar No. 457185)
U.S. Chamber Litigation Center
1616 H Street, NW
Washington, DC 20062
(202) 463-5337
Counsel for the Chamber of Commerce of the United States of America

David S. Fortney (DC Bar No. 454943)
Fortney & Scott
1750 K St., NW, Suite 325
Washington, DC 20006
Counsel, The Institute for Workplace Equality

Leland P. Frost (D.C. Bar. No. 1044442)
Manufacturers' Center for Legal Action
733 10th Street NW, Suite 700
Washington, DC 20001
(202) 637-3000
Counsel for Amicus Curiae National Association of Manufacturers

Deborah White (DC Bar No. 444974)
President, Retail Litigation Center
Sr. EVP & General Counsel, RILA
Retail Litigation Center, Inc.
1700 N. Moore Street, Suite 2250
Arlington, VA 22209

James Banks, General Counsel (DC Bar No. 503261)
Society for Human Resource Management
1800 Duke Street
Alexandria, VA 22314