## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*, | ) ) ) |
| *Plaintiffs,* | ) ) |
| | ) **Case No. 17-cv-2458 (TSC)** |
| v. | ) ) |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.*, | ) ) ) |
| *Defendants.* | ) ) ) |

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, HR POLICY ASSOCIATION, ASSOCIATED BUILDERS AND CONTRACTORS, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, CENTER FOR WORKPLACE COMPLIANCE,  INSTITUTE FOR WORKPLACE EQUALITY, THE NATIONAL ASSOCIATION OF MANUFACTURERS, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, NATIONAL RETAIL FEDERATION, RESTAURANT LAW CENTER, RETAIL LITIGATION CENTER, INC., AND SOCIETY FOR HUMAN RESOURCE MANAGEMENT AS *AMICI CURIAE***

Dated: April 3, 2019

Respectfully submitted,

Seyfarth Shaw LLP

/s/ *Lawrence Z. Lorber*
Lawrence Z. Lorber (D.C. Bar No. 103127)
Seyfarth Shaw LLP
975 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 828-5341
Facsimile:  (202) 828-5393

Camille A. Olson (*pro hac vice* pending)
Annette Tyman (*pro hac vice* pending)
Richard B. Lapp (*pro hac vice* pending)
Seyfarth Shaw LLP
233 S. Wacker Dr. Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Additional Counsel on Next Page*

Counsel for *Amici Curiae*
Chamber of Commerce of the United States
HR Policy Association
Associated Builders and Contractors
Associated General Contractors of America
Center for Workplace Compliance
Institute for Workplace Equality
National Association of Manufacturers
National Federation of Independent Business
National Retail Federation
Restaurant Law Center
Retail Litigation Center, Inc.
Society for Human Resource Management

  s/ G. Roger King
G. Roger King (0022025)
McGuiness, Yager & Bartl LLP
1100 13th Street, NW, Suite 850
Washington, DC 20005
Phone: (202) 375-5004
Facsimile: (202) 789-0064
rking@chrolaw.com

Co-Counsel for Amicus Curiae
HR Policy Association
*Additional Amici Co-Counsel*

Daryl Joseffer (DC Bar No. 457185)
U.S. Chamber Litigation Center
1616 H Street, NW
Washington, DC 20062
(202) 463-5337
Counsel, The Chamber of Commerce of the
United States of America

David S. Fortney (DC Bar No. 454943)
Fortney & Scott
1750 K St., NW, Suite 325
Washington, DC 20006
Counsel, The Institute for Workplace Equality

Leland P. Frost (D.C. Bar. No. 1044442)
Manufacturers' Center for Legal Action
733 10th Street NW, Suite 700
Washington, DC 20001
(202) 637-3000
Counsel for Amicus Curiae National
Association of Manufacturers

Deborah White (DC Bar No. 444974)
President, Retail Litigation Center
Sr. EVP & General Counsel, RILA
Retail Litigation Center, Inc.
1700 N. Moore Street, Suite 2250
Arlington, VA 22209

James Banks (DC Bar No. 503261)
General Counsel
Society for Human Resource Management
1800 Duke Street
Alexandria, VA 22314

## **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ...................................................................................................... 1

ARGUMENT ............................................................................................................................... 3

I.      It is Not Feasible For Employers To File 2018 Employer Data in Component 2 of the
        EEO-1 Report.................................................................................................................... 3

        A.      The EEOC Has Always Recognized that Changes to EEO-1 Reporting
                Require Substantial Lead Time..............................................................................3

        B.      Employers Provided EEOC and OMB with Information that
                Demonstrates that Complying with Component 2 of the EEO-1 Is Not
                Feasible in the Near Future ...................................................................................5

        C.      Employers Reasonably Relied on Explicit Direction from OMB and
                EEOC Regarding Their EEO-1 Filing Obligations ...............................................10

        D.      Employers Must Be Given Sufficient Lead Time to Prepare For the
                Revised EEO-1......................................................................................................13

II.     SUBMISSION OF COMPONENT 2 DATA SHOULD NOT BE REQUIRED UNTIL
        EEOC CAN PRESERVE CONFIDENTIALITY............................................................. 16

CONCLUSION.......................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fed'n of Labor & Cong. of Indus. Organizations v. Chao*,
  298 F. Supp. 2d 104 (D.D.C. 2004), *rev'd on other grounds*, 409 F.3d 377
  (D.C. Cir. 2005) ................................................................................................5

**Statutes**

35 U.S.C. 44 Sec. 3507(a) (3) ...........................................................................12

Affordable Care Act.............................................................................................5

FLSA..................................................................................................................15

Paperwork Reduction Act ....................................................................................3

