# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NATIONAL WOMEN'S LAW CENTER, *et al.*,

    *Plaintiffs*,

vs.

OFFICE OF MANAGEMENT AND BUDGET, *et al.*,

    *Defendants*.

Civil Action No. 17-2458 (TSC)

## PLAINTIFFS' OPPOSITION TO MOTIONS FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*

Plaintiffs hereby oppose the two pending motions for leave to file *amici curiae* briefs. *See* Dkt. No. 50 (hereafter "DirectEmployers Motion") and Dkt. No. 57 (hereafter "Chamber of Commerce Motion"). These motions, filed after the Court ruled on the merits of Plaintiffs' claims and on the appropriate remedy, are untimely. There is no pending motion on which it is appropriate for *putative amici* to opine. Indeed, putative *amici* are committed opponents of the EEOC pay data collection who have consistently sought to prevent this collection from taking place regardless of the timeframe for compliance. They have been aware of this case from the beginning, but chose not to participate when the parties briefed and the Court considered the merits and proper remedy. Instead, putative *amici* seek to relitigate issues on which the Court already ruled, effectively seeking to file procedurally improper motions for reconsideration under the guise of *amicus* filings. As such, and as set forth in more detail below, Plaintiffs respectfully request that the Court deny both motions.

District courts have inherent authority to appoint or deny *amici* and private entities are not entitled to such participation. *See Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136

(D.D.C. 2008).  Indeed, the Local Civil Rules set forth requirements for a motion for leave to file an *amicus* brief, which courts may consider in resolving such motions.  Among these, the motion must explain "why the matters asserted are relevant to the disposition of the case" and it must "be filed in a timely manner such that it does not unduly delay the Court's ability to rule on any pending matter."  L. Civ. R. 7(o)(2).  Because putative *amici* do not meet these requirements, their requests should be denied.

This case, which Plaintiffs filed well over a year ago, is complete, aside from ensuring Defendants' compliance with the order entered against them.  As the Court is aware, it granted summary judgment in favor of Plaintiffs on March 4, 2019.  Mem. Op., Dkt. No. 45.  That decision followed extensive briefing by the parties both on threshold issues and on the merits of Plaintiffs' claims.  Further, both Plaintiffs and Defendants addressed the appropriate remedy in their summary judgment briefing, including the expected impact on employers.  *See* Pls.' Mot. Summ. J., Dkt. No. 22-1 at 29-30 (arguing that vacating the stay is the appropriate remedy); Defs.' Opp. Mot. to Dismiss, Dkt. No. 27-1 at 32-34 (arguing that remand without vacatur is appropriate); Pls.' Reply, Dkt. No. 31 at 29-32 (arguing *inter alia* that vacatur would not have disruptive consequences); and Defs.' Reply, Dkt. No. 36 at 18-19 (opposing vacatur because a "vacatur order could upset the current expectation of filers").

As such, there is no pending motion before the Court on which it is appropriate for putative *amici* to opine.  Putative *amici* attempt to frame the summary judgment decision as leaving open the question of "when Compliance with Component 2 reporting requirements would first become due," DirectEmployers Motion at 4, implying that the Court anticipated additional input from the parties on this question.  *See also* Chamber of Commerce Motion at 7.  That is incorrect.  As the Court made clear at the March 19 status conference, while the summary

judgment decision did not set a date certain by which the Component 2 data must be collected, the Court anticipated prompt compliance with the renewed requirement to collect Component 2 data, likely within the same timeframe as the spring 2019 Component 1 collection of calendar year 2018 data. Hr'g Tr. at 15-16. The pending issue in this litigation therefore is when Defendants will come into compliance with the summary judgment order and any reasons for their delay, *see id.* at 16-18, not what the appropriate remedy, including its timeframe, should be in the first instance. Had putative *amici* wished to provide the Court with information regarding their ability to comply with a renewed pay data collection, the appropriate time to seek to do so was before the Court ruled on the merits of Plaintiffs' claims and the appropriate remedy, namely during summary judgment briefing.

Putative *amici* do not contend that they were unaware of the lawsuit, nor could they. The lawsuit was filed publicly and was well-publicized at the time, creating actual or at least constructive notice to employer lobbying organizations.[1] *See United States v. Bank of Am.*, 303 F.R.D. 114, 119 (D.D.C. 2014). Indeed, many of the putative *amici* commented on the litigation at the time. DirectEmployers Association posted a discussion of the litigation on its website within a month after Plaintiffs filed their complaint, noting that the lawsuit sought to reinstate the

---

[1] *See*, *e.g.*, Daniel Wiessner, *Lawsuit Challenges Trump Administration's Freeze of EEOC Pay Data Rule*, Reuters, Nov. 16, 2017, https://www.reuters.com/article/employment-paydata/lawsuit-challenges-trump-administrations-freeze-of-eeoc-pay-data-rule-idUSL1N1NN027; Janet Burns, *Women's Advocates Sue Trump Admin For Arbitrarily Ditching Equal Pay Data*, Forbes, Nov. 26, 2017, https://www.forbes.com/sites/janetwburns/2017/11/26/womens-groups-sue-trump-admin-over-arbitrary-dumping-of-equal-pay-data/#718d0ab24a8e; Avery Anapol, *Trump Administration Sued Over Wage Gap Pay Rule*, The Hill, Nov. 16, 2017, https://thehill.com/homenews/administration/360678-trump-administration-sued-over-reversal-of-obama-era-pay-data-rule.

pay data collection requirement.[2] The HR Policy Association and the Center for Workplace Compliance, members of the Chamber of Commerce coalition, did the same.[3]

Both through their knowledge of this litigation and the temporary nature of the stay, putative *amici* either were or should have been aware that the Component 2 reporting requirements could be reinstated at any moment. As the Court concluded in its summary judgment decision vacating the stay, Defendants' "speculation" regarding the impact of vacatur on filers

> is unsupported by the record. Moreover, the revised pay data collection had been in place for almost a year by the time it was stayed. … *[A]ffected entities were on notice that the stay could be withdrawn at any time*. The court therefore finds that vacatur will not have potentially disruptive consequences.

