UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Case No. 1:17-cv-02458 (TSC) |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>) |

REPLY MEMORANDUM IN FURTHER SUPPORT OF
DIRECTEMPLOYERS ASSOCIATION, INC. AND
THE AMERICAN SOCIETY OF EMPLOYERS
<u>MOTION FOR LEAVE TO PARTICIPATE AS AMICI CURIAE</u>

**I.   INTRODUCTION**

Putative *Amici Curiae* DirectEmployers Association, Inc. ("DE" or "DirectEmployers")) and the American Society of Employers ("ASE") (collectively "Movants") hereby submit this Reply in response to Plaintiffs' Opposition to Motions for Leave to Participate as *Amici Curiae* (ECF 60) and in further support of its Motion to for Leave to Participate as *Amicus Curiae* (ECF 50). As explained below, Plaintiffs' Opposition misstates Movants' position. Absent Plaintiffs' misstatement regarding Movants' position as to the collection of Component 2 pay data in the annual EEO-1 Survey, Plaintiffs' arguments fail to provide any reasonable basis to deny the Movants the opportunity to participate as Amicus Curiae and are without merit.

**II.   LEGAL ARGUMENT**

Plaintiffs' Opposition to Movants' Motion for Leave to Participate as *Amici Curiae* rests upon Plaintiffs' flawed assertion that Movants oppose the collection of Component 2 pay data in the annual EEO-1 Survey. Plaintiffs argue that Movants' *Amici* Brief provides no relevant or timely information in response to this Court's March 4, 2019 Order granting Plaintiffs' Motion for

1

Summary Judgment and reinstating the requirement that employers report Component 2 pay data. However, Plaintiffs' belief is unfounded, and directly contradicts Movants' stated purpose:

> *Amici Curiae* do not concern themselves with the merits of the dispute between the parties (as the Court has decided the merits issues).

*See* ECF 50-1 (Movants' proposed *Amicus* Brief) at 1.

Rather, Movants seek to provide fresh information relative to the remaining issue on which this Court sought briefing; specifically, establishing an appropriate, reasonable, and realistic deadline for compliance with the Component 2 pay data reporting requirements addressed in the Summary Judgment Order.

Movants merely wish to bring to the Court's attention the current reality of employer preparedness (or lack thereof) to report Component 2 Survey information either by (i) May 31, 2019; (ii) September 30, 2019 or (iii) the next EEO-1 Survey reporting cycle in March 2020. Movants properly anticipated that one possible reporting date might be the end of the federal Fiscal Year, so its Survey of Member companies specifically asked whether they could report by that date.[1]

### A. MOVANTS' MOTION FOR LEAVE IS NOT "UNTIMELY"

#### 1. Movants Merely Seek to Provide a Service to the Court to Inform It About an Issue Now Ripe: The Possible Timing of Reporting for Employers the Court's Coming Order Will Affect

*Amici* seek to present to the Court certain information they gathered in recent weeks since the Court's Summary Judgment Order. Specifically, DE composed and launched a Survey of DE

---

[1] In light of the EEOC's Response to this Court *subsequent to* the filing of Movant's *Amici Curiae* Brief that one option is that the EEOC could attempt to create an expedited filing window to open July 15, 2019 and close 2½ months later on September 30, 2019, Movants' Survey seems either prescient or coordinated with the EEOC. Movants' Survey of the end of Fiscal Year date (September 30, 2019) was borne of knowledge of how federal agencies often seek to align their actions with federal Fiscal Year calendars. No communication was had to or from the EEOC or its representatives and Movants or its representatives about the EEOC's substantive response to this Court.

Member company preparedness to report Component 2 information against three possible reporting dates:

- May 31, 2019 (Plaintiff's impliedly preferred date);
- September 30, 2019 (the end of the federal Fiscal Year);
- March 2020 (the next EEO-1 Survey annual reporting cycle.

DE offers its Survey information to inform and aid this Court to resolve the pay data reporting dispute before the Court since employers are a necessary ingredient to any pay data reporting: the proverbial "third leg of the stool" (along with the EEOC and the public's interest in the data). DE's Survey asked questions of its Member companies assuming that reporting of Component 2 pay data is required. DE sought to only be a "mirror" for the Court of the passing scene and report when its Member companies could report once the EEOC said "Go."

