UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*, | )<br>)<br>) |
| *Plaintiffs*, | )<br>) |
| v. | ) Case No. 17-cv-2458 (TSC)<br>)<br>) |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.*, | )<br>)<br>) |
| *Defendants*. | )<br>)<br>) |

**SUMMATION OF THE APRIL 16, 2019 HEARING
BY AMICI THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, HR POLICY ASSOCIATION, ASSOCIATED BUILDERS AND CONTRACTORS, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, CENTER FOR WORKPLACE COMPLIANCE, INSTITUTE FOR WORKPLACE EQUALITY, THE NATIONAL ASSOCIATION OF MANUFACTURERS, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, NATIONAL RETAIL FEDERATION, RESTAURANT LAW CENTER, RETAIL LITIGATION CENTER, INC. AND <u>SOCIETY FOR HUMAN RESOURCE MANAGEMENT</u>**

As previously noted in their Motion For Leave to File *Amicus Curiae* Brief, *Amici* represent hundreds of thousands of employers of all sizes across the country, most of whom are required to comply with EEO-1 reporting requirements.[1] The interests of *Amici* are direct, immediate, and different than the interests of the parties.[2] It is *Amici*'s members who will be

---

[1] The Chamber of Commerce of the United States of America ( the "Chamber"), the HR Policy Association ("HRPA"), Associated Builders and Contractors ("ABC"), Associated General Contractors of America ("AGC"), the Center for Workplace Compliance ("CWC"), The Institute for Workplace Equality ("The Institute"), The National Association of Manufacturers ("The NAM"), National Federation of Independent Business ("NFIB"), National Retail Federation ("NRF"), Restaurant Law Center ("RLC"), Retail Litigation Center, Inc., and the Society for Human Resource Management ("SHRM") (collectively referred to as "*Amici*").

[2] *Amici* continue to believe that the Revised EEO-1 Report does not comply with the Paperwork Reduction Act ("PRA"), but limit this summation to the implementation issues this Court is now considering.

required to analyze demographic, payroll, and hours worked data and compute, compile, and submit the Component 2 data by location that was the subject of the April 16 Hearing.[3]

*Amici* provide the Court with a summation of four key issues of great practical importance to employers. The testimony provided by EEOC's Chief Data Officer, Dr. Samuel C. Haffer, made clear that: (1) the EEOC's proposed timeline fails to consider the impact on the employer community; (2) the EEOC's collection of sensitive and confidential information will not follow industry standards; (3) the employer community has not been provided with key information needed to come into compliance with the collection and production of highly sensitive and confidential component 2 data, and there is no timetable for providing such information; and (4) the EEOC confirmed that the highly sensitive and confidential data that is being demanded from employers has no utility and that the EEOC is not prepared to collect or analyze the data.

    A.    The EEOC's Proposed Timeline Fails to Consider the Impact On the Employer Community

The April 16 Hearing testimony made clear that the EEOC's proposed July 15 to September 30, 2019 collection period did not consider employers' ability to collect Component 2 data within that timeline. In response to direct questioning on the issue, the EEOC's Chief Data Officer, Samuel C. Haffer ("Haffer"), testified that NORC's estimated collection period of July 15 - September 30, 2019 "did not" include the "employer burden concerns" or the time it would take employers to comply with the Component 2 EEO-1 data collection requirements. Haffer at

---

[3] No party or counsel for a party authored this brief in whole or in part. No person other than *amici*, their members, or their counsel has made a monetary contribution intended to fund the preparation or submission of this filing.

p. 69, l.15-20.⁴   Instead, Haffer testified that the September 30, 2019 date was picked because he understood it was the Paperwork Reduction Act expiration date for the EEO-1 form. Haffer Testimony P. 45, l. 8 - 17.

