IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL WOMEN'S LAW CENTER,
*et al.*,

    *Plaintiffs*,

v.

OFFICE OF MANAGEMENT AND
BUDGET, *et al.*,

    *Defendants*.

No. 1:17-cv-02458 (TSC)

## DECLARATION OF TAMRA T. MOORE

I, Tamra T. Moore, for my declaration pursuant to 28 U.S.C. § 1746, depose and say as follows:

1. I currently serve as a trial attorney in the United States Department of Justice ("DOJ"), Civil Division, Federal Programs Branch. Among my other duties and responsibilities in this position, I serve as counsel of record in the above-captioned action for Defendants, including the Office of Management and Budget ("OMB") and the Equal Employment Opportunity Commission ("EEOC").

2. The information provided in this declaration is based on my personal knowledge and on information provided to me in my official capacity as counsel of record in this action, and is respectfully submitted in connection with Defendants' Written Summation in Response to the Court's April 16, 2019, Order. Specifically, I submit this declaration to address two issues of concern raised by the Court at the April 16, 2019, hearing in this matter: (1) Plaintiffs' assertion that Defendants, in connection with a request for additional time to file Defendants' opposition to Plaintiffs' summary judgment motion, misled them and withheld timely information regarding the date by which Defendant EEOC could begin the Component 2 pay data collection, *see* Transcript of

Hearing on Submission dated April 16, 2019, at 10:5-20, 12:12-18; and (2) why Defendants, at the March 19, 2019, status conference, did not provide the Court with the EEOC's initial estimate of how long it would take to begin the pay data collection, or provide that estimate to Plaintiffs beforehand, *see id.* at 10:21-11:4, 13:12-14, 15:3-9, 18:11-19.

    3.    As I discuss below, at no time did I take any action, or withhold information, in this case with a purpose to mislead, to delay these proceedings, or to frustrate Plaintiffs' ability to obtain effective relief should they ultimately prevail in this case. Nor was I asked to take any action or withhold information for such a purpose by anyone at DOJ, OMB, or the EEOC.

    4.    Plaintiffs filed their motion for summary judgment in this matter on October 31, 2018, to which the Court initially directed Defendants to respond on December 6, 2018, following compilation of the administrative record. ECF No. 22; Minute Order dated November 15, 2018. Because of the many substantive court filings and appearances for which Defendants' counsel were already responsible in other pending matters between November 16 and December 19, 2018, *see* Defs.' Consent Mot. for Extension of Time to Respond to Pls.' Mot. for Summ. J., ECF No. 24, at 2-3, I telephoned Plaintiffs' counsel, Ms. Robin Thurston, to discuss a mutually agreeable briefing schedule in this case that would allow Defendants' counsel to meet their other pre-existing deadlines and responsibilities. *See* Exh. A hereto, at 11-12 (Nov. 28-Dec. 4, 2018, e-mail chain between Tamra T. Moore and Robin Thurston). In particular, I requested Plaintiffs' consent to an extension from December 6 to December 20, 2018, for Defendants to file their opposition to Plaintiffs' summary judgment motion, and Defendants' cross-motion for summary judgment.

    5.    This request was made solely for the purpose of obtaining the time Defendants' counsel required to prepare Defendants' response to Plaintiffs' summary judgment motion, and Defendants' cross-motion, while still meeting their responsibilities in other matters.

6.  In exchange for their consent Plaintiffs initially requested a stipulation that OMB's stay of its Paperwork Reduction Act ("PRA") approval of EEOC's "Component 2" pay data collection had tolled the September 30, 2019, expiration of the three-year approval period. *See* Exh. A, hereto, at 11. When I informed Ms. Thurston on December 3, 2018, that OMB was not in a position to agree to a tolling of the approval period, she asked whether "the agencies" had an estimate of how much time they would require "to implement a ruling in [P]laintiffs' favor," if any; she explained that this information "might alleviate some of [Plaintiffs'] concern about time continuing to pass during a more prolonged briefing schedule." *See id.* at 6-7. Upon my inquiry Ms. Thurston agreed that by "implement" Defendants should understand Plaintiffs to mean "to get component 2 'live,'" *see id.* at 5-6, that is, to begin the Component 2 collection, not complete it. Accordingly, that same day, I passed Ms. Thurston's question on to both of the defendant agencies, OMB and EEOC.

