UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


NATIONAL WOMEN'S LAW            .
CENTER, et al.,                .
                               .  CA No. 17-2458 (TSC)
        Plaintiffs,            .
                               .
    v.                         .
                               .  Washington, D.C.
OFFICE OF MANAGEMENT           .  Thursday, April 25, 2019
AND BUDGET, et al.,            .  11:04 a.m.
                               .
        Defendants.            .
. . . . . . . . . . . . . . . .


TRANSCRIPT OF ORAL RULING HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE


<u>APPEARANCES</u>:

For the Plaintiffs:          ROBIN F. THURSTON, ESQ.
                             JEFFREY B. DUBNER, ESQ.
                             SUNU P. CHANDY, ESQ.
                             Democracy Forward Foundation
                             P.O. Box 34553
                             Washington, DC 20043
                             (202) 448-9090


For the Defendants:          TAMRA T. MOORE, ESQ.
                             CARLOTTA WELLS, ESQ.
                             U.S. Department of Justice
                             Federal Programs Branch
                             1100 L Street, NW
                             Washington, DC 20005
                             (202) 305-8628


Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             U.S. Courthouse, Room 4704-A
                             333 Constitution Avenue NW
                             Washington, DC 20001
                             (202) 354-3186



Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.

P R O C E E D I N G S

THE DEPUTY CLERK:  Your Honor, we have Civil Action 17-2458, National Women's Law Center, et al., versus the Office of Management and Budget, et al.  We have Mr. Jeffrey Dubner, Ms. Robin Thurston, and Ms. Sunu Chandy representing the Plaintiffs.  We have Ms. Tamra Moore and Ms. Carlotta Wells representing the Defendants.

THE COURT:  Okay.  Good morning, everyone.

Sorry to have to bring you all back here, but I thought it would be appropriate to place my reasons for my findings on the record, and it was just more efficient to do it this way.  So I appreciate you all being here.

We're here for my decision on the appropriate relief after the April 16, 2019, hearing.  I will give my reasoning on the record now.  After the hearing, I'll issue a written order.

Now, as a preliminary matter, the Court wants to deal first with the declaration submitted by counsel for the Government and the issues that it touches upon.

Plaintiffs, at least since the beginning of December of 2018, have been under the impression that if the Court ruled in their favor on the cross-motion for summary judgment, then the Government could begin the process of collecting Component 2 data almost immediately.  That understanding was based on communications between Plaintiffs and the Government on December 3, 2018.

1    During negotiations concerning a request by the Government

2    for an extension of time, Government counsel represented in an

3    e-mail that the Office of Management and Budget stated it would

4    take, I quote, "1 day" to, I quote, "get Component 2 'live'

5    should Plaintiffs prevail in this case."

6    The e-mail also stated that Government's counsel was

7    waiting to hear back from the EEOC.  The representation from

8    OMB that Component 2 data could go live in one day was the basis

9    for Plaintiffs agreeing to the Government's Consent Motion for

10   an extension filed on December 4, 2018.

11   In other words, this Consent Motion reflected the

12   understanding that, if the Court resolved the summary judgment

13   motions with sufficient time before the March 31, 2019, data

14   collection, that collection could include the stayed Component 2

15   information if the Court ruled in Plaintiffs' favor.

16   Whether or not the Government's earlier communication had

17   explicitly stated only that OMB could go live in a day -- and

18   there perhaps remained some uncertainty about EEOC's turnaround

19   time -- the Government certainly reinforced Plaintiffs'

20   understanding that *both* agencies could go live virtually

21   immediately when it included Plaintiffs' language about timing

22   in its Consent Motion, and for months did not reveal the

23   information it had from EEOC to Plaintiffs or to the Court.

