transparency in markets for the sale or transportation of physical natural gas in interstate commerce, having due regard for the public interest, the integrity of those markets, fair competition, and the protection of consumers. FERC–551 uses the information provided by pipelines as part of its overall implementation of the statutory provisions of sections 23 of the Natural Gas Act, 16 U.S.C. 717t–2. More specifically, the Commission relies, in part, on section 23(a)(1) of the Natural Gas Act, for authority to collect this information and uses the pipelines' FERC–551 postings as part of fulfilling the transparency provisions of section 23(a)(1) of the Natural Gas Act. The data requirements for pipelines are in listed the Code of Federal Regulations (CFR) under 18 CFR 284.13, reporting requirements for interstate pipelines. The Commission has directed that the data requirements under FERC–551 are to be posted on interstate pipelines' websites and provided in downloadable file formats, in conformity with 18 CFR 284.12.

The posting requirements are based on the Commission's authority under section 23 of the NGA (as added by the Energy Policy Act of 2005), which provides, in relevant part, that the Commission may issue such rules as necessary and appropriate to provide for the dissemination of ''information about the availability and prices of natural gas at wholesale and in interstate commerce . . . .''[1] This provision enhances the Commission's authority to ensure confidence in the nation's natural gas markets. The Commission's market-oriented policies for the wholesale natural gas industry require that interested persons have broad confidence that reported market prices accurately reflect the interplay of legitimate market forces. Without confidence in the efficiency of price formation, the true value of transactions is very difficult to determine. Further, price transparency facilitates ensuring that jurisdictional prices are ''just and reasonable.''[2]

The posting of FERC–551 information occurs on a daily basis. The data must be available for download for not less than 90 days from the date of posting and must be retained by the pipeline for three years.

The daily posting requirements for major non-interstate pipelines prescribed in the Commission's Order No. 720 are no longer required. The number of respondents used to develop the burden estimates do not include any major non-interstate pipelines.

*Type of Respondents:* Interstate Natural Gas Pipelines.

*Estimate of Annual Burden:*[3] The Commission estimates the total public reporting burden and cost for this information collection as follows:

FERC–551—REPORTING OF FLOW VOLUME AND CAPACITY BY INTERSTATE NATURAL GAS PIPELINES

| | Number NGA of respondents (1) | Annual number of responses per respondent (2) | Total number of responses (1) * (2) = (3) | Average burden & cost per response [4] (4) | Total annual burden hours & total annual cost (3) * (4) = (5) | Burden hour & cost per respondent ($) (5) ÷ (1) |
|---|---|---|---|---|---|---|
| FERC–551 | 172 | 365 | 62,780 | 0.5 hours; $32.69 | 31,390 hrs.; $2,052,278.20 | 182.5 hrs.; $11,931.85. |

*Comments:* Comments are invited on: (1) Whether the collection of information is necessary for the proper performance of the functions of the Commission, including whether the information will have practical utility; (2) the accuracy of the agency's estimate of the burden and cost of the collection of information, including the validity of the methodology and assumptions used; (3) ways to enhance the quality, utility and clarity of the information collection; and (4) ways to minimize the burden of the collection of information on those who are to respond, including the use of automated collection techniques or other forms of information technology.

Dated: September 5, 2019.

**Kimberly D. Bose,**
*Secretary.*

[FR Doc. 2019–19750 Filed 9–11–19; 8:45 am]

**BILLING CODE 6717–01–P**

---

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Agency Information Collection Activities: Existing Collection**

**AGENCY:** Equal Employment Opportunity Commission.

**ACTION:** Notice of Information Collection—Request for new Control Number for a Currently Approved Collection: Employer Information Report (EEO–1) Component 1; Revision of Existing Approval for EEO–1 Component 2.

**SUMMARY:** In accordance with the Paperwork Reduction Act (PRA), the Equal Employment Opportunity Commission (EEOC or Commission) announces that it intends to submit to the Office of Management and Budget (OMB) a request for a three-year PRA approval of Component 1 of the Employer Information Report (EEO–1). The EEOC intends to seek OMB approval to remove Component 1 from OMB control number 3046–0007 and to request its approval under a new control number. The EEOC does not intend to submit to OMB a request to renew Component 2 under OMB control number 3046–0007. The EEO–1 Component 1 collections for 2016, 2017, and 2018 under the 3046–0007 control number have been completed. However, the EEO–1 Component 2 collections for 2017 and 2018 are now underway under this same control number, and as discussed in *National Women's Law Center, et al.* v. *Office of Management and Budget, et al.,* Component 2 approval under control number 3046–0007 will expire no later than April 5, 2021, by order of the court. The EEOC believes a new OMB control number for Component 1 that is separate from the current control number for the Component 2 collection will minimize confusion for EEO–1 filers.

