UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL WOMEN'S LAW CENTER, *et al.*,

    *Plaintiffs*,

vs.

OFFICE OF MANAGEMENT AND BUDGET, *et al.*,

    *Defendants*.

Civil Action No. 17-2458 (TSC)

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR ORDER**

Plaintiffs, National Women's Law Center and the Labor Council for Latin American Advancement, hereby oppose Defendants' motion for an order determining completion of the Component 2 data collection.

Defendants are required to complete the EEO-1 Component 2 pay data collection as specified by the Court's April 25, 2019 order, ECF No. 71; and that order's requirement of completion will only be satisfied when the filing rate reaches 98.25%—the mean percentage of EEO-1 reports actually submitted over the past four years. However, in their motion, Defendants request that the Court approve their determination that the measure of completeness for the EEO-1 Component 2 collection is a lower figure of 72.7%—the mean percentage of filings submitted *by the initial filing deadline*. But the Court's remedial order was clear that "the EEO-1 Component 2 data collection(s) will not be deemed complete, for the purpose of this Order, until the percentage of EEO-1 reporters that have submitted their required EEO-1 Component 2

reports equals or exceeds the mean percentage of EEO-1 reporters that *actually submitted* EEO-1 reports in each of the past four reporting years." ECF No. 71 (emphasis added). The order is not limited to filers who submitted by a particular date, and on its face requires the use of the percentage of *total* filers for the relevant comparator years.

Defendants' August 30, 2019 interim status report, ECF No. 83, establishes that the number of EEO-1 reporters that "actually submitted" EEO-1 reports in 2014 through 2017, including late filers, was 100% for three of the years and 93% for one of these years. *Id*. at 2, n.5. Under the Court's remedial order, these percentages are the relevant comparators for determining completeness.[1] Using the number of EEO-1 filers who actually submitted EEO-1 reports for 2014-2017 results in a mean of 98.25% of filers, the appropriate measure of completeness. Defendants' request for an order determining completion should therefore be denied until they have completed the collection under the terms of the order.

Further, the use of on-time filers is not a valid measure of completeness for prior reporting years based on EEOC's prior practice of granting an automatic 30-day extension to the EEO-1 deadline for any requesting employer. ECF No. 62 at 12, n.17 (citing earlier version of EEO-1 webpage stating: "[a] one-time 30-DAY extension will be granted after the email [request] has been sent. There is no need to wait for a response from the Employer Data Team."). The EEOC appears to have changed its practice to offer only a two-week automatic extension for the 2018 EEO-1 report. *See* EEOC, *EEOC Opens Calendar Years 2017 and 2018 Pay Data*

---

[1] Plaintiffs informed the government of their view of the correct measure of completeness (98.25%) by email on September 9, 2019, shortly after the August 30, 2019 interim status report in which Defendants identified the response rates for the prior four years of EEO-1 filers and sought clarification of Defendants' view. Defendants did not respond fully to Plaintiffs' questions until October 3, at which point Defendants were already preparing their motion to certify completion and had unilaterally determined to cease filing status reports.

*Collection* (last visited October 22, 2019), https://www.eeoc.gov/employ-ers/eeo1survey/index.cfm. Regardless, even if the Court were inclined to adjust the terms of its remedial order, the appropriate comparators would be, at a minimum, the percentages of reporters who had filed their EEO-1 reports within the prior automatic extension window, *e.g.*, within 30 days after the prior filing deadlines.

Defendants appropriately plan to leave the Component 2 collection open for at least six weeks after September 30, 2019 to accommodate late filers. While Plaintiffs are aware of EEOC's desire to limit the time period of the post-deadline collection, EEOC has not provided the Court with any information regarding what steps it is taking during the current six-week post-September 30 period to maximize reporting compliance. For example, while it has alerted filers that it will continue to accept data during this period on its website, ECF No. 88 at 3, this notice does nothing to encourage delinquent filers to comply, nor has EEOC identified any other steps that it has taken to encourage late submissions in order to maximize its reporting percentage.

This concern is heightened because, via its filing, EEOC has alerted delinquent employers that it seeks to close the collection by a date certain, regardless of whether additional employers provide Component 2 data during the intervening six-week period, thereby creating the same "incentives" for remaining employees not to submit Component 2 data that the Court considered when ruling in Plaintiffs' favor on the question of Paperwork Reduction Act tolling in its April 25, 2019 decision. Apr. 25 Hr'g Tr. at 20. Further, given EEOC's stated uncertainty about the utility of the data, ECF No. 85-1 at 4, and given that a higher percentage of completeness would increase any data set's utility, one would expect EEOC attempt to maximize utility by obtaining the highest possible percentage of Component 2 reporters, and thereby use this data set to evaluate utility for any future collection. Accordingly, even if at some point it

becomes appropriate to close the EEO-1 collection portal because only a few stragglers have not reported, EEOC has not shown that it has reached that point.

Defendants have also informed Plaintiffs by email that EEOC does not intend to file additional 21-day status reports unless the Court so requires (and in fact did not file the most recent report, due October 18, 2019). But the April 25, 2019 order does not contemplate such a unilateral determination to stop filing status reports. ECF No. 71 at 2. In so doing, EEOC would deprive the Court and Plaintiffs of, at a minimum, information regarding the currently ongoing six weeks of EEO-1 data collection post-September 30 to which they have already committed. These reports remain vital for informing the Court and Plaintiffs of the status of the collection and holding EEOC responsible for the quality of its collection efforts. Especially as the collection nears completion (regardless of which measure of completeness the Court deems appropriate), these reports provide essential information, including updated information on the number and percentage of total filers and details regarding preparation for an orderly winddown of the collection. Accordingly, Plaintiffs request that the EEOC be required to continue to submit status reports every 21 days through the date by which the Court determines that the Component 2 collection is complete.

October 22, 2019                           Respectfully submitted,

/s/ *Robin F. Thurston*
Robin F. Thurston (DC Bar No. 1531399)
Javier M. Guzman (DC Bar No. 462679)
Jeffrey B. Dubner (DC Bar No. 1013399)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
rthurston@democracyforward.org
jguzman@democracyforward.org
jdubner@democracyforward.org

Fatima Goss Graves (DC Bar No. 481051)
Emily J. Martin (DC Bar No. 991968)
Sunu Chandy (DC Bar No. 1026045)
Maya Raghu (DC Bar No. 1035558)
National Women's Law Center
11 Dupont Circle, NW, Ste 800
Washington, DC 20036
(202) 588-5180
fgraves@nwlc.org
emartin@nwlc.org
schandy@nwlc.org
mraghu@nwlc.org

*Attorneys for Plaintiffs*