UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL WOMEN'S LAW CENTER, *et al.*,

    Plaintiffs,

        v.

OFFICE OF MANAGEMENT AND BUDGET, *et al.*,

    Defendants.

Civil Action No. 17-cv-2458 (TSC)

**DEFENDANTS' REPLY IN SUPPORT OF SECOND MOTION FOR ORDER DETERMINING COMPLETION OF COMPONENT 2 DATA COLLECTION OR, IN THE ALTERNATIVE, FOR CLARIFICATION**

Defendants the Office of Management and Budget ("OMB") and the Equal Employment Opportunity Commission ("EEOC") have moved the Court for an order determining that the EEO-1 Component 2 data collection is complete pursuant to the Court's April 25, 2019 Order, ECF No. 71 ("April 25 Order"), and October 29, 2019 Order, ECF No. 91 ("October 29 Order"). ECF No. 95 ("Defs.' 2d Mot."). The Court's October 29 Order "recognize[d] the burden the possibility of collecting data from every reporter imposes on the EEOC" but noted that, at that point, "the EEOC ha[d] not even collected the average response rate it calculates for reporters who submitted data within the grace period (rather than at the deadline) in previous years." October 29 Order at 3 (citing Suppl. Decl. of Samuel C. Haffer, ECF No. 92-1 ("2d Haffer Decl."), ¶ 3 (calculating that average response rate to be 84.5%)). EEOC's collection now exceeds the average response rate calculated for reporters who submitted data within the grace period. Specifically, as of December 18, 2019, 85.6% of eligible filers had submitted Component 2 data, Decl. of Samuel C. Haffer, ECF No. 95-1 ("3d Haffer Decl."), ¶ 2, and as of

1

January 9, 2020, 86.1% of eligible filers had submitted Component 2 data, Decl. of Samuel C. Haffer, attached hereto ("4th Haffer Decl."), ¶ 2.  As Defendants explained, because the EEOC has now attained the average response rate it calculated for reporters who submitted data within the grace period in previous years, the Court should deem the collection complete consistent with the April 25 Order.  Defs.' 2d Mot. at 5-6.  In the alternative, Defendants requested clarification as to the response rate at which the Court will deem the collection complete.  *Id.* at 6.

In their response, Plaintiffs altogether elide the Court's discussion of the average response rate that accounts for filers who submitted data within the grace period.  *See generally* ECF No. 96 ("Pls.' Resp.").  This omission is particularly notable, given that Plaintiffs themselves previously proposed consideration of this grace period in determining the relevant response rate.  *See* ECF No. 89 at 3.  Setting aside the question whether the EEOC should have been required to collect information to this point, now that the Commission has completed the collection to the standards previously discussed, the Court should deem the collection complete consistent with the April 25 Order.

The arguments advanced by Plaintiffs do not demonstrate that the collection should remain open.  First, Plaintiffs assert that "the terms of the Court's April 25, 2019 order . . . plainly require that the Component 2 pay data collection only be deemed complete when the filing rate reaches 98.25%—the mean percentage of EEO-1 reports actually submitted over the past four years."  *Id.* at 1.  But the April 25 Order does not specify that the EEOC must attain a response rate of 98.25%.  *See generally* April 25 Order.  Further, Plaintiffs fail to acknowledge that the Court did not accept this argument by Plaintiffs in connection with Defendants' prior Motion for Order.  *See* October 29 Order at 2-3.  If the Court's April 25 Order "plainly require[d]" a response rate of 98.25%, the Court would have specified so, yet it did not.  *Id.*

Plaintiffs next claim that "Defendants do not attempt to explain how their current view of completeness (the mean of filers who submitted within the 30-day grace period for the past four years) is consistent with the April 25, 2019, order." Pls.' Resp. at 1-2. Plaintiffs themselves have provided that explanation, however:

> Further, the use of on-time filers is not a valid measure of completeness for prior reporting years based on EEOC's prior practice of granting an automatic 30-day extension to the EEO-1 deadline for any requesting employer. ECF No. 62 at 12, n.17 (citing earlier version of EEO-1 webpage stating: "[a] one-time 30-DAY extension will be granted after the email [request] has been sent. There is no need to wait for a response from the Employer Data Team."). The EEOC appears to have changed its practice to offer only a two-week automatic extension for the 2018 EEO-1 report. *See* EEOC, *EEOC Opens Calendar Years 2017 and 2018 Pay Data Collection* (last visited October 22, 2019), https://www.eeoc.gov/employ-ers/eeo1survey/index.cfm. Regardless, even if the Court were inclined to adjust the terms of its remedial order, the appropriate comparators would be, at a minimum, the percentages of reporters who had filed their EEO-1 reports within the prior automatic extension window, *e.g.*, within 30 days after the prior filing deadlines.

