UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*,<br><br>   Plaintiffs,<br><br>        v.<br><br>OFFICE OF MANAGEMENT AND BUDGET, *et al.*,<br><br>   Defendants. | Civil Action No. 17-cv-2458 (TSC) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

DISCUSSION .................................................................................................................................... 6

CONCLUSION ................................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Alfa Int'l Seafood, Inc. v. Ross*,
    320 F. Supp. 3d 184 (D.D.C. 2018) ................................................................... *passim*

*Alvarez v. Smith*,
    558 U.S. 87 (2009) .............................................................................................. 7, 10

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997) ..................................................................................................... 6

*Cal. Power Agency v. Nuclear Reg. Comm'n*,
    393 F.3d 223 (D.C. Cir. 2004) .................................................................................. 7

*Clarke v. Office of Fed. Hous. Enter. Oversight*,
    171 F. App'x 864 (D.C. Cir. 2005) ............................................................................ 9

*Clarke v. United States*,
    915 F.2d 699 (D.C. Cir. 1990) ................................................................................ 11

*Humane Soc'y of U.S. v. Kempthorne*,
    527 F.3d 181 (D.C. Cir. 2008) ................................................................. 7, 9, 10, 12

*Liljeberg v. Health Servs. Acquisition Corp.*,
    486 U.S. 847 (1988) ................................................................................................... 6

*M.M.V. v. Barr*,
    No. CV 19-2773 (ABJ), 2020 WL 2119744 (D.D.C. May 1, 2020) ...................... 12

*Presidential Advisory Comm'n on Election Integrity*,
    878 F.3d 371 (D.C. Cir. 2017) .............................................................................. 3, 4

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
    601 F.3d 1096 (10th Cir. 2010) ................................................................................. 6

*Rubin v. The Islamic Republic of Iran*,
    563 F. Supp. 2d 38 (D.D.C. 2008) ...................................................................... 6, 12

*Sands v. NLRB*,
    825 F.3d 778 (D.C. Cir. 2016) ............................................................................ 7, 11

*Spirit of the Sage Council v. Norton*,
    411 F.3d 225 (D.C. Cir. 2005) ................................................................................ 10

*St. Lawrence Seaway Pilots' Ass'n v. Collins*, No. CIV. A.,
 03-1204 (RBW), 2005 WL 1138916 (D.D.C. May 13, 2005) .............................................. 6, 12

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
 513 U.S. 18 (1994) ................................................................................................... 6, 7, 11, 12

*United States v. Garde*,
 848 F.2d 1307 (D.C. Cir. 1988) ............................................................................................ 7, 11

*United States v. Munsingwear, Inc.*,
 340 U.S. 36 (1950) ..................................................................................................................... 6

*Valero Terrestrial Corp. v. Paige*,
 211 F.3d 112 (4th Cir. 2000) .................................................................................................... 6

**Rules**

Federal Rule of Civil Procedure 60(b) ............................................................................................ 5

Federal Rule of Civil Procedure 60(b)(6) ....................................................................................... 6

## INTRODUCTION

Defendants the Office of Management and Budget ("OMB"), Russell T. Vought, in his official capacity as Director of OMB, Paul Ray, in his official capacity as Administrator of the Office of Information and Regulatory Affairs, the U.S. Equal Employment Opportunity Commission ("EEOC"), and Janet Dhillon, in her official capacity as Chair of the EEOC, respectfully move the Court to vacate the Court's opinion and Order dated March 4, 2019, Dkt. Nos. 45-46, and Order dated April 25, 2019, Dkt. No. 71.

The Court directed EEOC to require certain employers to submit pay information by September 30, 2019, and it mandated that EEOC continue collecting pay information until the Commission received at least the same response rate that it had in prior collections of different and much less extensive information—a response rate that Plaintiffs asserted was in excess of 98%. The government appealed on the ground that Plaintiffs lacked standing to institute this suit in the first place and that, in any event, the Court's remedial authority should be limited to setting aside the allegedly unlawful action of OMB that Plaintiffs challenged.