**Other Authorities**

5 CFR 1320.10 (f) ...........................................................................................6, 7

78 Fed. Reg. 218 (January 2, 2013) ....................................................................5

79 Fed. Reg. 57465 (September 25, 2014) ..........................................................5

81 Fed. Reg 45479, 45484 (July 14, 2016)......................................................4, 6

82 Fed. Reg. 43362-01 (Sept. 15, 2017) ...........................................................12

2018 Federal Register .......................................................................................12

Fed. R. App. P. 29(a)(4).......................................................................................1

Local Rule 7(o)(4)................................................................................................1

## INTERESTS OF *AMICI CURIAE*

*Amici* represent hundreds of thousands of employers of all sizes across the country, most of whom are required to comply with EEO-1 reporting requirements.[1]  The interest of *amici* is direct, immediate, and different than the interests of the parties.[2]  The Revised EEO-1 Report ("Revised EEO-1 Report" or "Component 2") is substantially different and more burdensome than what was previously required of employers.  Employers are not parties to this litigation, and the Court has not heard from the employer community with respect to the significant work, resources, and time that employers must devote to create, capture, and produce the Revised EEO-1 Report.  *Amici*'s perspective is keenly relevant to the Court's scheduled proceedings relating to the appropriate timetable for the collection of this information.

## SUMMARY OF ARGUMENT

The employer community is the group most directly affected by the Court's Order lifting the Office of Management and Budget's ("OMB") stay of the Revised EEO-1 Report.  When the Equal Employment Opportunity Commission ("EEOC") previously amended the EEO-1 Report, it allowed employers at least 18 months to comply.

---

[1] The Chamber of Commerce of the United States of America ( the "Chamber"), the HR Policy Association ("HRPA"), Associated Builders and Contractors ("ABC"), Associated General Contractors of America ("AGC"), the Center for Workplace Compliance ("CWC"), The Institute for Workplace Equality ("The Institute"), The National Association of Manufacturers ("The NAM"), National Federation of Independent Business ("NFIB"), National Retail Federation ("NRF"), Restaurant Law Center ("RLC"), Retail Litigation Center, Inc., and the Society for Human Resource Management ("SHRM") (collectively referred to as "*Amici*").

[2] Pursuant to Local Rule 7(o)(4) and Fed. R. App. P. 29(a)(4), the *Amici* state: this brief was authored in whole by *Amici's* outside counsel, Seyfarth Shaw LLP, and no party or party's counsel authored this brief in whole or in part.  No party's counsel contributed money that was intended to fund preparing or submitting this brief.  No person, other than the *Amici* and their Members, contributed money that was intended to fund preparation or submission of this brief.

That compliance transition period is imperative here because, as employer comments in the administrative record confirm, employers cannot simply "flip a switch" and produce payroll, hours worked, job category, and demographic data that has never been organized or previously produced in Component 2 format.  Component 2 vastly expands the data fields employers must complete.  Component 1 contains only 180 data fields per employer location.  Component 2 replaces Component 1 for all private employers with more than 100 employees and contains 3,660 data fields per employer location.

Providing the EEOC with 3,660 data fields per employer location in Component 2 of the EEO-1 Report requires sufficient lead time for employers to revise their systems, implement new procedures, and train employees.  That includes time to prepare Human Resource Information Systems ("HRIS"), payroll, and other workplace systems to provide accurate Component 2 data. It also includes time needed by employers to work with their vendors to revise and update their systems and perform other critical work to prepare for collection and submission of Component 2 data to the EEOC. And employers must then begin to capture new data.  Under Component 2, for example, employers' data collection and reporting must factor in employee time off to compute hours worked, and other factors relevant to determining the newly required information. That process is estimated to take at least 18 months, the amount of time EEOC originally provided when the Component 2 form was issued in September 2016.[3]  To date, employers have followed the express and repeated direction of the EEOC: that 2018 EEO-1 Report data must

---

[3] Although the time needed to comply is substantial, it is difficult to put a precise number of months on it.  Amici believe that the EEOC was right when it previously decided that 12 months was not enough and extended the time to 18 months.  Another proposed amicus brief suggests a substantial though shorter time period.  Regardless, the point is that compliance will require a considerable amount of time well beyond May 2019.

include only Component 1.  As a result, employers have not undertaken the enormous burden of preparing to comply with Component 2. [4]

For that reason, preparing to gather data *prospectively* will require at least 18 months' lead time. Gathering data *retroactively* for 2018 in Component 2 form is simply impractical.