Dkt. 45 at 40 (emphasis added).

Further, Plaintiffs' position in this litigation alerted putative *amici* to the likelihood that, should Plaintiffs succeed, the Component 2 data collection requirement could resume in the spring of 2019. Plaintiffs have made clear since the beginning of this litigation that they sought restoration of the data collection for the current EEO-1 collection period. For example, a filing docketed over a year ago, on January 29, 2018, states: "Plaintiffs seek to have the employee pay data collection … reinstated sufficiently in advance of the March 2019 reporting deadline for employers to comply and submit the required pay data." *See* Pls.' Opp. Mot. Ex. of Time, Dkt. No. 9 at 3. Plaintiffs have reiterated this timeframe throughout the litigation. *See*, *e.g*., Pls.' Mot.

---

[2] John C. Fox, *EEOC Pay Data Halt Challenged in Court,* DirectEmployers Ass'n, Dec. 11, 2017, https://directemployers.org/2017/12/11/ofccp-week-review-december-11-2017/.

[3] *See* Mark Wilson, *Equal Pay Advocacy Groups Target EEOC, OMB With Lawsuit Over Rolling Back New EEO-1 Reporting Requirements*, HR Policy Ass'n, Nov. 17, 2017, http://www.hrpolicy.org/news/story/equal-pay-advocacy-groups-target-eeoc-omb-with-lawsuit-over-rolling-back-new-eeo-1-reporting-requirements-14048; *see also* Ex. A (Center for Workplace Compliance webpage displaying a link to a November 22, 2017 memorandum entitled *Employee Advocacy Groups Sue OMB in Attempt To Get Order Reinstating Expanded EEO-1 Report*, which is accessible only to Center for Workplace Compliance members).

to Compel Compliance, Dkt. No. 19 at 4; Defs.' Consent Mot. Ex. of Time, Dkt. No. 24 at 3; Pls.' Opp. Mot. to Stay, Dkt. No. 30 at 2. Indeed, as the Court observed at the March 19, 2019 status conference, the parties and the Court itself "worked together to move this quickly because of the time limits that are inherent in this case." Hr'g Tr. at 6.

Putative *amici* cannot credibly claim that, after sitting on their rights and declining to weigh in for a year, the imminence of the Component 2 data collection deadline came as a surprise. Compounding the conclusion that the filings are untimely, the putative *amici* provide no explanation for why they did not seek to provide the Court with their perspective earlier.

Yet not only do putative *amici* seek to relitigate the appropriate remedy, they challenge the pay data collection on its merits—implicitly asking the Court to reconsider its summary judgment decision. *See, e.g.*, Chamber of Commerce Motion at 8-9 (asserting that EEOC's original burden estimates were too low). Such arguments were appropriate when the agencies were considering the pay data collection in the first instance and might have been permitted during the merits phase of this litigation but are now plainly inappropriate and untimely. The putative *amici*'s position is unsurprising, however, as they have consistently opposed the EEOC pay data collection, regardless of the timeframe for implementation.[4]

---

[4] As the Chamber of Commerce itself notes, and as is evident from the Administrative Record, *see* Dkt. 45 at 36, it and other members of its coalition opposed the pay data collection when the agency Defendants were considering it. Chamber of Commerce Motion at 8-9. Indeed one of the putative *amici*, DirectEmployers, has suggested that the employer community may launch a collateral attack on the Component 2 data collection. *See* John C. Fox, *Monday, April 2, 2019: DE & ASE Seek to Intervene in the 'EEO-1 Component 2 Pay Reporting' Lawsuit to Advise the Court That Employers Cannot Be Ready Until 2020*, DirectEmployers Ass'n, https://directemployers.org/2019/04/01/ofccp-week-in-review-april-1-2019/ ("[T]his is not the time or place (yet) in the NWLC's case against OMB and the EEOC for employers to attack the EEOC's requirement that covered Title VII employers report 'Component 2' data. There is an opportunity (soon) down the road for such an employer legal attack on the EEOC Rule as arbitrary and capricious and otherwise not in accordance with the law.").

In sum, Plaintiffs respectfully request that this Court deny the motions for leave file *amicus* briefs on the grounds that: (1) there is no pending motion before the Court on which it is appropriate for putative *amici* to opine; (2) this Court already made its decisions on the merits and the remedy, making the arguments in the proposed filings unnecessary and inappropriate; and (3) the motions are untimely particularly given the evidence that the putative *amici* were aware of the pending litigation, including Plaintiffs' desired timeframe for compliance should Plaintiffs succeed on the merits.

Dated: April 5, 2019                  Respectfully submitted,

/s/ *Robin F. Thurston*___

Robin F. Thurston (DC Bar No. 1531399)
Javier M. Guzman (DC Bar No. 462679)
Jeffrey B. Dubner (DC Bar No. 1013399)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
rthurston@democracyforward.org
jguzman@democracyforward.org
jdubner@democracyforward.org

Fatima Goss Graves (DC Bar No. 481051)
Emily J. Martin (DC Bar No. 991968)
Sunu Chandy (DC Bar No. 1026045)
Maya Raghu (DC Bar No. 1035558)
National Women's Law Center
11 Dupont Circle, NW, Ste 800
Washington, DC 20036
(202) 588-5180
fgraves@nwlc.org
emartin@nwlc.org
schandy@nwlc.org
mraghu@nwlc.org

*Attorneys for Plaintiffs*