Furthermore, contrary to Plaintiffs' misrepresentation of Movants' position, Movants do not contend that the Component 2 pay data for collection is of no utility, or that there should be no reporting of Component 2 pay data due to the cost or burden of collecting such information. This is not the time and place for those arguments as the Court has already addressed and resolved those issues between the parties to the pending lawsuit.

### 2. **Plaintiffs' Own Statement in Their Opposition Regarding the Issue Now Pending Establishes the Timeliness of Movants' Motion**

Movants' submission of information from DE's Member companies regarding the date by which they could comply with the requirement to produce Component 2 pay data is timely. DE's Survey results address the very issue Plaintiffs themselves concede is presently before this Court: specifically, the question of when the federal agencies will comply with the Court's March 4, 2019 Order and the reasons for any delay in compliance. Movants' seek to bring to the Court's attention that Component 2 reporting can occur no earlier than employers can report the pay data to the

EEO-1 reporting portal and that DE Member companies require "spool up" time to accomplish the needed reporting.

As Plaintiffs note in their Opposition, at the March 19, 2019 status conference, this Court "did not set a date certain by which the Component 2 data must be collected." *See* ECF 60 (Plaintiffs' Opposition to Motions for Leave to Participate as *Amicus Curiae*, at 3). Rather, this Court anticipated "prompt compliance," and sought briefing from Plaintiffs and Defendants as to when "Defendants will come into compliance with the summary judgment order and any reasons for their delay." *Id.* Thus, currently pending and ripe for adjudication by this Court are issues regarding what constitutes "prompt compliance," when Defendants will come into compliance, and any reason for delay. As such, responses to DE's Member Survey Movants seek to bring to the attention of the Court is *only now* relevant, and the summary of these responses addresses each of these three factors that Plaintiffs themselves admit remain pending before this Court.

First, DE's Member Survey provides information as to when "prompt compliance" can occur from the employer community. Second, the Survey responses can help shape the Court's understanding as to the earliest date the EEOC might be able to require reporting given the ability of the regulated community to comply. Finally, Member responses to DE's Survey identifies reasons why the regulated community needs time to prepare the required reports once it knows the reports are indeed required. Therefore, the information that Movants' proposed *Amici* Brief provides is timely as it pertains to the very issues Plaintiffs identify as pending before this Court.

**B. INFORMATION CONTAINED IN MOVANTS' *AMICI* BRIEF SATISFIES THE STANDARD FOR THIS COURT TO EXERCISE ITS DISCRETION TO PERMIT CONSIDERATION OF MOVANTS' *AMICI* BRIEF**

DE's Survey results are directly relevant to the Court's extant inquiry as to the earliest date possible for Component 2 reporting. A court has broad discretion to permit participation of *amici curiae*, and *amicus* participation is appropriate where *amici*, as here, have "relevant expertise and

4

a stated concern for the issues at stake in [the] case." *Dist. of Columbia v. Potomac Elec. Power Co.*, 826 F. Supp. 2d 227, 237 (D.D.C. 2011).  An *amicus* brief should "be allowed when . . . the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide."  *Cobell v. Norton*, 246 F. Supp. 2d 59, 62 (D.D.C. 2003) (citation omitted).

Here, Movants provide information from the employer community unknown to either Plaintiffs or Defendants regarding reasons for delay as to when Defendants could first cause compliance, as a practical matter, with this Court's March 4, 2019 Order.  To wit:

### **REPORTING BY MAY 31, 2019**

- In regard to the reporting of "hours worked" by employees:

    o 129 out of 178 DE Members (72.5%) which responded to this Survey question reported they would be unable to report all "hours worked" by May 31, 2019 (in other words, only 27.5% of Member employers responding to the Survey noted an ability to provide "hours worked" data by May 31, 2019);

    o 98 out of the 129 DE Members (76%) which responded to this Survey question reported they would be unable to report all "hours worked" by May 31, 2019 cited staffing limitations as a reason for delaying compliance;

    o 100 out of the 129 DE Members (77.5%) which responded to this Survey question reported they would be unable to report "hours worked" data by May 31, 2019 cited technology limitations as a reason (Members were free to denote either or both staffing and technology limitations as an issue);

    o Other reasons Members provided for being unable to report "hours worked" data by May 31, 2019 included, but was not limited to, a need to re-deploy staff members, insufficient time to prepare the data, the need for customized computer programming, the need to acquire or build electronic and computerized data sorting tools, and reliance upon third-party vendors for data;

    o 107 out of 166 DE Members (64%) which responded to this Survey question reported they would need to start a new budget request process to obtain more budget to secure more IT/software, more data clean-up capabilities, and/or pay new vendor delivery fees to report "hours worked" data; and

    o 91 out of 121 DE Members (75%) which responded they would be unable to report "hours worked" data by May 31, 2019 also reported that they

would need until the next EEO-1 Survey reporting cycle in 2020 to report complete and accurate "hours worked" data as part of the Component 2 reporting obligation.