      B.      The EEOC's Collection of Sensitive and Confidential Information Will Not Follow Industry Standards

Haffer's testimony further made clear that under the compressed timeline proposed by the EEOC, Component 2 data would *not* be collected pursuant to applicable industry standards. Haffer at p. 30, l. 22 -31, l. 13; 45, l. 6-14; 46, l. 5-19. Haffer testified that to comply with acceptable industry standards for data collection, the timetable for collection by EEOC (with NORC's full participation) could not occur until 2021.⁵ Haffer at p. 30, l. 22-31, l. 13; 45, l. 6-14; 46, l. 5-19. Haffer was not questioned as to what sacrifices in quality and confidentiality were made in the NORC proposal for Component 2 data collection by September 30, 2019 (a full 15 months before NORC's earlier quoted January 2021 timetable for data collection pursuant to industry standards). Haffer Testimony p. 45, l. 6 - 46, l. 19.

---

⁴ Haffer's Declaration, which was accepted as direct testimony at the April 16, 2019 hearing, was not challenged or questioned insofar as Haffer testified he understood that employers believe that they are likely to experience significant issues regarding the immediate reporting of Component 2 data. See Dkt. 54-1, Haffer Decl. Par. 22 and fn. 5.

⁵ We also learned for the first time at the hearing that in December 2018 the EEOC estimated it needed until January 2021 (24 months) to collect Component 2 data. Haffer Testimony P. 65, l. 16 - 66, l. 13. That estimate, which would "begin the data collection in January of 2021," aligns with NORC's 2021 estimate of the appropriate timetable to open the EEOC's portal for Component 2 collection purposes. Compare Haffer Testimony P. 65, l. 16 - 66, l. 13 with Haffer Testimony at p. 30, l. 22-31, l. 13; 45, l. 6-14; 46, l. 5-19.

      C.      The Employer Community Has Not Been Provided With Key Information Needed to Come Into Compliance with the Requirements for Collection and Production of Highly Sensitive and Confidential Component 2 Data; The EEOC Will Do So in the Future "On the Fly"

The EEOC cannot provide employers with necessary resources and information to enable them to begin preparations for compilation of Component 2 data at this time. According to Haffer, "given the limited time frame," the EEOC will have to address key resource materials like frequently asked questions "*on the fly*." Haffer Testimony p. 32 l 8-25.

As Haffer further testified, the EEOC does not have the resources to answer employer questions regarding Component 2 issues. As a result, the EEOC did not include information on its website about the Revised EEO-1 Component 2 filing. If it did, the EEOC would have been overrun by technical questions the EEOC was not prepared to answer. Haffer Testimony p. 29, ll. 15-17; p. 30, ll. 4-5; p. 32, ll. 23-25.

Haffer also testified that the resources the EEOC previously provided to the employer community in the 2016/2017 timeframe were preliminary "awareness building" resources, not informational resources designed to answer specific questions regarding the reporting of Component 2 data. According to Haffer, those resources are not sufficient to support employers' Component 2 filing questions. Haffer Testimony p. 32, l. 1-6.

As Haffer explained, there are many questions that must be answered by the EEOC before employers will be in a position to compile, analyze and submit Component 2 pay and hours data. Haffer Testimony p. 32, l. 1-6; 59, l. 8-18. Haffer provided specific examples of issues that employers would need resolved such as how to analyze and report on employee pay and hours data if the employee is coded as exempt and non-exempt within the same calendar year. Haffer Testimony p. 59, l. 8-18.

Nonetheless, EEOC has not offered any timeframes for when it will begin providing guidance, forms, or be open to provide answers to employers regarding Component 2. In this regard, Haffer testified that the EEOC had not even secured a contract with NORC to collect the EEO-1 Component 2 data -- which would be required before employers could begin receiving instructional information regarding the Revised EEO-1 data collection requirements from NORC. Haffer Testimony p. 4, l. 4-15.

Rather, the EEOC is in the process of exploring the regulations that would allow the EEOC to "sole source" this work to NORC without proceeding through the federal government's procurement competitive bid process. *See* Haffer Testimony p. 40, l. 4-20. If this work is awarded to NORC under the sole source procurement process, EEOC would then need to finalize the statement of work for NORC. Haffer Testimony p. 40, l. 10-20. Only then would EEOC be in a position to enter into a signed contract with NORC. Haffer Testimony p. 40, l. 10-16; p. 42, l. 15 - 25; p. 43, l. 2-14. In the meantime, as noted above, employers have not been given the critical information that is necessary to begin work necessary to collect Component 2 data for 2018.