7.  OMB responded that same day, December 3, 2018, that it would need just "1 day" to "get Component 2 'live'" should Plaintiffs prevail, *see id.* at 4-5, because all that would require on OMB's part is the discrete administrative act of lifting the stay. The EEOC responded, however, that it would get back to me "tomorrow," that is, the next day, December 4, 2018. *See id.* at 5. EEOC required additional time because the question necessarily was more complex for the EEOC, as the agency responsible for actually conducting the collection. In addition, it was my understanding that the individual with whom the EEOC needed to consult in order estimate the time required to begin collection (EEOC's Chief Data Officer, Dr. Samuel Haffer) was out of the office on December 3. *See id.*

8.  Accordingly, I advised Ms. Thurston on December 3 that OMB would require just "1 day," but that the EEOC would need until December 4 before it could provide an estimate of when it could "get Component 2 'live.'" *See id.* at 4-5. Notwithstanding the lack of a response from

3

the EEOC, Plaintiffs consented, over the course of an exchange between December 3 and the morning of December 4, 2018, to a schedule extending the date for Defendants' initial summary judgment filing from December 6, 2018, until December 20, 2018, so long as the case could be resolved in time for the 2019 data collection to include the stayed Component 2 pay data collection (should the Court rule in Plaintiffs' favor). *See id.* at 2-4.

9.      It was not until after Plaintiffs consented to the briefing schedule that I heard back from the EEOC concerning its estimate of the time needed to implement the Component 2 collection. Shortly after concluding my exchange of e-mails with Ms. Thurston on December 4, 2018, I again e-mailed the EEOC to ascertain whether they yet had a response to the Plaintiffs' inquiry about how long it would take the EEOC to get Component 2 "live." The EEOC then informed me by e-mail that assuming it received "appropriate resources," it "estimate[d] that [it] could begin national implementation of pay data collection in January 2021 that would provide valid, reliable, and actionable information." *See* Exhibit B, hereto (Dec. 3-4, 2018, e-mail chain between Tamra T. Moore and Erin Norris).[1] The EEOC emphasized that this was "only an estimate" of when Component 2 pay data collection could begin. As I later learned, this was a preliminary, rough estimate that Dr. Haffer was able to obtain, on very short notice, from NORC at the University of Chicago.

---

[1] Pursuant to the Court's order during the April 16, 2019, hearing, I provided a copy of this e-mail chain between myself and the EEOC to Plaintiffs' counsel on April 18, 2019. As the Court also requested during the hearing, a copy is also being made available to the Court as Exhibit B, hereto. Defendants have redacted two paragraphs from the copy provided to Plaintiffs and that being filed herewith, because these paragraphs reflect attorney-client privileged information and work product that are unrelated to the issues raised by the Court on April 16 concerning my failure to share the EEOC's initial estimated implementation date with Plaintiffs or the Court. If the Court wishes to review an unredacted version of the e-mail chain, Defendants are prepared to make it available for the Court's *ex parte, in camera* inspection.

4

10. I did not intend, or expect, Plaintiffs to rely solely on OMB's representation of the time needed to "get Component 2 'live'" in deciding whether to consent to or oppose Defendants' request for a 10-day extension of time. That is why, when I provided Plaintiffs' counsel with OMB's one-day estimate, I also specifically noted, in the following sentence of the same e-mail, that I still had not heard from the EEOC regarding how long it would take them to begin the pay data collection. *See* Exh. A at 4-5. Plaintiffs consented to the extension of time Defendants had requested without waiting for the EEOC's response, or later asking for the EEOC's estimate. *Id.*