24   Consent Motion stated, ECF No. 24: "Pursuant to Local

25   Rule 7(m), counsel for Defendants conferred via e-mail with

1    Plaintiffs' counsel regarding Defendants' request.

2    In response to Defendants' request, Plaintiffs stated the

3    following: 'Plaintiffs consent to an extension until December

4    20, 2018 and the additional proposed briefing deadlines, so long

5    as the extension gives the Court sufficient time to resolve the

6    pending motions in advance of the scheduled March 31, 2019 data

7    collection, so that the 2019 data collection could include the

8    stayed pay data collection (if the Court resolves the litigation

9    in Plaintiffs' favor.)'"  That's from ECF No. 24.

10    Counsel for the Government included this language in the

11    Consent Motion, which was filed on December 4, 2018, even though

12    she had already received information to the contrary from the

13    EEOC.  Earlier on December 4, 2018, EEOC notified Government

14    counsel by e-mail that it would take -- its estimate was that it

15    would take until January 2021 to begin national implementation

16    of pay data collection.

17    Even though the Government had information in early

18    December 2018 indicating that EEOC would not even begin

19    collecting Component 2 pay data until nearly two years after

20    Plaintiffs and the Court thought it would be completed, the

21    Government allowed Plaintiffs and the Court to continue under

22    the misimpression about how quickly collection could proceed.

23    For example, on February 5, 2019, Plaintiffs stated in a

24    pleading to the Court: "a ruling on the merits by the end of

25    February should allow EEOC to incorporate the improperly stayed

1    component of the data collection without further disruption to

2    the EEO-1 schedule."  And I'm quoting from ECF No. 38.  The

3    Government did not correct this representation from Plaintiffs

4    to the Court.

5         This background is very important because, at the time of

6    the Court's summary judgment decision on March 4, both the Court

7    and the Plaintiffs believed that the removal of the stay would

8    allow for an efficacious and prompt collection of the Component

9    2 pay data for both 2017 and 2018 as part of the timeline for

10   the Component 1 2018 pay data.

11        However, since the summary judgment decision was issued,

12   the Government has represented that EEOC could not begin

13   collecting the 2018 Component 2 data until September 30, 2019

14   and that it will not be collecting the 2017 data.

15        Moreover, the Government's failure to disclose its actual

16   position with regards to timing is affecting Plaintiffs'

17   litigation decisions now.  If the Government had revealed to the

18   Court and Plaintiffs in December 2018 that EEOC was representing

19   that it could not begin collecting Component 2 pay data until

20   2021, the Court would have provided Plaintiffs the opportunity

21   to conduct discovery and contest this factual representation.

22        Now the Court and Plaintiffs know that the 2021

23   representation was incorrect because EEOC currently states it

24   can complete the collection by September 30, 2019.  But, even

25   worse for Plaintiffs, although they know that a prior EEOC

1   factual estimation was incorrect, they are effectively being

2   forced to accept Dr. Haffer's factual assertion about EEOC's

3   timeline as true because discovery now would consume too much

4   time.

5       In its latest filing, the Government provides various

6   reasons why it did not disclose the information that it had

7   from the EEOC earlier to the Court and to the Plaintiffs.

8   The Court finds these reasons to be unpersuasive.

9       First, the Government states that it did not provide the

10  information from EEOC to Plaintiffs because it believed that

11  information would be, in quotes, "unsatisfactory" to Plaintiffs.

12  That is certainly not a reason to fail to turn over vital

13  information.  This information was critical to both Plaintiffs

14  and the Court for understanding when the Court needed to act.

15      Second, the Government also states that it did not turn

16  over the information because it would have been a diversion of

17  time and a collateral issue.  It was -- and continues to be --

18  not at all collateral, because it goes to the heart of the

19  effectiveness of any relief Plaintiffs secured.

20      Third, and most revealing, EEOC's own attorney says she was

21  not convinced that EEOC could not begin collecting information

22  until 2021.  This is troubling, because it shows that even

23  EEOC's lawyers believed that EEOC was not credible in the

24  information it was providing to Plaintiffs and to the Court

25  and what impediments, if any, stood in the way of an efficient

collection.  Needless to say, this misrepresentation casts
a shadow over the Government's current representations that
it cannot promptly and efficiently collect the Component 2
information with Component 1 information.