**DATES:** Written comments on this notice must be submitted on or before November 12, 2019.

---

[1] Section 23(a)(2) of the NGA, 15 U.S.C. 717t–2(a)(2) (2000 & Supp. V 2005).

[2] *See* sections 4 and 5 of the NGA, 15 U.S.C. 717c and 717d.

[3] Burden is defined as the total time, effort, or financial resources expended by persons to generate, maintain, retain, or disclose or provide information to or for a Federal agency. For further explanation of what is included in the information collection burden, refer to 5 CFR 1320.3.

[4] The estimates for cost per response are derived using the following formula: Average Burden Hours per Response * $65.38/hour = Average cost/response. The figure includes wages plus benefits and comes from the Bureau of Labor Statistics (*https://www.bls.gov/oes/2017/may/oes131111.htm* data from May, 2017) using Management Analyst category code (13–1111) for wages and the Management, business, and financial occupational group (*https://www.bls.gov/news.release/ecec.t04.htm*) for benefits.

**ADDRESSES:** You may submit comments by any of the following methods—please use only one method:

*Federal eRulemaking Portal: http://www.regulations.gov.* Follow the instructions on the website for submitting comments.

*Mail:* Comments may be submitted by mail to Bernadette B. Wilson, Executive Officer, Executive Secretariat, Equal Employment Opportunity Commission, 131 M Street NE, Washington, DC 20507.

*Fax:* Comments totaling six or fewer pages can be sent by facsimile ("fax") machine to (202) 663–4114. (This is not a toll-free number.) Receipt of fax transmittals will not be acknowledged, except that the sender may request confirmation of receipt by calling the Executive Secretariat staff at (202) 663–4070 (voice) or (800) 669–6820 (TTY). (These are not toll-free telephone numbers.)

*Instructions:* All comments received must include the agency name and docket number. All comments received will be posted without change to *http://www.regulations.gov,* including any personal information provided. However, the EEOC reserves the right to refrain from posting libelous or otherwise inappropriate comments, including those that contain obscene, indecent, or profane language; that contain threats or defamatory statements; that contain hate speech directed at race, color, sex, national origin, age, religion, disability, or genetic information; or that promote or endorse services or products.

All comments received, including any personal information provided, also will be available for public inspection during normal business hours by appointment only at the EEOC Headquarters' Library, 131 M Street NE, Washington, DC 20507. Upon request, individuals who require assistance viewing comments are provided appropriate aids such as readers or print magnifiers. To schedule an appointment to inspect the comments at the EEOC's library, contact the library staff at (202) 663–4630 (voice) or (800) 669–6820 (TTY). (These are not toll-free numbers.)

**FOR FURTHER INFORMATION CONTACT:** Rashida Dorsey, Ph.D., MPH, Director, Data Development and Information Products Division and Senior Advisor on Data Strategy, Office of Enterprise Data and Analytics, Equal Employment Opportunity Commission, 131 M Street NE, Washington, DC 20507, (202) 663–4355 (voice) or (202) 663–7063 (TTY). Requests for this notice in an alternative format should be made to the Office of Communications and Legislative Affairs at (202) 663–4191 (voice) or (202) 663–4494 (TTY).

**SUPPLEMENTARY INFORMATION:** Since 1966, the EEOC has required EEO–1 filers to submit demographic data (Component 1) on an annual basis. All private employers that are covered by Title VII and have 100 or more employees are required to file the Component 1 data. In addition, Office of Federal Contract Compliance Programs (OFCCP) regulations require certain federal contractors to file the EEO–1 if they have 50 or more employees and are not exempt as provided for by 41 CFR 60–1.5.[1] In 2016, the EEOC proposed to revise the EEO–1 report to add the collection of specific summary pay data (Component 2) and sought OMB approval under the PRA. OMB approved the proposed collection of Component 2 data for calendar years 2017 and 2018 under OMB control number 3046–0007 on September 29, 2016. OMB's approval on this date also covered the 2016, 2017, and 2018 collection of Component 1 data.