ECF No. 89 at 2-3 (emphasis added); *see also* October 29 Order at 3. Moreover, Defendants have explained that the response rate that accounts for the 30-day grace period is 84.5%, 2d Haffer Decl. ¶ 3, and the EEOC has now attained a response rate of 86.1%, 4th Haffer Decl. ¶ 2. No further explanation is required under either the April 25 Order or the October 29 Order. *See* April 25 Order at 2; October 29 Order at 2-3.

Finally, Plaintiffs suggest that, regardless of the response rate, the Court should compel the EEOC to keep the collection open "until (at least) January 31, 2020." Pls.' Resp. at 2 (emphasis added). But the April 25 Order requires in relevant part that the EEOC keep the collection open until it reaches a particular rate. *See* April 25 Order at 2 ("[T]he EEO-1 Component 2 data collection(s) will not be deemed complete, for the purpose of this Order, until the percentage of EEO-1 reporters that have submitted their required EEO-1 Component 2 reports equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1

3

reports in each of the past four reporting years."). Again, in the prior words of Plaintiffs, "[t]he order is not limited to filers who submitted by a particular date, and on its face requires the use of the percentage of total filers for the relevant comparator years." ECF No. 89 at 2. Further, whether NORC has completed telephone contacts, Pls.' Resp. at 2, "whether maintaining the collection has reached the point of diminishing returns," *id.*, or whether "there are employers remaining who plan to comply," *id.*, is irrelevant under the Court's Orders, and Plaintiffs offer no basis to require the EEOC to continue to collect Component 2 data in light of these considerations. *See Better Markets, Inc. v. United States Dep't of Justice*, 83 F. Supp. 3d 250, 256 (D.D.C. 2015) ("Choosing whether and how to enforce a statute is the quintessential type of action 'committed to an agency's absolute discretion.'" (quoting *Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1031 (D.C. Cir. 2007))). *Cf. Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) (explaining that "it is the prerogative of the agency to decide in the first instance how best to" proceed on remand, rather than having the court dictate its actions). Additionally, Plaintiffs' request ignores the costs borne by the EEOC associated with keeping the collection open past January 31, 2020. *See* Decl. of Samuel C. Haffer, ECF No. 88-1, ¶ 4; 4th Haffer Decl. ¶ 3.

Nonetheless, based on the Court's October 29 Order, the EEOC awarded to NORC a task order to continue collection of 2017 and 2018 Component 2 data through January 31, 2020. ECF No. 93-1 at 1. Therefore, even in the event the Court grants Defendants' motion, the EEOC is willing to keep the collection open until and including that date.

Accordingly, and for the reasons set forth in Defendants' motion, Defendants respectfully request that the Court issue an order confirming that the Component 2 data collection is complete. In the alternative, Defendants request that the Court clarify the response rate at which

the collection will be deemed complete. Defendants also respectfully request that the Court issue its ruling prior to January 17, 2020, so that (1) the Commission can execute a modification of the task order with NORC by January 31, 2020, if necessary, *see* 4th Haffer Decl. ¶ 4; and (2) the parties can appropriately update the D.C. Circuit in advance of the oral argument scheduled for January 24, 2020, *see* Clerk's Order, No. 19-5130 (D.C. Cir. Nov. 13, 2019).

| | |
|---|---|
| Dated:  January 9, 2020 | Respectfully submitted, |

JOSEPH H. HUNT
Assistant Attorney General

JENNIFER D. RICKETTS
Branch Director

CARLOTTA WELLS
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
Cal. Bar No. 267183

*Counsel for Defendants*

5