During the pendency of the appeal, EEOC collected pay information as required by the Court. Although EEOC received a strong response from employers, by the time the D.C. Circuit heard oral argument on appeal, EEOC had not reached anywhere close to the 98.25% response rate that Plaintiffs insisted this Court's Order required. Plaintiffs then changed their position during oral argument before the D.C. Circuit, suggesting for the first time that an 85% response rate would satisfy this Court's Order. Because employers had already exceeded that response rate, the parties thereafter asked this Court to determine that the collection was complete. On February 10, 2020, the Court ruled that the collection was complete and that the government had fully discharged its obligations under the Court's Orders.

The parties subsequently agreed that the case is now moot. In general, when a civil case becomes moot while an appeal is pending, the appropriate course is to vacate the district court's judgment, unless mootness results from the voluntary action of the party seeking appeal, as when the parties agree to settle a case. Here, EEOC's conduct in collecting pay information was mandated by the Court's Order and thus not voluntary in any relevant sense, and the mootness did not ultimately arise from EEOC's or OMB's conduct. Because the case is now moot, the government has been denied the opportunity to obtain review of the Court's rulings. Accordingly, the government respectfully asks the Court to vacate its opinion and Orders.

## BACKGROUND

Plaintiffs challenged the lawfulness of a decision by OMB to review and stay its approval under the Paperwork Reduction Act of EEOC's proposal to start collecting a new type of information from employers—pay information, referred to as "Component 2" data. On March 4, 2019, the Court granted summary judgment for Plaintiffs and vacated OMB's stay. Dkt. Nos. 45-46. In a separate order entered on April 25, 2019, the Court directed EEOC to complete the collection of pay information from employers by September 30, 2019. Dkt. No. 71.[1] The Court stated that it would not view the collection as complete "until the percentage of EEO-1 reporters that have submitted their required EEO-1 Component 2 reports equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports in each of the past four reporting years," when EEOC's collection had not included pay information and had instead involved certain basic demographic information about employees, referred to as "Component 1"

---

[1] The Court's Order gave EEOC the option of collecting 2017 and 2018 pay information in a single collection due September 30, 2019, or collecting 2018 and 2019 pay information on separate collection schedules, with the 2018 pay information due September 30, 2019, and the 2019 information due later. Dkt. No. 71 at 2. EEOC conducted a single collection consistent with the first of these options.

2

data. *Id.* at 2. The Court did not identify the required percentage or provide a methodology for ascertaining the past response rate, and it did not specify whether the relevant benchmark was the average prior response rate as of the filing deadline or the rate ultimately attained through all late filings that EEOC eventually received. *Id.* In addition, the Court determined that OMB's approval of the pay data collection was tolled for the duration of OMB's stay and thus that, "barring further interruptions," OMB's approval would expire no later than April 5, 2021. *Id.* at 1.

The government appealed on two grounds. Dkt. No. 72. First, the government urged that Plaintiffs "cannot ground organizational injury on a non-existent interest" in accessing information, *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017). Appellant Brief at 16-26, No. 19-5130 (D.C. Cir. Aug. 19, 2019). Second, the government argued that, in any event, the Court erred by directing EEOC to conduct the collection of information and requiring it to hold open the collection until a particular response rate was achieved, rather than setting aside OMB's allegedly unlawful action. *Id.* at 26-34.

During the pendency of the appeal, EEOC conducted the collection as ordered by the Court, expending considerable effort and resources to do so. *See, e.g.*, Dkt. No. 95 (detailing steps taken by EEOC). EEOC's ability to complete the collection was ultimately out of its control, both because it depended on the actions of employers subject to the collection requirement and because it depended on this Court's assessment of what response rate would be deemed acceptable. *Id.* Accordingly, EEOC believed that it would likely be required to continue its collection efforts well into the future unless the government succeeded on appeal.