Finally, appropriate protection for highly confidential pay data is an unresolved issue. Component 2 should not go into effect without confirmation that adequate EEOC protocols will be in place to protect highly confidential pay data required for the first time.[5]

## ARGUMENT

### I.      IT IS NOT FEASIBLE FOR EMPLOYERS TO FILE 2018 EMPLOYER DATA IN COMPONENT 2 OF THE EEO-1 REPORT

#### A.      The EEOC Has Always Recognized that Changes to EEO-1 Reporting Require Substantial Lead Time

The EEOC first required employers to file the annual EEO-1 Report in 1966.  Forty years later, in 2006, the EEOC announced the first major changes to the EEO-1 Report, changing the

---

[4] In Defendants' Submission in Response To The Court's Questions Raised During the March 19, 2019 Status Conference filed today ("Defendants' Submission"), EEOC's Acting Chair determined that it was necessary for her to extend the Component 2 collection deadline to September 30, 2019 from May 31, 2019, to accommodate the EEOC's significant practical challenges in collecting Component 2 data. EEOC Submission in Response to March 19 Status Conference, ¶ 4, ECF No. 54.  The September 30, 2019 deadline proposed to accommodate the EEOC's challenges did not take into consideration "significant issues" the supporting Declaration of Samuel C. Haffer, the EEOC's Chief Data Officer, noted employers had raised with the EEOC regarding the immediate reporting of Component 2 data, citing a March 29, 2019 letter to the EEOC from the National Payroll Reporting Consortium, Inc. Decl. of Samuel Haffer ¶ 22 n. 5, ECF No. 54-1. The Haffer Declaration also raised numerous concerns, including significant issues with data validity and data reliability of the Component 2 data, under a collection timeline of September 30, 2019. *Id.* at ¶¶ 27, 29

[5] *Amici* continue to believe that the Revised EEO-1 Report does not comply with the Paperwork Reduction Act, but limit this brief to the implementation issues this Court is now considering.

race and ethnicity designations and adjusting the reported job categories.[6]  Even though those amendments did not change the report's basic structure, they did not go into effect until 20 months after they were announced.

A decade later, on February 1, 2016, the EEOC proposed a revision to the EEO-1 Report. For the first time, the EEOC sought to collect from employers the total number of employees and total number of hours worked for 12 different pay bands, by gender, race, and ethnicity, and for each of the 10 EEO-1 job categories. The EEO-1 Report requires 180 data points.  The Revised EEO-1 Report, by contrast, would require employers to submit 3,660 data points for each employer location.  In its Final Submission to OMB, the EEOC expressly recognized that "employers reliant on HRIS and payroll software provided comments that they would have insufficient time to budget, develop, and implement new reporting systems if the 2017 EEO-1 Report were to be due on September 30, 2017."[7]  The EEOC further noted that "[e]mployers lacking HRIS and payroll software said they would have a variety of implementation challenges depending on how they organized their records." *Id.*  As a result, the EEOC added six months of implementation time on top of the one year it had originally proposed as the timetable for filing the Revised EEO-1 Report.  On July 14, 2016, the EEOC accordingly published its final submission to OMB providing that the Revised EEO-1 Report containing 2017 data would be due on March 31, 2018 (an 18-month period).

The EEOC's 2006 and 2017 timetables for employers to comply with the revised EEO-1 Report are similar to other timetables set by federal agencies for compliance with new

---

[6] *See* EEOC Press Release: EEOC Implements Final Revisions to EEO-1 Report, available at: https://www.eeoc.gov/eeoc/newsroom/release/archive/1-27-06.html (last visited Apr. 1, 2019) (describing the changes to the EEO-1 Report).

[7] 81 Fed. Reg 45479, 45484 (July 14, 2016).

recordkeeping requirements.  *See, e.g., Am. Fed'n of Labor & Cong. of Indus. Organizations v. Chao*, 298 F. Supp. 2d 104 (D.D.C. 2004), *rev'd on other grounds*, 409 F.3d 377 (D.C. Cir. 2005) (two month transition period to begin tracking information for unions to report 14 months later was unreasonable, arbitrary and capricious; unions were provided at least eight months to develop systems to track data that was to be reported no earlier than 20 months after the financial reporting requirement was announced);  79 Fed. Reg. 57465 (September 25, 2014) (Department of Labor delayed amended reporting obligations for one year to ease the implementation burdens); 78 Fed. Reg. 218 (January 2, 2013) (Affordable Care Act ("ACA") allowed employers nearly two years to create and test their reporting systems).

      B.      <u>Employers Provided EEOC and OMB with Information that Demonstrates that Complying with Component 2 of the EEO-1 Is Not Feasible in the Near Future</u>

The EEOC's decision to allow employers 18 months to come into compliance rests on solid support in the administrative record.