- In regard to the reporting of "pay data" for employees:

    o 113 out of 161 DE Members (70%) which responded to this Survey question reported they would be unable to report all employee "pay data" by May 31, 2019 (in other words, only approximately 30% of Member employers responding to the Survey noted an ability to provide "pay data" by May 31, 2019);

    o 94 out of the 112 DE Members (84%) which responded to this Survey question reported they would be unable to report all "pay data" by May 31, 2019 cited staffing limitations as a reason for delaying compliance;

    o 91 out of the same 112 DE Members (81%) which responded to this Survey question reported they would be unable to report "pay data" by May 31, 2019 cited technology limitations as a reason;

    o Other reasons Members provided for being unable to report "pay data" by May 31, 2019 included, but were not limited to, a need for customized computer programming, a need for customized data sorting tools, reliance on payroll vendor reports, and having to manually obtain and integrate race, sex, and ethnicity information (since such information is not normally part of payroll records);

    o 105 out of 159 DE Members (66%) which responded to this Survey question reported they would need to start a new budget request process to obtain more budget to secure more IT/software, more data clean-up capabilities, and/or pay new vendor delivery fees to report "pay data"; and

    o 91 out of 111 DE Members (82%) which indicated they would be unable to report "pay data" by May 31, 2019 also reported they would need until the next EEO-1 Survey reporting cycle in 2020 to report complete and accurate "pay data" as part of the Component 2 reporting obligation.

**REPORTING BY SEPTEMBER 2019**

- Only 22 of 121 (18.18%) DE Member companies which responded that they could not report by May 31, 2019 reported that they could report **"Hours Worked"** data by September 30, 2019.  *See* DE Survey Answers to Survey Question 3.

    o Accordingly, only 71 of the 178 (40%) DE Member companies responding to its Survey could report **"Hours Worked"** data by September 30, 2019. See DE Survey Answers 1 & 3.

6

- Only 22 of 111 (18.08%) DE Member companies which responded that they could not report by May 31, 2019 reported that they could report **"Pay Data"** by September 30, 2019.  *See* DE Survey Answers to Survey Question 7.

    o Accordingly, only 68 of the 161 (42%) DE Member companies responding to its Survey could report **"Pay Data"** by September 30, 2019. See DE Survey Answers 5 & 7.

As such, the information Movants seek to present in their proposed *Amici* Brief is relevant to the very issues before this Court related to when Defendants should first require Component 2 hours worked and pay data reporting.

### III.   CONCLUSION

Based on the foregoing, Movants respectfully request this Court grant Movants' Motion for Leave to Participate as *Amici Curiae*, and accept for filing and consideration Movants' *Amici* Brief previously attached as **Exhibit 1** to the Motion (ECF 50-1).  Furthermore, should this Court set a Hearing as to the pending issues before this Court for oral argument, Movants respectfully request five minutes of the Court's time to present oral argument through their counsel of record. Finally, Movants respectfully request such further relief as this Court may deem just and proper.

Respectfully Submitted,

Dated:  April 8, 2019

 /s/  Edward Lee Isler
Edward Lee Isler, D.C. Bar No. 417076
Micah E. Ticatch, D.C. Bar No. 1005398
Isler Dare, P.C.
1945 Old Gallows Road, Suite 650
Vienna, Virginia 22182
Telephone (703) 748-2690
Fax (703) 748-2695
eisler@islerdare.com
mticatch@islerdare.com


 /s/  John C. Fox          .
JOHN C. FOX (CA Bar No. 135668)
JAY J. WANG (CA Bar No. 206127)
*Pro Hac Vice pending (filed previously)*
FOX, WANG & MORGAN P.C.

315 University Avenue
Los Gatos, CA 95030
Telephone: (408) 844-2350
Fax:  (408) 844-2351

*Counsel for Amici Curiae*