D. The EEOC Confirmed that the Highly Sensitive and Confidential Data That Is Being Demanded From Employers Has No Utility and That the EEOC is Not Prepared To Collect Or Analyze the Data.

EEOC is not prepared to collect or analyze Component 2 data, which has little to no utility, according to Haffer. Haffer Testimony p. 73, l. 1-16. Haffer testified that the EEOC's IT systems and data analytics activities were outdated and antiquated, citing a publicly available OIG Report dated 9/5/2018 (available at *https://oig.eeoc.gov/reports/audit/2017-002-eoig*) that recently reached that conclusion. Haffer Testimony p. 73, l. 1-16. The OIG Report concludes that EEOC lacks an enterprise-scope analytics team to perform data analytics as well as key,

foundational components of infrastructure to support both reporting and data analytics initiatives. OIG Report dated 9/5/2018 (available at *https://oig.eeoc.gov/reports/audit/2017-002-eoig*).

Haffer further testified that the EEOC has concluded that the new Component 2 pay band data currently being collected in the EEO-4 context does not provide meaningful information and is being ignored by the EEOC (citing the National Academy of Sciences study). Haffer Testimony p. 46, l. 20 - p. 47, l. 8; p. 76, l. 2-18.

## **CONCLUSION**

Based on the evidence presented to the Court on April 16, 2019 by the EEOC, *Amici* urge the Court to consider the impact to employers of collecting Component 2 data in the compressed timeframes that are contemplated by the EEOC's and Plaintiffs' submissions. The specific operational challenges, confidentiality issues, and lack of benefit to ordering a collection of Component 2 2018 data by September 30, 2019, should be taken into consideration by this Court.

Dated: April 22, 2019                                          Respectfully submitted,

Seyfarth Shaw LLP

/s/ *Camille A. Olson*
Camille A. Olson (admitted *pro hac vice*)
Annette Tyman (admitted *pro hac vice*)
Richard B. Lapp (admitted *pro hac vice*)
Seyfarth Shaw LLP
233 S. Wacker Dr. Suite 8000
Chicago, IL 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

Lawrence Z. Lorber (D.C. Bar No. 103127)
Seyfarth Shaw LLP
975 F Street, NW
Washington, D.C. 20004
Telephone: (202) 828-5341
Facsimile: (202) 828-5393

Counsel for *Amici Curiae*
Chamber of Commerce of the United States
HR Policy Association
Associated Builders and Contractors
Associated General Contractors of America
Center for Workplace Compliance
Institute for Workplace Equality
National Association of Manufacturers
National Federation of Independent Business
National Retail Federation
Restaurant Law Center
Retail Litigation Center, Inc.
Society for Human Resource Management

*Additional Amici Co-Counsel*

Daryl Joseffer (DC Bar No. 457185)
U.S. Chamber Litigation Center
1616 H Street, NW
Washington, DC 20062
(202) 463-5337
Counsel, Chamber of Commerce of the United States of America

Deborah White (DC Bar No. 444974)
Retail Litigation Center, Inc.
1700 N. Moore Street, Suite 2250
Arlington, VA 22209
(703) 600-2067
Counsel, Retail Litigation Center, Inc.

G. Roger King (DC Bar No. 0022025)
McGuiness, Yager & Bartl LLP
1100 13th Street, NW, Suite 850
Washington, DC 20005
(202) 375-5004
Counsel, HR Policy Association

James Banks (DC Bar No. 503261)
Society for Human Resource Management
1800 Duke Street
Alexandria, VA 22314
(800) 283-7476
Counsel, Society of Human Resource Management

David S. Fortney (DC Bar No. 454943)
Fortney & Scott
1750 K St., NW, Suite 325
Washington, DC 20006
(202) 689-1204
Counsel, The Institute for Workplace Equality

Leland P. Frost (DC Bar No. 1044442)
Manufacturers' Center for Legal Action
733 10th Street NW, Suite 700
Washington, DC 20001
(202) 637-3000
Counsel, National Association of Manufacturers