11. Although I obtained the EEOC's estimate shortly after Plaintiffs consented to Defendants' proposed briefing schedule, *see* ¶¶ 8-9, *supra*, I recognized immediately that this estimate would be unsatisfactory to Plaintiffs, first because of the length of time involved and second because the estimated January 2021 start date would come long after OMB's approval to conduct the collection would expire, on September 30, 2019. I was also not convinced that January 2021 was the earliest practical date at which the collection could begin. For these reasons, I concluded that I should not provide Plaintiffs with this preliminary, rough estimate, or any other estimate of the time required to "get Component 2 'live,'" until after we had an opportunity to explore with the EEOC the bases for this estimate and whether it would be practicable to develop a more expeditious timetable for commencing the pay data collection that would be acceptable to Plaintiffs and/or the Court in the event the Court ruled in the Plaintiffs' favor. I did not consult with the EEOC or OMB before arriving at this conclusion.

12. My purpose in making this decision was not to mislead Plaintiffs, to delay these proceedings, or to attempt to frustrate Plaintiffs' ability to obtain meaningful relief should they ultimately prevail on the merits. My purpose instead was to avoid an unnecessary collateral dispute over an initial agency estimate that I did not wish to be taken by Plaintiffs (or the Court) as a Government proposal for appropriate remedial relief in this matter, at least until it could be

5

examined more closely, and, if practicable, substantially modified. To the contrary, I wished to avoid a diversion of time and attention to such an unnecessary dispute, and the delays that would result, at a time when my co-counsel and I had to focus our energies on the immediate tasks of compiling the administrative record (still due to be filed on December 6, 2018), responding to Plaintiffs' summary judgment motion, and preparing Defendants' cross-motion, together with all the other still pending deadlines my co-counsel and I faced in other matters.

13. My co- counsel and I therefore turned our attention to these pressing tasks, which occupied us on a full-time basis (and more) until December 21, 2018, at which time we filed Defendants' cross-motion and opposition to Plaintiffs' motion for summary judgment (after requesting and receiving a one-day extension of time, *see* Defs.' Consent Mot. for Extension of Time, ECF No. 24 (Dec. 20, 2018); *see also* Minute Order (Dec. 20, 2018)). Thereafter, my attention continued to be focused on the tasks required for an orderly shutdown of operations during the 35-day lapse in Department of Justice appropriations, my responsibilities in other litigation, the year-end holidays, and, beginning on January 14, 2019 (when Plaintiffs' filed their combined summary judgment reply and cross-motion opposition), the preparation of Defendants' summary judgment reply due on January 22, 2019. Once I filed Defendants' summary judgment reply, my time and attention were again focused on my litigation responsibilities in other matters, with pre-existing deadlines throughout the remainder of January and February 2019.

14. During this period I was not consciously ignoring the issue of the time the EEOC would require in order to implement Component 2 pay data collection. Rather, my time, attention, and energies were simply consumed by the continuing press of numerous deadlines in other important and complex cases for which I was also responsible during that time.

15. On March 4, 2019, the Court issued its Memorandum Opinion and Order denying Defendants' motions to dismiss and for summary judgment, granting Plaintiffs' motion for summary

6

judgment, vacating OMB's stay of the Component 2 pay data collection, and ordering that "the previous approval of the revised EEO-1 form shall be in effect." ECF Nos. 45, 46.

16.     Once Defendants received the Court's decision and order, I began consulting with the EEOC about developing a timeline for implementing the Component 2 pay data collection well in advance of the earlier January 2021 estimate. These consultations included consideration of various proposals developed by Dr. Haffer and his staff with the assistance of NORC. Developing a workable proposal was complicated by the numerous practical difficulties explained by Dr. Haffer in his April 3, 2019 declaration, ECF No. 54-1, and his testimony on April 16.