Turning to the issue of the Government's pleadings
since the Court's summary judgment decision and Dr. Haffer's
Declaration and testimony, the Court finds that some of the
Government's purported reasons for not collecting Component 2
information during the reporting period for Component 1
information lack merit.

First, EEOC's alleged privacy and data security concerns
are not adequate reasons for its lack of prompt compliance.
During questioning from the Court, Dr. Haffer conceded that his
goal was to exceed federal standards.  He did not contend that
the approved data collection would not meet current federal
standards.  Likewise, Dr. Haffer also testified that he knew of
no data breaches at EEOC and that storing aggregate pay data
does not make EEOC security measures less effective.

Dr. Haffer's concern about inadvertently releasing
information that could be reverse engineered to identify an
individual person is misplaced.  By policy, the EEOC excludes
information aggregated from a small number of employees,
eliminating the concern that this aggregated information could
be used to identify particular employees or employers based on
unusual combinations of demographic information, job category,

1    and pay band.

2         Second, the utility of the Component 2 data should

3    be irrelevant to EEOC's ability to comply promptly with

4    the collection of the Component 2 data.  Specifically,

5    while the Government questions the adequacy of the prior

6    pilot study and the decision to use pay bands, these issues

7    were previously considered and dealt with during the Paperwork

8    Reduction Act approval process.

9         I want to speak for a moment about the Government's

10   actions since the stay.  The Government's actions during

11   the time between OMB's stay and the Court's summary judgment

12   order, and between the Court's summary judgment order and

13   today, indicate that the Government is not committed to a

14   prompt collection of Component 2 information.

15        Starting with the time period between OMB's stay and the

16   Court's summary judgment decision, the Court finds that no

17   meaningful review of Component 2 pay data was conducted during

18   the stay, which was ostensibly the reason for the stay in the

19   first place.  It also appears that EEOC did not take any action

20   in response to the Rao Memorandum's directive that it prepare a

21   new information collection package for OMB to review.

22        Additionally, the EEOC failed to prepare -- or even

23   consider preparing -- a contingency plan for the Component 2

24   data collection in the event Plaintiffs prevailed in this

25   lawsuit.

In response to questioning from the Court about what steps, if any, EEOC took to prepare for the collection of Component 2 information between the time of the stay and the summary judgment decision, Dr. Haffer testified about "four major activities."

He testified that EEOC conducted an assessment of the entire data collection activity, hired staff with expertise in survey research and in data science and statistics, started the EEOC data and analytics modernization program, and began to carry out the evaluation to understand what EEOC can do better.

However, Dr. Haffer conceded that these four general activities were not done with an eye towards collecting Component 2 information, but rather with an eye to improving overall data collection activities.  And later, during questioning from Plaintiffs' counsel, Dr. Haffer testified that he was not aware of any contingency plan for implementing Component 2 information.

Furthermore, while EEOC purports to be concerned with the prior pilot study, it did not, either before the stay or during the stay, conduct a subsequent pilot study.  Dr. Haffer testified that this was because EEOC was focused on the Component 1 information.

Finally, Dr. Haffer neither knew about nor reviewed the internal work that EEOC had previously done on employer guidance for Component 2 information, even though 11 months had passed

between OMB's approval of Component 2 and its subsequent stay.
As Dr. Haffer testified, at the time of the stay, OMB was on
track to begin the collection of Component 2 information in
just a few months, in January 2018.  It is difficult for the
Court to figure out why Dr. Haffer did not at least review this
work either during or after the stay.

Turning to the time period between the Court's summary
judgment decision in March of this year and today, during this
time period, the EEOC has not finalized the contract with NORC,
provided a reason why it has not yet alerted employers that they
will be required to submit Component 2 data by September 30,
2019 at the latest, has not issued a Federal Register Notice to
alert regulated entities that the stay has been lifted, it has
not restored the prior Component 2 guidance from its website,
and it has not revisited the internal work it did to implement
the Component 2 data collection in the period before the
unlawful stay.