Exercising its authority under the PRA, on August 29, 2017, OMB stayed the EEOC's collection of Component 2 data (OMB did not stay the collection of Component 1 data). During the term of this stay, the EEOC collected only Component 1 data for reporting years 2017 and 2018. Subsequently, on March 4, 2019, the court in *National Women's Law Center, et al.* v. *Office of Management and Budget, et al.,* Civil Action No. 17–cv–2458 (D.D.C.), vacated OMB's stay of Component 2 and ordered that the previous approval of the revised EEO–1 was in effect. On April 25, 2019, the court further ordered that the PRA approval for the EEO–1 including Component 2 data, OMB control number 3046–0007, would expire no later than April 5, 2021, and that the collection of Component 2 would not be deemed complete until the percentage of filers submitting Component 2 reports equals or exceeds the mean percentage of EEO–1 reporters that actually submitted EEO–1 reports in each of the past four reporting years. The court further ordered that the EEOC must collect the Component 2 data for 2017 and 2018 by September 30, 2019. This case is now pending on appeal before the U.S. Court of Appeals for the D.C. Circuit. *National Women's Law Center, et al.* v. *Office of Management and Budget, et al.,* Case No. 19–5130 (D.C. Cir.).

Because OMB did not stay the EEOC's collection of Component 1 data on August 29, 2017, the EEOC collected EEO–1 Component 1 data for each of the three years covered by the September 29, 2016 PRA approval. Accordingly, under the PRA, the EEOC must now seek from OMB an extension in order to continue to collect EEO–1 Component 1 data for 2019, 2020, and 2021. To minimize confusion in light of the above-referenced litigation, the EEOC will be asking OMB to approve Component 1 under a new OMB control number.

In May 2018, the EEOC created the Office of Enterprise Data and Analytics (OEDA) with the goal of creating a 21st century data and analytics organization at the agency. OEDA is largely staffed by data scientists and statisticians who did not work at the EEOC in 2016 when the Commission was developing the previous EEO–1 approval. In March 2019, the EEOC began preparing to seek continued approval of the EEO–1 collection under the PRA. Staff in OEDA revisited the previous methodology for calculating burden estimates utilized by the EEOC for the EEO–1, taking into consideration Government Accountability Office (GAO) and OMB guidance on the appropriate methodology for calculating burden estimates in federal information collections.[2] In light of these

---

[1] Unless otherwise noted, the term "contractor" refers to federal contractors and first-tier subcontractors that satisfy the employee and contract size coverage criteria that subject them to the EEO–1 reporting obligations. The term "private employers" or "private industry" refers to all other entities required to file the EEO–1 that are not included in the "contractor" designation. The term "employer" or "filer" refers collectively to all entities that are required to file EEO–1 data.

[2] *See* Government Accountability Office Report GAO–18–381, "*PAPERWORK REDUCTION ACT, Agencies Could Better Leverage Review Processes and Public Outreach to Improve Burden Estimates,*" July 2018, *https://www.gao.gov/assets/700/693057.pdf,* p. 8, Footnote a to Figure 2. ("A single information collection request may contain multiple burden hour estimate formulas depending, for example, on whether there are different forms or different types of respondents. The total annual burden hour estimate is the sum of all of individual burden hour estimate formulas. If the information request is for the maximum 3-year period, then the annual burden estimate is the average over that 3-year period."); *see also* ROCIS HOW TO Guide for Agency Users of the (ICR) Module, April 5, 2017, *https://www.rocis.gov/rocis/jsp3/common/ROCIS_HOW_TO_Guide_for_AGENCY_Users_of_ICR_Module-04052017.pdf,* p. 105, ¶ 12. ("Provide estimates of the hour burden of the collection of information. The statement should:

\* Indicate the number of respondents, frequency of response, annual hour burden, and an explanation of how the burden was estimated. Unless directed to do so, agencies should not conduct special surveys to obtain information on which to base hour burden estimates. Consultation with a sample (fewer than 10) of potential respondents is desirable. If the hour burden on respondents is expected to vary widely because of differences in activity, size, or complexity, show the range of estimated hour burden, and explain the reasons for the variance. Generally, estimates

Continued

considerations, OEDA staff believed that the EEOC's previous burden estimate for the EEO–1 had insufficiently calculated what the burden would be to submit the data. On May 15, 2019, Janet Dhillon was sworn in as Chair of the EEOC, restoring the EEOC's quorum, which it had lost in January 2019. After Chair Dhillon assumed this role, the Director of OEDA informed her of OEDA's concerns about the previous burden estimates for the EEO–1.