After the September 30 deadline for the collection passed, EEOC filed a motion asking the Court to determine that the collection was complete based on the Commission's having

3

received pay information from more than 75% of covered employers, and noting the considerable cost of collecting further information. Dkt. No. 88; *see* Dkt. No. 83-1 at 1. EEOC indicated that it would continue to collect Component 2 data for at least a six-week period after the September 30 deadline, in a manner consistent with the recent practice relating to the Component 1 collection. Dkt. No. 90 at 2. Plaintiffs opposed the motion, urging the Court to require EEOC to continue collecting information from employers until the Commission attained a 98.25% response rate. Dkt. No. 89 at 2-3.

On October 29, 2019, the Court denied the government's motion and directed EEOC to continue collecting pay information notwithstanding that the Commission had by that time received responses from over 81% of employers. Dkt. No. 91 at 2. Although the Court did not specify the required response rate, the Court explained that "the proper measure of completeness is not based on the number of reports submitted at the filing deadline" in past years but had to take into account "EEOC's practice of permitting reports to be filed late in previous collection[s]" of Component 1 information. *Id.*[2] The Court noted that the average rate of response for prior collections of Component 1 information was 84.5% as of the end of that six-week late-filing period, but it did not hold that an 84.5% response rate would be sufficient to terminate the collection. *Id*. at 3 (citing 2d Haffer Decl. ¶ 3, Dkt. No. 90-1). Instead, the Court directed EEOC to continue "to take all steps necessary to complete the EEO-1 Component 2 data collection for calendar years 2017 and 2018" by January 31, 2020, without specifying whether it would deem the collection complete on that date. Dkt. No. 91 at 3.

---

[2] No statute or regulation requires EEOC to allow late responses. Further, EEOC's policy—established in connection with the collection of 2018 Component 1 information—limits late responses to a window ending six weeks after the deadline for submission. *See* Dkt. No. 90-1 at 2.

4

On December 19, 2019, having completed a six-week late-filing period and attained a response rate of 85.6%, the government again asked the Court to determine that the collection was complete. Dkt. No. 95 at 6. Plaintiffs again opposed, urging that the Court's Orders "plainly require that the Component 2 pay data collection only be deemed complete when the filing rate reaches 98.25%," and asking the Court to deny EEOC's "attempt to close the Component 2 pay data collection prematurely." Dkt. No. 96, at 1.

Before the Court ruled on that motion, the D.C. Circuit held oral argument on the government's appeal, during which Plaintiffs suggested for the first time that it would soon become "clear that there are diminishing returns to keeping the collection open, [and] everyone will agree it's an appropriate time to close it, . . . so we will likely not get to 98%; that's not a measure that we would ultimately insist upon." Oral Arg. Rec. 41:03-14. On February 7, 2020, the parties filed a joint status report informing this Court that EEOC had received responses from more than 89% of covered employers and asking the Court to deem the collection complete. Dkt. No. 101 at 1. On February 10, 2020, the Court entered an Order stating that "the EEO-1 Component 2 data collection is complete" and that "Defendants have no remaining obligations pursuant to the Court's April 25, 2019 Order or the Court's March 4, 2019 Order granting Plaintiffs' motion for summary judgment." Dkt. No. 102, at 2.

The parties subsequently agreed that the case is moot, but disagreed whether the Court's opinion and Orders should be vacated as a result. Mot. to Govern Future Proceedings, No. 19-5130 (D.C. Cir. Apr. 13, 2020). The D.C. Circuit dismissed the appeal as moot and remanded to this Court "to consider the [government's] request for vacatur as a motion for relief from an order pursuant to Federal Rule of Civil Procedure 60(b)." Order, No. 19-5130 (D.C. Cir. June 9, 2020).

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 60(b)(6), a court may grant relief from an order or judgment for "any . . . reason that justifies relief." This rule "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) (internal quotation marks omitted). Courts have repeatedly recognized mootness as one such reason. *E.g.*, *Alfa Int'l Seafood, Inc. v. Ross*, 320 F. Supp. 3d 184, 187 (D.D.C. 2018); *Rubin v. The Islamic Republic of Iran*, 563 F. Supp. 2d 38, 40 (D.D.C. 2008); *St. Lawrence Seaway Pilots' Ass'n v. Collins*, No. CIV. A. 03-1204 (RBW), 2005 WL 1138916, at *1-2 (D.D.C. May 13, 2005). When a civil case becomes moot while an appeal is pending, the appropriate course is generally to vacate the district court's judgment. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950). Vacatur is warranted in these circumstances because it "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *Id.* at 40; *accord Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997).