*Amici*, including the Chamber, HR Policy Association, the Center for Workplace Compliance, The Institute for Workplace Equality, the National Association of Manufacturers and the Society for Human Resource Management, as well as other interested members of the public such as human resource organizations, actively participated in providing information to OMB (and the EEOC) describing substantial monetary burdens and time-consuming payroll and HRIS system challenges employers faced in light of the significantly expanded data collection requirements in the Revised EEO-1 Report.  See Letter from Chamber of Commerce of the U.S. to Bernadette Wilson, Acting Executive Officer, Executive Secretariat, EEOC (Apr. 1, 2016), JA153; Letter from Chamber of Commerce of the U.S. to John M. Mulvaney, Dir., OMB (Feb. 27, 2017), JA 046; Letter from Mark Wilson, HR Policy Ass'n to John Mulvaney, Dir. OMB (Apr. 13, 2017), JA065; Letter from Equal Employment Advisory Council to Hon. Mick

Mulvaney, Dir., OMB (Mar. 20, 2017), JA022;; Letter from Center for Workplace Compliance

to Hon. Neomi Rao, Administrator, OIRA (July 21, 2017), JA030.; The OFCCP Institute

Comment, available at: https://www.regulations.gov/document?D=EEOC-2016-0002-0278 (last

visited Apr. 3, 2019); NAM EEOC EEO-1 Revision Comments, available at:

https://www.regulations.gov/document?D=EEOC-2016-0002-0235 (last visited Apr. 3, 2019);

SHRM Comment on EEOC Feb 2016 EEO1 Proposal, available at:

https://www.regulations.gov/document?D=EEOC-2016-0002-0911 (last visited Apr. 3, 2019)

      After OMB initially approved the proposed EEO-1 revisions on September 29, 2016,

*Amici* provided additional information to OMB in early 2017, again showing in particular that

the EEOC had not met its requirement to minimize the burden of the proposed data collection

and that the agency had effectively ignored confidentiality concerns.[8]  The correspondence

enumerated the material errors in the EEOC's burden estimates regarding the costs of preparing

and filing the Revised EEO-1 Report, and the agency's failure to timely propose for comment the

forms and procedures necessary for employers to comply.[9]

---

[8] *See* Letter from Chamber of Commerce of the U.S. to John M. Mulvaney, Dir., OMB (Feb. 27, 2017), JA 046; Letter from Mark Wilson, HR Policy Ass'n to John Mulvaney, Dir. OMB (Apr. 13, 2017), JA065.

[9] *See id*; 5 CFR 1320.10 (f) ("Prior to the expiration of OMB's approval of a collection of information, OMB may decide on its own initiative, after consultation with the agency, to review the collection of information. Such decisions will be made only when relevant circumstances have changed or the burden estimates provided by the agency at the time of initial submission were materially in error. Upon notification by OMB of its decision to review the collection of information, the agency shall submit it to OMB for review under this part.").

Significantly, the information provided to OMB describes the actual experience of employers in attempting to comply with the Component 2 obligations.  This information is fully developed in the administrative record of the OMB's decision to stay its prior approval.[10]

Examples of *Amici* materials presented to OMB are set forth below. In its submissions to OMB dated August 15, 2016 and February 27, 2017, the Chamber demonstrated that the EEOC had grossly understated the burden of the Revised EEO-1 Report at $53.5 million per year; whereas, the Chamber Survey of companies with 100 or more employees demonstrated that the cost of the EEOC's Revised EEO-1 Report exceeds $400 million in pure labor costs alone, and carries a total burden of $1.3 billion per year for all businesses employing 100 or more employees.[11]  *See* Letter from Chamber of Commerce of the U.S. to John M. Mulvaney, Dir., OMB (Feb. 27, 2017), JA 046.

The Chamber explained that Component 2 would require employers to make investments in software upgrades, internal reporting processes, and new staffing in order to comply. The Chamber Survey showed that the EEOC's one-time cost estimate for implementation of Component 2 of $27.2 million was significantly lower than the Chamber Survey's data, both with respect to one-time costs of complying with the new Component 2 and with respect to employers' increase in their yearly cost to comply with the Revised EEO-1 Report.

First, the Chamber Survey showed that one-time costs and burdens for implementing new data compilation and query systems needed to comply with the revised reporting requirements

---

[10] *See id.*; Letter from Chamber of Commerce of the U.S. to Bernadette Wilson, Acting Executive Officer, Executive Secretariat (Apr. 1, 2016), JA153.

[11] The Chamber Survey collected data from employers who collectively file an estimated 20,000 EEO-1 Reports each year (one per qualifying establishment within each company). The Chamber Survey respondents represent a wide variety of industries and range in size from employers with 400 employees to more 200,000 employees.

and training employees to use these systems will total $41.9 million in direct labor costs.  The