17.     In the midst of these consultations, I received a number of inquiries from Plaintiffs' counsel asking whether, in light of the Court's ruling, the Component 2 pay data collection would begin on March 18, 2019 (the scheduled date to commence the Component 1 collection). *See generally* Exhibit C hereto (Mar. 5-11, 2019, e-mail chain between Robin Thurston and Tamra Moore) (also filed as Att. A to Pls.' Request for a Status Conf., ECF No. 47). I responded to these inquiries that we did not have answers to the questions Plaintiffs posed at that point, *see, e.g., id.* at 1-2, because Dr. Haffer and the EEOC were still in the process, together with NORC, of developing a realistic alternative timeline for implementation of the Component 2 pay data collection. I did not advise Plaintiffs of the EEOC's initial January 2021 estimate, because by this time that initial, rough estimate, provided to us nearly three months earlier on December 4, 2018, was undergoing thorough reconsideration. By the time of Plaintiffs' inquiries, it would have been inaccurate to suggest that the EEOC viewed January 2021 as the date on which it expected to begin the collection.

18.     On March 18, 2019, Plaintiffs moved for a status conference, based on their view that the EEOC's decision to begin the Component 1 data collection without simultaneously commencing the Component 2 pay data collection was not in compliance with the Court's March 4, 2019 Memorandum Opinion and Order. *See* Pls.' Request for a Status Conf., ECF No. 47. The

Court granted Plaintiffs' request and a status conference was held the next day, on March 19, 2019. *See* Minute Entries dated March 18 and 19 2019. During the status conference the Court repeatedly raised the question of how long it would take the EEOC to comply with its order that "the revised EEO-1 form shall be in effect." Transcript of Status Conference dated March 19, 2019, at 3:16-21, 6:14-25, 7:18-22, 8:20-24, 9:24-10:4, 15:1-6, 16:2-5, 18:15-20.

19. During the March 19, 2019, status conference I did not inform the Court of the EEOC's initial January 2021 estimate, but instead asked that the EEOC be given until April 3, 2019, to submit its estimate of when the Component 2 pay data collection could begin, together with an explanation of why it required additional time to get the pay data collection under way. *See id.* at 12:6-10; 13:5-13. The Court granted that request. *Id.* at 18:15-16.

20. My failure to advise the Court of the EEOC's initial January 2021 estimate during the March 19 status conference was not intended to be evasive or misleading. I did not advise the Court of the EEOC's earlier estimate for essentially the same reasons that I did not provide it to Plaintiffs' counsel prior to the March 19 status conference. *See* ¶ 18, above. By the time of the March 19 status conference, the EEOC's preliminary estimate of January 2021 was no longer under consideration, and Dr. Haffer and his staff, together with NORC, were already exploring possible timelines under which the collection of Component 2 pay data might begin much sooner. It would have been inaccurate, therefore, to suggest to the Court during the status conference that the EEOC still viewed January 2021 as the date on which it expected the collection to begin. And because at that time the EEOC was still in the midst of exploring other possible timelines for implementing the pay data collection, there was no other alternative date that I could provide to the Court at the time of the March 19 status conference.

21. Shortly after the March 19 status conference, the EEOC settled on a proposal to conduct the Component 2 collection prior to the September 30, 2019 expiration deadline.

8

Defendants' April 3 Submission in Response to the Court's Questions Raised During the March 19, 2019 Status Conference contains the EEOC's proposed timeline and explains the agency's rationale adjusting the collection deadline in this time frame.

22.     In sum, I have not taken any action or withheld information in this case with a purpose to mislead, to delay these proceedings, or to frustrate Plaintiffs' ability to obtain effective relief should they ultimately prevail. Nor have I been asked to take any action or withhold information for such a purpose by anyone at DOJ, OMB, or the EEOC. Once the Court issued its March 4 decision and order, the EEOC and I acted promptly to prepare a viable proposal for conducting the collection of 2018 pay data within the period allowed under OMB's authorization. I regret and apologize that the failure on my part to communicate information about the EEOC's initial estimate of when the Component 2 pay data collection could begin has raised concern on the Court's part regarding the good faith of Defendants and their counsel in the conduct of this litigation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on April 22, 2019, in Washington, D.C.

_____
TAMRA T. MOORE