Additionally, in the event the collection is not completed
by September 30, 2019, the Government has been unable to make
any satisfactory commitments that it would collect Component 2
data beyond that date.

In sum, this factual background reflects that the
Government has not demonstrated a commitment to efficiently
collect the Component 2 pay data, and over the course of several
months has affirmatively left both the Court and Plaintiffs to

labor under the misimpression about when and how the Government could collect this information.

The first issue for the Court to deal with is the timing of the collection of the calendar year 2018 data.

Based on Dr. Haffer's testimony, Plaintiffs have withdrawn their request for the Court to order that Component 2 data be collected by May 31, 2019.  This concession is based on Dr. Haffer's testimony that NORC at the University of Chicago informed him that it would, in quotes, "walk away" if it was asked to collect the data any quicker than September 30.

As Plaintiffs note in their summation, they did not have the opportunity to depose Dr. Haffer or officials at NORC, or to conduct any other type of discovery to challenge his factual assertion by NORC as testified to by Dr. Haffer.  As stated earlier, the Court recognizes that Plaintiffs are in a very tough position because time is of the essence and discovery on this matter would further delay these proceedings to Plaintiffs' detriment.

Nonetheless, for current purposes, Plaintiffs are assuming the accuracy of Dr. Haffer's representation about NORC's position that it needs until September 30, 2019, to collect the data.  The Court will do the same, even though the Court harbors its own doubts that it is impossible for NORC or EEOC to collect the data any sooner.

However, because Plaintiffs are agreeing to delay the

collection of the Component 2 data until September 30, the
Court must impose safeguards to ensure the completeness of the
collection.  These orders are even more pressing and necessary
because, as I have laid out, the Government does not have clean
hands in this case.

The second issue that I must decide is how many years of
Component 2 data EEOC must collect.  When this Court ordered the
vacatur of OMB's stay of the data collection, EEOC was required
to collect two years' worth of pay data.  The Government has
conceded this point in their pleadings.

However, the Government now contends that the Acting Chair
has the authority to forgo the collection of calendar year 2017
data.  This position conflicts with this Court's summary
judgment order:  Two years of pay data must be collected.

The EEOC is required to collect a second calendar year
of Component 2 data in addition to calendar year 2018 data.
The Government may collect 2017 pay data or 2019 pay data,
and the Court will get into the details of this further.

The Court is not convinced that EEOC is unable to collect
Component 2 data for calendar year 2017 this year.  While
Dr. Haffer expressed concerns -- both in his Declaration and
during his testimony -- that collecting 2017 data could decrease
response rates and increase errors in the collection process,
the Court views these concerns as speculative, generalized, and,
at times, unsubstantiated.

Dr. Haffer did not state that it would be impossible to collect 2017 Component 2 data for this collection period or that EEOC would be unable to resolve its concerns through various means such as additional contracting support or extending the period for employers to comply.

While it seems that EEOC would prefer to collect only 2018 Component 2 data for this year's collection period, the Court still believes that if diligent and best efforts -- and I should add "prompt" -- diligent and best efforts are made, EEOC would be able to collect 2017 pay data during this year's collection period.

Nevertheless, Plaintiffs have agreed that their summary judgment relief would be satisfied if EEOC collected 2019 calendar year pay data during next year's reporting period and, the record is clear, that this option would pose none of the concerns raised about collecting 2017 data this year.

In response to a question from the Court, Dr. Haffer testified that if EEOC collected 2019 data in 2020, that scenario would resolve any concerns he had from a reliability-and-validity-of-the-data perspective.

Therefore, the Court will be ordering and declaring that the summary judgment opinion and order require the collection of the missing two years of Component 2 pay data.

The Court will also be ordering EEOC to immediately take all steps necessary to complete the Component 2 data collection

for calendar years 2017 and 2018 by September 30, 2019.