Accordingly, the EEOC re-examined the methodology used to calculate the 2016 burden for the collection of EEO–1 data and concluded that the methodology did not adhere to the standard approach for estimating burden in federal data collections. Unlike the guidance provided by both GAO and OMB, the EEOC had estimated burden at the individual employer level in the 2016 package and not at the individual form level.[3] Not adhering to this standard practice resulted in an extremely low estimate of the burden on employers. Based on the following analysis and as specified below, the EEOC now concludes that the burden estimate associated with the EEO–1 is higher than it has previously estimated.

In 2016, the methodology used to calculate the burden relied almost exclusively on the number of employers or "EEO–1 filers" without considering the variation in burden attributable to the different number and types of EEO–1 reports that different employers file. Essentially, the 2016 methodology treated all employers the same. The EEO–1 Instructions direct an employer with only a single location to file one EEO–1 report, while directing an employer with numerous locations to file a corresponding number of EEO–1 "establishment" reports, as well as a headquarters report and a consolidated report.[4] The time and resources used to collect and report data for a large number of these reports at different locations, some of which are more detailed than others, is necessarily greater than that needed to prepare a single report or a few reports at one or two locations. Nonetheless, the initial 2016 burden methodology "was [exclusively] based on the number of firms filing one or more EEO–1 reports, not on the number of reports submitted or the number of separate establishments submitting reports."[5] The final 2016 methodology acknowledged that the number of reports could change the burden on employers, but it still assumed "that the bulk of the tasks performed in completing the EEO–1 report will be completed at the firm level due to the centrality of automation."[6] Applying this 2016 methodology, the EEOC concluded that "the total estimated *annual* burden hour costs for employers and contractors that will complete both Components 1 and 2 in 2017 and 2018 will be $53,546,359.08."[7]

The EEOC has developed a more accurate methodology that deconstructs the total number of reports submitted by report type and by filer type, and then estimates an average burden based on the number and types of reports submitted.[8] These estimates account for the different amounts of time required for different types of EEO–1 reports,[9] and are based on EEOC experience during the data submission process. (*See infra* note 21 for the specific number of hours for each type of EEO–1 report.) Even using modest assumptions about the time needed to complete various EEO–1 reports, as explained in detail below, the EEOC estimates with this new methodology that the burden hour costs for submitting both Components 1 and 2 would be $614,391,388 in 2017 and

---

should not include burden hours for customary and usual business practices.

\* If this request for approval covers more than one form, provide separate hour burden estimates for each form and aggregate the hour burdens.

\* Provide estimates of annualized cost to respondents for the hour burdens for collections of information, identifying and using appropriate wage rate categories. The cost of contracting out or paying outside parties for information collection activities should not be included here. Instead, this cost should be included under 'Annual Cost to Federal Government'.")

[3] The EEOC refers to the various individual EEO–1 forms that employers must file as "reports". See footnote 4 for an explanation of the types of reports required to be filed.

[4] A single-establishment employer is required to submit only one EEO–1 data report—a type 1 EEO–1 Report. A multi-establishment employer is required to submit several reports: The type 2 'Consolidated Report' must include all employees of the employer categorized by race, gender and job category and the type 3 'Headquarters Report' must include employees working at the main office site of the employer and those employees that work from home that report to the corporate office. In addition, a separate EEO–1 report for the headquarters establishment is required even if there are fewer than 50 employees working at the headquarters establishment. Type 4 'Establishment Reports' must be submitted for each physical establishment with 50 or more employees. Employment data must be categorized by race or ethnicity, gender, and job category. Establishment sites with fewer than 50 employees must submit either a type 8 or a type 6 report. An employer submitting type 8 'Establishment Reports' should submit a separate report for each establishment employing fewer than 50 employees. Like the type 4 'Establishment Report', type 8 report employment data must also be categorized by race or ethnicity, gender, and job category. For type 6 'Establishment List' the establishment name, complete address, and total number of employees must be provided for each physical location where fewer than 50 employees are working. Employers choosing a type 6 data report for each establishment employing fewer than 50 employees must manually enter data categorized by race or ethnicity, gender, and job category to the type 2 'Consolidated Report' to include all company employees. Filers choosing to create a type 8 report for each establishment employing fewer than 50 employees must enter employment data categorized by race or ethnicity, gender, and job category for each type 8 report. The employment data entered for each such establishment on a type 8 report will automatically populate the type 2 Consolidated Report.