Courts have made an exception to the general rule supporting vacatur when "the party seeking relief from the judgment below caused the mootness by voluntary action." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25 (1994).[3] Thus, when appellate review is prevented "by the deliberate action of the losing party before the District Court, . . . the prevailing party . . . ought to be left in the same position as if no appeal had been taken." *United*

---

[3] Although *Munsingwear* and *Bancorp* concerned vacatur by appellate courts, the same reasoning guides a district court's consideration of a Rule 60(b)(6) motion. *Alfa Int'l Seafood*, 320 F. Supp. 3d at 187; *see also Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1129 n.20 (10th Cir. 2010); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 121 (4th Cir. 2000).

*States v. Garde*, 848 F.2d 1307, 1310 (D.C. Cir. 1988) (per curiam) (quotation marks omitted). The exception is meant to prevent a litigant from "attempting to manipulate the courts to obtain the relief it was not able to win in the judicial system." *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 188 (D.C. Cir. 2008). Settlement is the classic example of voluntary action that triggers this exception to the vacatur rule. "Where mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Bancorp*, 513 U.S. at 25. By contrast, "[a] party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." *Id.*; *see also Sands v. NLRB*, 825 F.3d 778, 785 (D.C. Cir. 2016) (explaining that the court considers "notions of fairness" and "the public interest," and that vacatur is typically warranted "'when mootness results from unilateral action of the party who prevailed below' or from circumstances beyond the control of the parties" (quoting *Alvarez v. Smith*, 558 U.S. 87, 98 (2009) (Stevens, J., concurring in part and dissenting in part)); *N. Cal. Power Agency v. Nuclear Reg. Comm'n*, 393 F.3d 223, 225 (D.C. Cir. 2004) ("[I]f the party who lost below did not cause the case to become moot, that is, if happenstance or the actions of the prevailing party ended the controversy, vacatur remains the standard form of relief.").

  The equities here favor vacating the Court's opinion and Orders. First, the government was "not responsible for rendering [its] appeal unreviewable." *Alfa Int'l Seafood*, 320 F. Supp. 3d at 190. Although EEOC complied with this Court's Order, such compliance—which cost EEOC over $7 million, Dkt. No. 54-1, at 10-11; Dkt. No. 88-1, at 2—was required, not voluntary in any relevant sense, and it was certainly not designed to avoid appellate review. EEOC's actions were in any event not what rendered the case moot. Rather, the case became moot when

third-party employers responded at a rate that Plaintiffs and the Court ultimately deemed acceptable. And the government's (unsuccessful, until Plaintiffs' change of position) efforts to persuade the Court that EEOC had fully complied with the injunction were designed not to evade appellate review but rather, like the appeal to the D.C. Circuit, to relieve EEOC of the burden of complying with an injunction that it viewed as both improper and costly.

Not only was EEOC's compliance with this Court's Orders not intended to moot the appeal, EEOC could not have known that employers would respond at a rate that this Court would ultimately deem sufficient, nor that employers would in fact respond at a sufficiently high rate to satisfy this Court before the conclusion of EEOC's appeal. Indeed, given the various factors at play, EEOC simply could not have known that its appeal would become moot. Notably, the size and novelty of the pay-information collection made the rate of response difficult to predict. Prior to the Court's Orders, EEOC had never before collected Component 2 information, and that new information was far more extensive than the Component 1 information that employers were historically required to submit. In particular, whereas EEOC's Component 1 collection requires employers to submit demographic data in 140 data fields, its Component 2 collection required the submission of pay data in 3,360 data fields. *See* Dkt. No. 54-1 ¶ 20. EEOC thus reasonably anticipated that, even with appropriate outreach to the regulated community, the response rate for this new collection might be substantially lower than for past collections. But, as noted above, EEOC did not know what the employers' response rate would ultimately be, particularly in light of its efforts taken to comply with the injunction. EEOC also did not know precisely how this Court would assess the average response rate for prior collections—at the time of the filing deadline, after a six-week late-filing period, or at some other point. All that EEOC knew was that this Court had directed that the collection remain open

until the same response rate was achieved—a time that was both unknowable ex ante and dependent upon the actions of third parties.