Chamber Survey data also calculated additional one-time overhead costs. These additional one-

time overhead costs for design, testing, and implementation of information systems were

estimated at $136.1 million.  In total, based on the Chamber Survey of employers who will have

to comply with Component 2, the record shows that one-time costs for design, testing, and

implementation of information systems to provide Component 2 data to the EEOC will cost

employers an immediate $178 million.  *Id.*

Second, annual collecting and reporting on the Revised EEO-1 Report would require, on

average, 8.066 million hours (up from 4.486 million hours for completion of Component 1), or

approximately $400.8 million, with $187 million attributable to the additional cost of completing

the additional data required under Component 2. *Id*

Employers also provided EEOC, OMB, and Congress with detailed information on the

process of gathering and processing the data that would be necessary to come into compliance

with the pay and hours components of the Revised EEO-1 Report, as well as of the burden and

diversion of limited human resources and other resources that would be drawn from other

ongoing compliance initiatives to comply with the Revised EEO-1 Report.  *See* Written

Testimony of David S. Fortney, Esq. on behalf of The OFCCP Institute, *available at*:

https://www1.eeoc.gov//eeoc/meetings/3-16-16/fortney.cfm?renderforprint=1 (last visited Apr.

3, 2019).  For example, The Institute surveyed its members, and presented to both EEOC and

OMB the following findings:

> The EEOC substantially underestimated the amount of time and money employers
> would spend preparing and filing the Revised EEO-1 Report.
>
> Inserting the new pay and hours worked data into Component 2 requires
> employers to enable payroll and HRIS systems to work together to supply the
> required information, and seventy-five percent (75%) of The Institute's members
> responded that they would have to develop or purchase new software, at an

average cost of $33,000 per employer to enable their companies to match their EEO-1 data with W-2 data.

In addition to the $33,000 per employer initial software purchase, The Institute's survey estimated an ongoing burden of maintenance of the new system at an average annual cost of $8,918.75.

As *Amici* discussed in their prior submissions to OMB, the EEOC's burden estimates ignored the cost of programming changes that may be necessary, changes such as "queries to payroll systems for W-2 data" and "the ability to link that data with employee lists generated from the separate HRIS."  *See*  Letter from Equal Employment Advisory Council to Mick Mulvaney, Dir., OMB (Mar. 20, 2017), JA026.

Many employers store their W-2, hours worked, and EEO data in separate database systems.[12]  The data contained within the separate systems would need to be coded so that they align into a single reporting structure that would then need be matched with EEO-1-related information (e.g., establishment identifiers, EEO job categories, and salary bands).  This process is not a simple cut and paste of a few lines of data.  Instead, it requires a complex understanding of the separate systems and a verifiable process to ensure accurate reporting of the Revised EEO-1 Report.  Testimony on behalf of SHRM explained that for one employer, even after conducting internal validation and utilizing a third-party vendor to test their data file before submission, 20% of the employer's individual location reports had to be manually reviewed.  *Id.*

This process is further complicated by the fact that the EEOC requires all subsidiaries of parent companies to file jointly regardless of how the different subsidiaries collect and store their information.  *See* EEO-1 Instructions, *available*

---

[12] See Written Testimony on behalf of Society for Resource Management, EEOC Hearing of March 16, 2016 - Public Input into the Proposed Revisions to the EEO-1 Report, available at: https://www.eeoc.gov/eeoc/meetings/3-16-16/murray.cfm (last visited Apr. 1, 2019). *See* Written Testimony of David S. Fortney, Esq. on behalf of The OFCCP Institute, *available at*: https://www.eeoc.gov/eeoc/meetings/3-16-16/fortney.cfm (last visited Apr. 3, 2019).

*at:*https://www.eeoc.gov/employers/eeo1survey/2007instructions.cfm (last visited Apr. 1, 2019).

Subsidiaries may keep their payroll and demographic information in completely separate systems

that would need to be harmonized to combine their outputs into a single file.  When subsidiaries

use different systems for their HRIS and payroll systems, this complicates the data collection

process even more, since those systems may not track the necessary data fields consistently,

which would require sophisticated data queries to extract information, and may also require

manual adjustments to combine the data into a reportable format.

> C.    Employers Reasonably Relied on Explicit Direction from OMB
>        and EEOC Regarding Their EEO-1 Filing Obligations

As previously noted, authority for collection of data pursuant to the EEO-1 Report is

founded on statutory and regulatory requirements that the EEOC is charged with enforcing.  *See*

Legal Basis for Requirements (*available at*:

https://www.eeoc.gov/employers/eeo1survey/legalbasis.cfm (citing Section 709(c) of Title VII

and 29 CFR 1602.7-1602.8) (last visited Apr. 1, 2019).  On the basis of this authority, employers

receive their direction from the EEOC with regard to their EEO-1 data collection requirements.