The Court will also be ordering that EEOC may satisfy the Court's order requiring two years of data by collecting EEO-1 Component 2 data for -- excuse me -- EEOC Component 2 data for 2019 during the 2020 EEO-1 reporting period.

The Court will be ordering that if EEOC determines to exercise the option to collect EEO-1 Component 2 data for 2019 instead of 2017, it must notify the Court and Plaintiffs of that decision by May 3, 2019.

Next, the Court must deal with the tolling issue. In its submission in response to the Court's questions during the March 19, 2019 status conference, ECF No. 54, although directed to by the Court, the Government did not state its position or challenge Plaintiffs' contention that the illegal stay tolled the expiration of the three-year authorization of the Component 2 data collection.

Although this omission was pointed out by Plaintiffs in their opposing pleading, again the Government was silent on the issue in its reply pleading, ECF No. 63. As this Court stated at the last hearing, the Court considers this issue conceded.

Notwithstanding the Court's statement that it viewed this issue as conceded, for the first time, in its summation pleading, the Government takes a position that there is no legal basis for tolling the expiration of the authorized period for collecting Component 2 pay data.

1    Assuming for purposes of argument that the Court has

2    not already treated the issue as conceded, the Government is

3    still legally and equitably incorrect.  OMB's stay tolls the

4    three-year approval period.  This ruling is supported by the

5    text and purpose of the Paperwork Reduction Act.

6    First, focusing on the statutory language, 44 U.S.C.

7    § 3507(g) expressly states that the director of OMB "may not

8    approve a collection of information from a period in excess of

9    3 years."  The three-year limitation is tied to OMB's actions.

10    When OMB stayed its approval authority, it stayed the running

11    of the three-year period.

12    The purpose of the Paperwork Reduction Act also supports

13    this Court's ruling on tolling.  The PRA has twin aims: to

14    minimize the burden to the public of information collection

15    while maximizing the utility of information collected.  Tolling

16    the three-year time period does not increase the burden on

17    filers beyond the initial three-year approval, and the

18    Government will collect the same amount of information as

19    OMB originally approved.

20    Moreover, this Court has the power to fashion a remedy

21    that extends beyond a statutory lapse date.  And I'll cite to

22    *Burr v. Ambach*, 863 F.2d 1071, from the Second Circuit;

23    *Connecticut v. Schweiker*, 684 F.2d 979, from the D.C. Circuit;

24    and *Andrulis Residential Corporation v. U.S. Small Business*

25    *Administration*, No. 90-2569, 1990 WL 169318, in the District

1    Court of the District of Columbia.

2        Finally, on this point, it is important not to lose track

3    of the fact that the Government is in this position because of

4    its own actions, including the Government's unlawful stay, the

5    agency's failure to engage in a review during this stay, EEOC's

6    failure to prepare any type of contingency plan for Component 2

7    data collection, and the incorrect and incomplete information

8    regarding timing for compliance provided by the Government to

9    Plaintiffs and to the Court.

10       As mentioned earlier, it is apparent to the Court, on the

11   record before it, that no meaningful review of Component 2 pay

12   data was conducted during the stay.  It also appears that EEOC

13   did not take any action in response to the Rao Memorandum's

14   directive that it prepare a new information-collection package

15   for OMB to review.

16       Finally, on the tolling issue, the Court is concerned

17   about the incentives for both the Government and employers if

18   the Court did not rule that the time was tolled.  The Government

19   would have an incentive to further slow-roll the collections

20   this year, and employers that did not want to submit pay data

21   would have the incentive to delay reporting in the hopes of not

22   complying at all.

23       The Court has a responsibility to fashion an order that

24   ensures that EEOC completes the Component 2 data collection.

25   Since the Court's March 4 summary judgment order and opinion --

with numerous filings and court appearances -- the Court does not yet have adequate assurances from the Government that it will complete Component 2 data collection.  Therefore, the Court finds it necessary to order additional ancillary relief.

As stated earlier, I will order EEOC to immediately take all steps necessary to complete the Component 2 data collection by September 30, 2019.