[5] *Agency Information Collection Activities; Notice of Submission for OMB Review, Final Comment Request: Revision of the Employer Information Report (EEO–1),* 81 FR 45479, 45493 (July 14, 2016) ("the EEOC [initially] concluded that most employers would be filing the EEO–1 with a digital file upload by the time they file their EEO–1 reports for 2017 and 2018. Therefore, in the 60-Day Notice, the EEOC reasoned that 'each additional report filed [would have] just a marginal additional cost.' Accordingly, the burden calculation in the [2016] 60-Day Notice was based on the number of firms filing one or more EEO–1 reports, not on the number of reports submitted or the number of separate establishments submitting reports.")

[6] *Id.* ("Second, the EEOC no longer assumes that all the EEO–1 reports for 2017 and 2018 will be submitted by one data upload filed by the firm on behalf of all the establishments. While still reflecting that the bulk of the tasks performed in completing the EEO–1 report will be completed at the firm level due to the centrality of automation, the EEOC's 30-Day Notice recognizes that there are certain tasks that will be performed at the establishment level for employers who enter their EEO–1 data directly onto the Joint Reporting Committee's secure portal. Therefore, the 30-Day Notice burden calculations are based on the number of hours needed to complete the tasks at the firm level and also at the establishment level for the proportion of EEO–1 filers who do not now use centralized, secure data uploads.")

[7] *Id.*

[8] *See* footnote 2, *supra; see also, e.g., Mortality in Correctional Institutions,* 84 FR 1507, 1508–09 (2019).

[9] Using Component 1 2017 data as the basis for an example of the new methodology, 75,043 EEO–1 filers submitted a total of 1,597,036 Component 1 reports to the EEOC. Forty percent, or 30,203 filers, submitted a report for only a single establishment. Single establishment filers are referred to as "Type 1" filers by the EEOC. Each Type 1 filer submitted a single report, yielding a total of 30,203 reports in 2017. These Type 1 filers have the lowest burden, with an average estimated burden of 45 minutes annually to complete their submission of Component 1.

Multiple establishment filers are referred to as "Type 2" filers by the EEOC. In 2017, Type 2 filers accounted for 60%, or 44,840 filers of Component 1, and in 2017 submitted a total of 1,566,833 reports, or 98% of all Component 1 EEO–1 reports submitted. Type 2 filers have a higher reporting burden because they are required to submit a combination of reports: One type 2 ("consolidation") report, one type 3 ("headquarters") report, and a type 4 establishment report, a type 8 establishment report, or a type 6 establishment list for each establishment. The estimated burden for Type 2 filers varies between 3.5 and 9.5 hours, depending on the report type combination. This new method for calculating the filers' burden yielded a total estimated burden of 7,643,874 hours for 75,043 filers to submit 1,597,036 reports for data year 2017. Per U.S. Department of Labor's Bureau of Labor Statistics wage rates, the associated total annual burden hour cost is $297,381,066 for required filers. The EEOC estimates that the total cost of the administration of the EEO–1 Component data collection to the federal government is $2 million annually.