EEOC's conduct throughout the appeal evidences that it neither designed nor expected to moot this case by complying with the Court's injunction. *Cf. Clarke v. Office of Fed. Hous. Enter. Oversight*, 171 F. App'x 864, 865 (D.C. Cir. 2005) (per curiam) (unpublished order declining to vacate a preliminary injunction when actions taken pending appeal had been assured to moot appeal). To the contrary, EEOC repeatedly demonstrated its lack of clarity as to how many employers would need to submit information for the Court to deem the collection complete, and until oral argument before the D.C. Circuit, Plaintiffs maintained that this Court's Orders "plainly require[d] that the Component 2 pay data collection only be deemed complete when the filing rate reache[d] 98.25%," Dkt. No. 96, at 1; *see* Dkt. No. 89, at 2-3. This Court held open the possibility that it might require the collection to continue until that time, *see* Dkt. No. 90-1, at 2, but the government anticipated that it would be able to attain such a high rate of response only after an extended period of time, if ever. Although more than 70% of employers had responded by the September 30 deadline, the response rate slowed meaningfully after that point, *see, e.g.*, Dkt. No. 92-1 at 2, corroborating the government's assumptions about the timing and feasibility of attaining a near-perfect rate of response.

"[T]he concern underlying *Bancorp* that parties may seek to 'manipulate the judicial system by rolling the dice in the district court and then washing away any unfavorable outcome through use of settlement and vacatur' is not present here." *Alfa Int'l Seafood*, 320 F. Supp. 3d at 190 (quoting *Humane Soc'y*, 527 F.3d at 186). EEOC's conduct in complying with the Court's Orders is not the type of voluntary or deliberate action that implicates the exception to the vacatur rule, and OMB did not do anything that affected the D.C. Circuit's ability to resolve

9

the appeal. The Court's April 25 Order compelled EEOC to take specific actions to collect pay information on a particular timeline, and the Commission did what the Court mandated. At the time EEOC undertook that conduct, moreover, it was far from clear that doing so would moot the appeal; the Court's Order appeared to require the Commission to make collection efforts far into the future—potentially until April 2021, when the Court held OMB's approval for the Component 2 information collection would expire, *see* Dkt. No. 71, at 2. Until Plaintiffs' change in position on the response rate, the government reasonably believed that the D.C. Circuit would adjudicate its appeal before this Court deemed the collection complete. Accordingly, "there is not present here the kind of 'voluntary forfeiture' of a legal remedy that led the Court in *Bancorp* to find that considerations of 'fairness' and 'equity' tilted against vacatur." *Alvarez*, 558 U.S. at 97.

Courts generally "interpret[] *Bancorp* narrowly" and apply the exception only to prevent manipulation of the judicial process. *Humane Soc'y*, 527 F.3d at 185; *see Alfa Int'l Seafood*, 320 F. Supp. 3d at 190-91 (where proposed intervenors' "appeal was mooted for reasons outside their control[,] . . . they cannot be accused of attempting to game the system"). Complying with an injunction while pressing an appeal in the ordinary course is the *opposite* of manipulation of the judicial process. It is thus no surprise that the D.C. Circuit has previously vacated a district court opinion after the issues on appeal became moot as a result of a federal agency's compliance with the district court's order. *See Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005). The same approach is appropriate here.

Moreover, this case does not implicate the D.C. Circuit's admonishment that it does "not wish to encourage litigants who are dissatisfied with the decision of the trial court to have them wiped from the books by merely filing an appeal, then complying with the order or judgment

10

below and petitioning for a vacatur of the adverse trial court decision." *Garde*, 848 F.2d at 1311 (quotation marks omitted); *see Clarke v. United States*, 915 F.2d 699, 707 (D.C. Cir. 1990) (en banc) (discussing *Garde*). That is not what transpired here, and *Garde* involved very different factual circumstances.