To date, the EEOC has advised employers that they should file only Component 1 of the EEO-1

Report, and that they should not submit data related to pay and hours worked.  *See* What You

Should Know: Statement of Acting Chair Victoria A. Lipnic about OMB Decision on EEO-1

Pay Data Collection *available at: https://www.eeoc.gov/eeoc/newsroom/wysk/eeo1-pay-data.cfm*

(last visited Apr. 1, 2019)*.*  The employer community has relied on the EEOC's direction, and

has accordingly not taken the preliminary steps needed to comply with the collection and

submission of EEO-1 pay and hours data.[13]  Under the circumstances, employers could not

---

[13] *See* EEOC May Reinstate Pay Data Reporting, available at: http://www.nprc-inc.org/blog/ (last visited Apr. 1, 2019) at 2 ("Because of the OMB stay on the revision, employers and service

reasonably have anticipated the Court's ruling and prepared in advance for such a burdensome

scenario, as it would require employers to devote enormous resources to an undertaking that the

EEOC assured them was unnecessary.  Accordingly, any deadlines must consider the significant

compliance burdens and current constraints on when employers can produce the Revised EEO-1.

On August 29, 2017, OMB advised the EEOC that it was issuing a "review and

immediate stay of the effectiveness" of the collection of hours and compensation data that would

have been required under Component 2 of the Revised EEO-1 Report.  In light of certain

changed circumstances and "material error" in the burden estimates, OMB directed the EEOC to

(1) "submit a *new* information collection package for the EEO-1 form to OMB for review," and

(2) publish a notice in the Federal Register announcing to employers the immediate stay of

Component 2 pay and hours information and confirming that organizations were to use the

previously approved EEO-1 form to meet their compliance obligations.  *See* Memorandum from

OMB to Acting Chair, Victoria Lipnic, EEOC (Aug. 29, 2017), JA020-021.

On the basis of OMB's directive, the EEOC issued a statement on August 30, 2017

regarding OMB's decision.  The EEOC statement informed employers that it would be reviewing

the OMB's order and "evaluating its options" in light of OMB's decision.  In addition, the EEOC

instructed employers to comply with Component 1 of the EEO-1 report by March 2018.  *See*

What You Should Know: Statement of Acting Chair Victoria A. Lipnic about OMB Decision on

EEO-1 Pay Data Collection *available at: https://www.eeoc.gov/eeoc/newsroom/wysk/eeo1-pay-data.cfm* (last visited Apr. 1, 2019).

The EEOC also followed OMB's directive to publish a notice in the Federal Register

announcing the immediate stay.  The notice instructed all employers that "until further notice"

---

providers generally did not develop the data collection mechanisms and did not collect and store
the necessary data to comply with such a report for 2018.").

they "should not" submit the compensation and hours worked information that Component 2

would have required.  *See* 82 Fed. Reg. 43362-01 (Sept. 15, 2017).

*Thus, the employer community received at least three express directives that they should*

*produce only Component 1 of the EEO-1 Report until "further notice."*  Importantly, employers

were also aware that the next step in the process would be for EEOC to submit a "new

information collection package for the EEO-1 form to OMB for review," and OMB would need

to provide its approval before employers would be required to comply with the new information

collection request.  *See* Memorandum from OMB to Acting Chair, Victoria Lipnic, EEOC (Aug.

29, 2017), JA021; 35 U.S.C. 44 Sec. 3507(a) (3).  Employers reasonably interpreted all of this to

mean that the Revised EEO-1 Report would be changed and understandably believed that they

must comply with only Component 2.

The EEOC has not altered that guidance.  In fact, the EEOC recently explained that it was

"diligently working on next steps" and that it would provide "further information" to employers

regarding the impact of this Court's decision on the collection of compensation and hours data.

Statement on the 2018 EEO-1 Portal Opening for Component 1 Data, *available at:*

https://www.eeoc.gov/employers/eeo1survey/statement-2018-opening.cfm (last visited Apr. 1,

2019).  In the meantime, employers were instructed to continue to submit Component 1 data as

they had prepared it in other years, this time with a May 31, 2019 reporting deadline. *Id.*

The EEOC's statement makes clear that the agency is still grappling with how best to

proceed under the Court's Order vacating OMB's stay and the September 15, 2018 Federal

Register notices. The EEOC must develop and implement its processes, systems, and protocols

for collecting Component 2 data before it can provide guidance to the employer community

regarding the technical aspects of compliance on the EEOC's survey website.  For instance, the

EEOC's EEO-1 Survey website will need to be overhauled in order to even begin the process of accepting the new hours and pay information.  The EEOC will also need to provide training and develop instructional materials for employers in connection with the new compliance obligations.  Even the electronic file specifications that would be required for the "batch upload" process that the EEOC estimated the majority of employers would use are not available to employers. The EEOC is not ready to collect Component 2 pay and hours data.