Component 2 data collection will not be deemed complete until the typical numbers of EEO-1 reporters submit the required Component 2 reports.  Plaintiffs suggest -- and the Court finds it to be a reasonable suggestion -- that "typicality" be defined as when the percentage of EEO-1 reporters that have submitted their required EEO-1 Component 2 reports equals or exceeds the mean percentage of EEO-1 reporters that actually received EEO-1 reports in each of the past four collection years.

The Court will also order the Government to provide regular reports to Plaintiffs and to the Court.

Additionally, the Court is troubled as to why the EEOC has not provided a date when it will notify EEO-1 reporters about their obligation to submit Component 2 pay data no later than September 30, 2019, and also why EEOC has not issued a Federal Register Notice to alert the regulated community that the stay has been lifted.

Therefore, the Court will be ordering that by April 29, 2019, EEOC must issue a statement on its website and submit the

same for publication in the Federal Register, notifying EEO-1
filers that they should prepare to submit Component 2 data no
later than September 30, 2019.  The Court is not convinced that
an increase in questions from the regulated community warrants a
delay on this front.

Finally, the Government still has not provided an adequate
plan for collecting Component 2 pay data after September 30,
2019.  While the EEOC has stated that it anticipates completing
collecting the Component 2 information by September 30, 2019,
this is far from an adequate assurance.

In fact, in the Government's summation, it stated, and I
quote, "If circumstances arise whereby the scheduled opening
of the Component 2 pay data collection is seriously delayed,
the EEOC could request an emergency extension of the EEO-1 PRA
approval from OMB in order to allow sufficient time to conduct
the collection of pay data from 2018."  Taken from ECF No. 69.
This is far from a commitment that it would.

Moreover, the Government has not explained how it would
affirmatively act to secure compliance by employers beyond
September 30.  While Dr. Haffer testified that EEOC could accept
data if employers chose to submit it, he also testified that
EEOC would take no steps after September 30 to retrieve the data
from employers who are not in compliance.

The Court will next deal with Plaintiffs' request that the
Court order, in the event that EEO-1 Component 2 pay data

collections for calendar years 2017 and 2018 are not complete

by September 30, 2019, or if the EEOC determines to collect

calendar year 2019 data in lieu of calendar year 2017 data,

that Defendants must exercise all authorities to provide for

emergency extensions of these data collections until the data

collections are complete.

The Court is going to hold this request in abeyance.

At this point, based on the limited briefing on the issue,

the Court believes that its ruling on the tolling issue is

sufficient to protect Plaintiffs' remedy.  However, the Court

is willing to revisit this issue if Plaintiffs wish to submit

additional briefing later.

Finally, for all the relief just discussed, the Court

has the authority to order such relief to ensure the Government

complies with the Court's summary judgment order.

The Court will cite to *United States Bank National

Association v. Poblete*, No. CV 15-00312, an opinion written by

Chief Judge Howell, 2017 WL 4736712; *Kramer v. Secretary of

Defense*, 39 F.Supp 2d 54; *National Venture Capital Association

v. Duke*, Civil No. 17-1912, decision written by Judge Boasberg

of this court; *Mendoza v. Perez*, 72 F.Supp.3d 168.

Despite the Government's contention, nothing about the

EEOC's Acting Chair's statutory authority alters this Court's

conclusion.  The EEOC is subject to the summary judgment

decision -- the EEOC has always been a defendant in this case --

and it must comply with court orders.

Moreover, the Acting Chair's authority is limited by EEOC's regulation, which requires that employers file the operative version of the EEO-1 form annually, and that's at 29 C.F.R. § 1602.7.  The current EEO-1 form includes the Component 2 data collection.  The Acting Chair cannot waive this requirement for a reporting year.

For the reasons discussed, the Court will be issuing the following order today with potential slight modifications:

• ORDERED and DECLARED that the Court's summary judgment opinion and order, ECF Nos. 45, 46, require that Defendant EEOC collect EEO-1 Component 2 pay data for calendar years 2017 and 2018.