$622,015,798 in 2018.[10] Under the PRA, the EEOC must balance the utility of the data to its enforcement programs against the burden the data collection as structured imposes on the employers who must submit it. The Commission now concludes that it should consider information from the ongoing Component 2 data collection before deciding whether to submit a pay data collection to OMB. At this point in time, the unproven utility to its enforcement program of the pay data as defined in the 2016 Component 2 is far outweighed by the burden imposed on employers that must comply with the reporting obligation. Therefore, the EEOC is not seeking to renew Component 2 of the EEO–1.[11]

Despite the higher burden, the EEOC still intends to continue its collection of Component 1 data. Collection of Component 1 data is a long-held practice that has occurred for over 50 years and has already proven its utility to the EEOC's enforcement of employment discrimination laws in many ways. Component 1 EEO–1 data is an important internal resource for analysis of industries and regions, and also for investigators who use the EEO–1 along with other data sources as they start to assess allegations of discrimination. Under these circumstances, even with a higher burden estimate, the EEOC believes that the collection of Component 1 data is necessary for the proper performance of the agency's functions and has a practical utility to the fulfillment of the EEOC's mission.

Pursuant to the PRA and OMB regulation 5 CFR 1320.8(d)(1), the Commission solicits public comment on its intent to seek PRA approval of Component 1 of the EEO–1 under a new OMB control number to: (1) Evaluate whether the proposed collection of information is necessary for the proper performance of the Commission's functions, including whether the information will have practical utility; (2) Evaluate the accuracy of the Commission's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used; (3) Enhance the quality, utility, and clarity of the information to be collected; and (4) Minimize the burden of the collection of information on those who are to respond, including the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, *e.g.,* permitting electronic submission of responses.

Because the number of Component 1 filers increased to 87,021 by the close of data year 2018, the EEOC is estimating that the number of filers required to submit Component 1 will increase again to approximately 90,000 for data years 2019 through 2021. Accordingly, the EEOC is calculating the burden estimates in this notice based on this revised estimate of the number of filers. The agency is using the methodology outlined above.

**Overview of Information Collection**

*Component 1*

*Collection Title:* Employer Information Report (EEO–1) Component 1.

*OMB Number:* 3046–XXXX (previously was 3046–0007).

*Frequency of Report:* Annual.

*Type of Respondent:* Private employers with 100 or more employees and certain federal government contractors and first-tier subcontractors with 50 or more employees.

*Description of Affected Public:* Private employers with 100 or more employees and certain federal government contractors and first-tier subcontractors with 50 or more employees.

*Reporting Hours:* 9,167,393.

*Respondent Burden Hour Cost:* $297 million.[12]

*Federal Cost:* $2 million.

*Number of Forms:* 1.

*Abstract:* Section 709(c) of Title VII of the Civil Rights Act of 1964 (Title VII) requires employers to make and keep records relevant to the determination of whether unlawful employment practices have been or are being committed, to preserve such records, and to produce reports as the Commission prescribes by regulation or order.[13] Pursuant to this statutory authority, the EEOC in 1966 issued a regulation requiring certain employers to file executed copies of the EEO–1 in conformity with the directions and instructions on the form, which called for reporting employee data by job category, ethnicity, race, and sex.[14] Pursuant to Executive Order 11246,[15] the Office of Federal Contract Compliance Programs (OFCCP), U.S. Department of Labor, in 1978 issued its regulation describing the EEO–1 as a report "promulgated jointly with the Equal Employment Opportunity Commission" and requiring certain contractors to submit "complete and accurate reports" annually.[16] Currently, Component 1 of the EEO–1 directs certain covered employers with more than 50 employees (contractors) or 100 employees (private industry) to report annually the number of individuals they employ by job category and by race, ethnicity, and sex.[17] The data include seven race and ethnicity categories [18]

---

[10] The EEOC uses 2017 and 2018 data as an example because it is the agency's most recent data.

[11] Due to the high estimated burden associated with adding pay data collection to the EEO–1, if the EEOC seeks to pursue a pay data collection in the future it will do so using notice and comment rulemaking and a public hearing pursuant to Title VII of the Civil Rights Act of 1964. Furthermore, before undertaking a new pay data collection, the EEOC believes the process would benefit from a reexamination of the recommendations from the EEOC-commissioned 2012 study from the National Academy of Sciences (NAS), entitled "Collecting Compensation Data from Employers," which examined the potential benefits and burdens of collecting pay data from employers.

[12] This estimate is based on the most recent median pay data from the Board of Labor Statistics. We estimated that a computer support specialist would account for 60% of the estimated hourly wage; a database administrator would account for 20%; an HR specialist would account for 10%; legal counsel would account for 5% and an CEO would account for 5%, for a total estimated hourly wage of $32.44. *See* U.S. Dept. of Labor, Bureau of Labor Statistics, *Occupational Outlook Handbook,* https://www.bls.gov/ooh/business-and-financial/human-resources-specialists.htm.