In *Garde*, the Nuclear Regulatory Commission ("NRC") sought to enforce a subpoena against an individual in order to obtain information regarding safety problems at a nuclear facility, including the identities of the whistleblowers who provided the information. 848 F.2d at 1308. The district court denied the government's petition to enforce the subpoena and advised NRC to pursue alternative means of obtaining the information. While its appeal was pending, NRC could have chosen to take no further action to obtain the information it sought, given that the district court had not compelled it to do anything. Instead, NRC adopted safeguards that persuaded the defendant to disclose the information at issue, except for the whistleblowers' identities. *Id.* at 1309. The government then determined that the information it obtained had satisfied its request. The case thus became moot because of measures the government voluntarily took in order to reach a satisfactory arrangement with the defendant, not measures required by the district court. By contrast, EEOC's collection of the information was mandated by the Court's Orders, and it was far from clear that conducting the collection would cause the case to become moot on appeal. In these circumstances, it would be contrary to "equitable tradition," *Bancorp*, 513 U.S. at 25, to leave the Court's opinion and Orders on the books, given that the government lacked a full opportunity for review.

Additionally, "the public interest would be served by vacatur" of the Court's opinion and Orders, "as doing so 'clear[s] the path for future relitigation of the issues.'" *Alfa Int'l Seafood*, 320 F. Supp. 3d at 191 (quoting *Sands*, 825 F.3d at 786). In future challenges regarding

11

informational injury and relief beyond setting aside allegedly unlawful agency action, the government "will not have to contend with an adverse decision that [it was] unable to contest on appeal through no fault of [its] own." *Id.*; *see also Rubin*, 563 F. Supp. 2d at 41 (granting government's motion to vacate order and memorandum opinion, and rejecting plaintiffs' argument that "there is a powerful public interest in the continued validity of that Opinion"); *cf. St. Lawrence Seaway Pilots' Ass'n*, 2005 WL 1138916, at *2 ("While this Court agrees with the defendant that the development of the case law in this area is important, . . . this simply is insufficient reason to deny the plaintiffs' motion in light of the potential that the issue addressed by this Court may find its way back to a court again in future litigation involving these same parties." (citation omitted)).

Finally, in remanding, the D.C. Circuit indicated that this Court should assess "whether the government's failure to seek a stay pending appeal or take similarly protective measures amounts to an omission that 'voluntarily forfeited' any 'claim to the equitable remedy of vacatur[.]'" Order, No. 19-5130 (D.C. Cir. June 9, 2020) (quoting *Bancorp*, 513 U.S. at 25). It does not. A stay is an extraordinary remedy that is seldom granted. *See M.M.V. v. Barr*, No. CV 19-2773 (ABJ), 2020 WL 2119744, at *1 (D.D.C. May 1, 2020). And it would be inequitable to treat the government's decision not to consume the resources of the parties or the courts with a stay motion as a voluntary forfeiture of its right to vacatur when it did not know, and could not have known, that the case would become moot pending appeal. *See Bancorp*, 513 U.S. at 26 (explaining that "voluntary forfeiture of review constitutes a failure of equity"). To reiterate, courts have "interpreted *Bancorp* narrowly." *Humane Soc'y*, 527 F.3d at 185.

## CONCLUSION

For the foregoing reasons, the Court's opinion and Orders should be vacated.

Dated: September 9, 2020               Respectfully submitted,

                                       JEFFREY BOSSERT CLARK
                                       Acting Assistant Attorney General

                                       JENNIFER D. RICKETTS
                                       Branch Director

                                       CARLOTTA WELLS
                                       Assistant Branch Director

                                       <u>/s/Stuart J. Robinson</u>
                                       STUART J. ROBINSON
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       450 Golden Gate Ave.
                                       San Francisco, CA 94102
                                       Tel: (415) 436-6635
                                       Fax: (415) 436-6632
                                       Email: stuart.j.robinson@usdoj.gov
                                       Cal. Bar No. 267183

                                       *Counsel for Defendants*