        D.      <u>Employers Must Be Given Sufficient Lead Time to Prepare For the Revised EEO-1</u>

 For all of the reasons explained above, employers now face a situation in which they (i) need sufficient time to prepare and (ii) cannot realistically be expected to produce data for past years, including 2018.  The National Payroll Reporting Consortium, Inc. ("NPRC"), a non-profit trade association whose member organizations provide payroll processing and related services to nearly two million U.S. employers, representing over 36% of the private sector workforce, recently explained these points in a letter to the EEOC, OMB, and DOJ, publicly available on its website.  *See* EEOC May Reinstate Pay Data Reporting, a*vailable at*: http://www.nprc-inc.org/blog/ (last visited Apr. 1, 2019).  In Defendants' Submission in Response To the Court's Questions Raised During the March 19, 2019 Status Conference, Defendants informed the Court that the EEOC is "… aware that employers believe that they are likely to experience significant issues regarding the immediate reporting of Component 2 data, based on a March 29, 2019 letter to Acting Chair from the National Payroll Reporting Consortium. Dkt 54-1, Declaration of Samuel Haffer, 24, fn. 5.

        Although NPRC "is strictly neutral as to the appropriateness or need for proposed changes to the EEO-1 annual report," it has made clear that it believes "that [t]he revisions

embodied in Component 2 reporting are very substantial and will require an appropriate amount of time for orderly systems development and testing."  *Id.* at 1, 4.

System design and development, testing, release and related training and communications require substantial lead time.[14]  As NPRC explained:

> Systems development is also not a straightforward task of merely formatting data (assuming such data is available) into an EEOC-defined file specification.  Such projects require specific procedural or systemic handling of complex fact patterns, which may require rulemaking or other guidance from EEOC. A few examples include handling of:
>
> 1. Employees with job classification code changes during the snapshot period, or the full year
>
> 2. Reclassification of a job category during the year
>
> 3. Employees that appeared in the snapshot period but were terminated, deceased or retired by the end of the snapshot period
>
> 4. Employee changes of status (e.g., temporary to regular; part-time to full-time; non-exempt to exempt) during the snapshot period or year
>
> 5. Changes in work location/establishment, or work location/establishment, that become inactive during the period
>
> 6. Employees with more than one job classification concurrently or during the snapshot period

*Id* at 3.

"[A] substantial added complication [is] that the Component 2 pay data report would require retroactive gathering of input.  Because of the OMB stay on the revision, employers and

---

[14] Systems development requires procedural or systemic handling of complex fact patterns to allow data to be accurately formatted into an EEOC-defined file specification.  Examples of such fact patterns include the following:  Employees whose employment, position, location, or pay status changes during the time period being captured.  *See* EEOC May Reinstate Pay Data Reporting, available at: http://www.nprc-inc.org/blog/ (last visited Apr. 1, 2019) at 3.

service providers generally did not develop the data collection mechanisms and did not collect and store the necessary data to comply with such a report for 2018." *Id.* at 2.

As NPRC detailed, hours worked data for 2018 is not generally available, and poses concerns given that Component 2 requires employers to report hours worked data for exempt employees that is not generally collected and stored.  NPRC notes the potential "significant difficulties [employers may face] at this point in re-creating hours of service records for 2018." *Id.* at 2.  For example, recognizing that employers may use a 20 or 40 hour proxy for exempt employees, employers would still be required to retroactively gather data to establish the dates of active employment for each exempt employee, and then translate those dates into weeks worked and ultimately hours worked data.  As NPRC describes:  "For instance, FLSA hours worked is a defined term that does not include all hours that were 'paid' to an employee and excludes time for leave of absence, vacation, jury duty and other hours that were paid but not worked." *Id.* at 2.

As a result, "it may be extraordinarily difficult for some employers to capture or re-create such data even retroactive to January 2019, for any 2019 reports due in 2020." *Id.* at 3.

Employers are also hampered by the fact that the resources that were available for a brief period when the pay data collection tool was moving forward have all been removed from the EEOC's website.  *See* e.g., Questions and Answers: The Revised EEO-1 and Summary Pay Data, *available at*: https://www1.eeoc.gov/employers/eeo1survey/2017survey-qanda.cfm?redirected=1 (last visited Mar. 31, 2019) (explaining that "[t]his page is in the process of being created or has temporarily been inactivated").  For instance, the Revised EEO-1 Report is no longer available on the EEOC's website.  That means that unless the employer retained a copy of the sample form that was posted on the EEOC's website for a short time, they no longer have access to this most basic information - the form itself.  Similarly, the resources that the EEOC provided to the

employer community to assist with their compliance efforts are also no longer available.  Also, the electronic EEO-1 Data File Specifications (i.e., CSV/XML) versions which are necessary for employers to design their reporting systems are no longer available anywhere on the EEOC's website.

In addition, because the Revised EEO-1 Report *replaces* the current EEO-1 Report in both form and substance, a requirement that employers submit Component 2 pay and hours worked data would result in significant waste for employers for all of the time and resources spent working on the Component 1 data that is currently due on May 31, 2019.  Submitting Component 1 data under the format of the current EEO-1 Report, in no way satisfies the collection requirements under the Revised EEO-1 Report.  Employers instead must start over to re-create and produce data and information that does not currently exist.