• ORDERED that in lieu of collection of Component 2 data for calendar year 2017, the EEOC may satisfy the Court's order requiring two years of data by collecting EEO-1 Component 2 data for 2019 during the 2020 EEO-1 reporting period.  If the EEOC determines to exercise the option to collect EEO-1 Component 2 data for 2019 instead of 2017, it must notify the Court and Plaintiffs of that decision by May 3, 2019.

• It is ORDERED that Defendant Office of Management and Budget's August 29, 2017 stay of its approval of the revised EEO-1 form tolled the three-year period of that approval for the duration of the stay, which lasted 553 days.  Accordingly, the Court DECLARES that, barring further interruptions of the

approval or extensions, the Paperwork Reduction Act approval for the revised EEO-1 form, including Component 2 pay data, OMB Control No. 3046-0007, shall expire no later than April 5, 2021.

• It is FURTHER ORDERED that the EEOC must immediately take all steps necessary to complete the EEO-1 Component 2 data collection for calendar years 2017 and 2018 by September 30, 2019. If the EEOC exercises its option to collect EEO-1 Component 2 data for 2019 in lieu of 2017, that collection must occur in the 2020 EEO-1 reporting period.

• It is ORDERED that by April 29, 2019, the EEOC must issue a statement on its website and submit the same for publication in the Federal Register notifying EEO-1 filers that they should prepare to submit Component 2 data no later than September 30, 2019.

• ORDERED that beginning on May 3, 2019, and continuing every 21 days thereafter, the EEOC must provide reports to Plaintiffs and the Court of notice of all steps taken to implement the EEO-1 Component 2 data collections since the prior report, notice of all steps to be taken during the ensuing three-week period and indicating whether the EEOC is on track to complete the collection by September 30, 2019.

• It is FURTHER ORDERED that the EEO-1 Component 2 data collections will not be deemed complete, for the purpose of this order, until the percentage of EEO-1 reporters that have submitted their required EEO-1 Component 2 reports equals or

1    exceeds the mean percentage of EEO-1 reporters that actually

2    submitted EEO-1 reports in each of the past four reporting

3    years.

4         • It is FURTHER ORDERED that the Court will retain

5    jurisdiction over this matter for the purposes of enforcing

6    its March 4, 2019 summary judgment opinion and order as well

7    as this Order.

8         I do have a clarifying question for Plaintiffs and the

9    Government.  As currently worded, by April 29, 2019, the

10   Government must issue a statement on its website and submit the

11   same for publication in the Federal Register notifying EEO-1

12   filers that they should prepare to submit Component 2 data no

13   later than September 30, 2019.

14        However, the Government has until May 3 to determine if it

15   wants to exercise the option to collect EEO-1 Component 2 data

16   for 2019 instead of 2017.  This means that on April 29, 2019,

17   EEOC may not know what to tell employers about the collections

18   of data other than 2018.

19        So, Plaintiffs, do you want to give your position or

20   clarify on that point?

21        MS. THURSTON:  Yes, Your Honor.  That's a fair

22   question.  We think that, at a minimum, by the 29th it would be

23   appropriate for the EEOC to notify employers that they will be

24   submitting some Component 2 data by September 30, at least the

25   2018 calendar-year information.  If the EEOC has decided by then

1    which of the other calendar years to require, they could provide

2    that notification as well.  Otherwise, I think it would be

3    acceptable for the EEOC to notify employers that they will

4    provide additional information about which of the second

5    calendar years would be required to be submitted by May 3.

6              THE COURT:  All right.  Ms. Moore?

7         MS. MOORE:  That sounds reasonable to us.

8              THE COURT:  All right.  Thank you.  That was easy.

9         All right.  Thank you all.

10        (Proceedings adjourned at 11:42 a.m.)

* * * * * *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify
that the foregoing pages are a correct transcript from the
record of proceedings in the above-entitled matter.


*Bryan A. Wayne*
BRYAN A. WAYNE