[13] 42 U.S.C. 2000e–8(c).

[14] The EEOC's EEO–1 regulation is at 29 CFR part 1602 Subpart B. The EEOC is responsible for obtaining OMB's PRA approval for the EEO–1 report.

[15] Exec. Order No. 11,246, 30 FR 12,319 (Sept. 24, 1965).

[16] 41 CFR 60–1.7(a). The EEOC may also share EEO–1 data with state and local Fair Employment Practices Agencies under the authority of section 709(d) of Title VII. Subject to their agreement to retain confidentiality as required by 42 U.S.C. 2000e–8(e), the EEOC shares EEO–1 reports with the Department of Justice (DOJ), the Federal Insurance Corporation (FDIC), and the National Credit Union Administration (NCUA). The FDIC and NCUA use EEO–1 data pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 to help analyze diversity in management, employment, and business activities. DOJ uses the EEO–1 data when it defends OFCCP in litigation, in the event a federal contractor sues OFCCP to prevent debarment.

[17] The EEO–1 uses federal race and ethnicity categories, which were adopted by the Commission in 2005 and implemented in 2007.

[18] *Hispanic or Latino*—A person of Cuban, Mexican, Puerto Rican, South or Central American, or other Spanish culture or origin regardless of race.

*White (Not Hispanic or Latino)*—A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

*Black or African American (Not Hispanic or Latino)*—A person having origins in any of the black racial groups of Africa.

*Native Hawaiian or Other Pacific Islander (Not Hispanic or Latino)*—A person having origins in any of the peoples of Hawaii, Guam, Samoa, or other Pacific Islands.

*Asian (Not Hispanic or Latino)*—A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam.

*American Indian or Alaska Native (Not Hispanic or Latino)*—A person having origins in any of the original peoples of North and South America (including Central America), and who maintain tribal affiliation or community attachment.

*Two or More Races (Not Hispanic or Latino)*—All persons who identify with more than one of the above five races.

and ten job categories,[19] by sex. The individual EEO–1 reports are confidential. EEO–1 data are used by the EEOC to investigate charges of employment discrimination against employers in private industry and to provide information about the employment status of minorities and women.

*Burden Statement:* The previous annual estimated burden for Component 1 under the 2016 clearance [20] was 1,952,146 hours. After reviewing the methodology used to calculate the 2016 burden for Component 1, we identified an approach we believe is substantially more precise.

The methodology used in this notice to calculate the burden for Component 1 is to separate Type 1 (single establishment) and Type 2 (multi-establishment) filers and calculate the burden by considering the following factors: type of filer, the combination of report types submitted by the filer, and the total number of reports filers will certify to complete their EEO–1 submission.

*An estimate of the total number of respondents and the amount of time estimated for an average respondent to respond:* The estimated number of respondents who must annually file EEO–1 Component 1 data for the next three years is 90,000 filers each year. The EEOC estimates that the 90,000 filers will submit 1,915,345 reports. Reports represent the annual number of responses. About 40% of Component 1 filers (36,223 filers) will submit a single report on a single establishment, and it is estimated that it will take these filers an average of 45 minutes per reporting year to complete their Component 1 EEO–1 report. About 60% of Component 1 filers (53,777 filers) will report data on multiple establishments. All multi-establishment filers must complete both type 2 and type 3 reports, in addition to completing either a type 4, 6, or 8 report for each establishment for each reporting year, for a total of 1,879,122 multi-establishment EEO–1 reports submitted by 53,777 multi-establishment filers. While the actual submission time for single and multi-establishment filers varies,[21] for purposes of this exercise we estimate that it will take a filer, on average, under 5 hours to complete their Component 1 EEO–1 report. Each filer will be asked to respond to Component 1 of the EEO–1 once annually. The burden estimate is based on data from prior administrations of Component 1 of the EEO–1.

*An estimate of the total public burden (in hours) associated with the collection:* The collection of EEO–1 Component 1 data for calendar years 2019, 2020, and 2021 is estimated to impose a total of 9,167,393 annual burden hours for 1,915,345 Component 1 reports. Filers are encouraged to report data electronically to decrease burden.