## II.    SUBMISSION OF COMPONENT 2 DATA SHOULD NOT BE REQUIRED UNTIL EEOC CAN PRESERVE CONFIDENTIALITY

*Amici* have raised concerns to both the EEOC and OMB regarding the EEOC's failure to address the significant privacy and confidentiality concerns related to the collection of highly confidential Component 2 pay data.  *See* Letter from Chamber of Commerce of the U.S. to Bernadette Wilson, Acting Executive Officer, Executive Secretariat, EEOC (Apr. 1, 2016), at JA1534-159 ; Letter from Chamber of Commerce of the U.S. to John M. Mulvaney, Dir., OMB (Feb. 27, 2017), JA 046-52; Letter from Equal Employment Advisory Council to Hon. Mick Mulvaney, Dir., OMB (Mar. 20, 2017), at JA024-25.

In Defendants' Submission today, Samuel Haffer, the EEOC's Chief Data Officer and Director of the Office of Enterprise Data and Analytics ("OEDA"), confirmed that the EEOC currently does not have the internal resources to "make the necessary updates, enhancements, security testing, load and performance testing, data validations and verifications, and application

testing to *securely collect and store this significantly increased volume of highly sensitive Component 2 data*," under its current systems.  Decl. of Samuel Haffer ¶ 21, ECF No. 54-1 (emphasis added).  As a result, the EEOC has determined that the only way it could undertake the collection of Component 2 data for 2018 by September 30, 2019 would be to engage an independent contractor at a cost in excess of $3,000,000 for a one-time collection of 2018 data. *Id*. at ¶ 25.

Given that the EEOC has not explained or put in place appropriate protocols necessary to protect the confidentiality of Component 2 data, *Amici* have heighted concerns regarding the EEOC's ability to ensure their confidential pay data will remain secure.  In an era where data breaches occur frequently, such concerns must be immediately addressed.  This is an especially important issue for employers of choice and those in competitive job markets who treat individual employee pay data confidentially.

## CONCLUSION

For all the reasons set forth herein, *Amici* urge the Court to consider their perspective, including the financial burden, operational challenges, and confidentiality protections applicable to collection of Component 2 data from employers. Consistent with the EEOC's past practice, employers need at least 18 months to comply with Component 2.

Dated: April 3, 2019

Respectfully submitted,

Seyfarth Shaw LLP

/s/ *Lawrence Z. Lorber*
Lawrence Z. Lorber (D.C. Bar No. 103127)
Seyfarth Shaw LLP
975 F Street, NW
Washington, D.C. 20004
Telephone:  (202) 828-5341
Facsimile:  (202) 828-5393

Camille A. Olson (*pro hac vice* pending)
Annette Tyman (*pro hac vice* pending)
Richard B. Lapp (*pro hac vice* pending)
Seyfarth Shaw LLP
233 S. Wacker Dr. Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Counsel for *Amici Curiae*
Chamber of Commerce of the United States
HR Policy Association
Associated Builders and Contractors
Associated General Contractors of America
Center for Workplace Compliance
Institute for Workplace Equality
National Association of Manufacturers
National Federation of Independent Business
National Retail Federation
Restaurant Law Center
Retail Litigation Center, Inc.
Society for Human Resource Management

Respectfully submitted,

McGuiness, Yager & Bartl LLP

  s/ G. Roger King
G. Roger King (D.C. Bar No. 0022025)
McGuiness, Yager & Bartl LLP
1100 13th Street, NW, Suite 850
Washington, DC 20005
Phone: (202) 375-5004
Facsimile: (202) 789-0064
rking@chrolaw.com
Co-Counsel for Amicus Curiae
HR Policy Association

*Additional Amici Co-Counsel*
Daryl Joseffer (DC Bar No. 457185)
U.S. Chamber Litigation Center
1616 H Street, NW
Washington, DC 20062
(202) 463-5337
Counsel, The Chamber of Commerce of the
United States of America

David S. Fortney (DC Bar No. 454943)
Fortney & Scott
1750 K St., NW, Suite 325
Washington, DC 20006
Counsel, The Institute for Workplace Equality

Leland P. Frost (D.C. Bar. No. 1044442)
Manufacturers' Center for Legal Action
733 10th Street NW, Suite 700
Washington, DC 20001
(202) 637-3000
Counsel, The National Association of
Manufacturers

Deborah White (DC Bar No. 444974)
President, Retail Litigation Center
Sr. EVP & General Counsel, RILA
Retail Litigation Center, Inc.
1700 N. Moore Street, Suite 2250
Arlington, VA 22209

James Banks, (DC Bar No. 503261)
General Counsel
Society for Human Resource Management
1800 Duke Street
Alexandria, VA 22314