Dated: September 9, 2019.

For the Commission.

**Janet Dhillon,**
*Chair.*

[FR Doc. 2019–19767 Filed 9–11–19; 8:45 am]

**BILLING CODE 6570–01–P**

---

[19] The ten job groups are: Executive/Senior Level Officials and Managers; First/Mid Level Officials and Managers; Professionals; Technicians; Sales Workers; Administrative Support Workers; Craft Workers; Operatives; Laborers and Helpers; and Service Workers.

[20] The 2016 burden was estimated to be 6.6 hours per respondent, multiplied by 60,886 respondents. The EEOC has now determined that the proper unit of analysis to calculate burden should be the number of reports submitted by report type, rather than the number of respondents.

[21] Burden for single establishment filers is based on a single report. Burden for multi-establishment reporters is cumulative and is based on the report type combination. EEO–1 project staff estimate that the average completion time for the type 2 report would be 45 minutes, the completion of the type 3 report adds an average of 45 minutes to the burden, and the completion of type 4 reports adds an average of 2 hours to the burden, so a Type 2 filer completing type 4 reports will have an average burden of 3.5 hours (45 minutes for the type 2 report, plus 45 minutes for the type 3 report, plus 2 hours for the type 4 reports). A Type 2 filer completing type 6 reports will add—on average— 8 hours to the burden, for a total burden of 9.5 hours. A Type 2 filer completing type 8 reports will add—on average—3 hours to the burden, for a total burden of 4.5 hours. While this analysis recognizes that individual filers' burdens will vary, on average a multi-establishment filer submitting 2/3/4 reports would have the lowest estimated burden of 3.5 hours while a filer submitting 2/3/6 reports would have the highest estimated average burden of 9.5 hours. Once Type 1, or single establishment filers, and filers submitting 2/3/8 are considered, the average estimated burden for EEO–1 filers is approximately 5 hours.

---

# FEDERAL COMMUNICATIONS COMMISSION

[OMB 3060–0207]

## Information Collection Being Reviewed by the Federal Communications Commission

**AGENCY:** Federal Communications Commission.

**ACTION:** Notice and request for comments.

**SUMMARY:** As part of its continuing effort to reduce paperwork burdens, and as required by the Paperwork Reduction Act of 1995 (PRA), the Federal Communications Commission (FCC or Commission) invites the general public and other Federal agencies to take this opportunity to comment on the following information collections. Comments are requested concerning: Whether the proposed collection of information is necessary for the proper performance of the functions of the Commission, including whether the information shall have practical utility; the accuracy of the Commission's burden estimate; ways to enhance the quality, utility, and clarity of the information collected; ways to minimize the burden of the collection of information on the respondents, including the use of automated collection techniques or other forms of information technology; and ways to further reduce the information collection burden on small business concerns with fewer than 25 employees.

The FCC may not conduct or sponsor a collection of information unless it displays a currently valid Office of Management and Budget (OMB) control number. No person shall be subject to any penalty for failing to comply with a collection of information subject to the PRA that does not display a valid OMB control number.

**DATES:** Written PRA comments should be submitted on or before November 12, 2019. If you anticipate that you will be submitting comments, but find it difficult to do so within the period of time allowed by this notice, you should advise the contact listed below as soon as possible.

**ADDRESSES:** Direct all PRA comments to Nicole Ongele, FCC, via email *PRA@fcc.gov* and to *Nicole.ongele@fcc.gov.*

**FOR FURTHER INFORMATION CONTACT:** For additional information about the information collection, contact Nicole Ongele, (202) 418–2991.

*OMB Control Number:* 3060–0207.

*Title:* Part 11—Emergency Alert System (EAS), Order, FCC 19–57.

*Form No.:* N/A.

*Type of Review:* Revision of currently approved collection.

*Respondents:* Business or other for-profit; Not-for-profit institutions; State, Local, or Tribal Government.

*Number of Respondents and Responses:* 63,084 respondents; 3,588,830 responses.

*Estimated Time per Response:* 0.017 hours–0.68 hours.

*Frequency of Response:* Recordkeeping requirement and third-party disclosure requirements.

*Obligation to Respond:* Mandatory. Statutory authority for this information collection is contained in 47 U.S.C. 154(i) and 606 of the Communications Act of 1934, as amended.