**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL WOMEN'S LAW CENTER, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 17-2458 (TSC) |
| OFFICE OF MANAGEMENT AND BUDGET, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................... ii

Introduction ...................................................................................................................................1

Background ....................................................................................................................................2

Argument .......................................................................................................................................7

    A.  The government mooted the appeal through its voluntary actions .........................................8

    B.  Leaving this Court's opinion and orders in place will not have any unfair preclusive effect on the government ...............................................................................................................13

    C.  The value of the Court's analysis also counsels against vacatur ..........................................13

Conclusion ...................................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alfa Int'l Seafood, Inc. v. Ross*,
  320 F. Supp. 3d 184 (D.D.C. 2018) ..................................................................................7

*Clarke v. Off. of Fed. Hous. Enter. Oversight*,
  171 F. Appx. 864 (D.C. Cir. 2005) ..................................................................................11

*Clarke v. United States*,
  915 F.2d 699 (D.C. Cir. 1990) .....................................................................................9, 13

*Comm. on Oversight & Gov't Reform, U.S. H.R. v. Sessions*,
  344 F. Supp. 3d 1 (D.D.C. 2018) ....................................................................................15

*Humane Soc'y of U.S. v. Kempthorne*,
  527 F.3d 181 (D.C. Cir. 2008) ..........................................................................................9

*Jewish War Veterans of the U.S.A., Inc. v. Mattis*,
  266 F. Supp. 3d 248 (D.D.C. 2017) ...........................................................................13, 14

*Mahoney v. Babbitt*,
  113 F.3d 219 (D.C. Cir. 1997) ............................................................................11, 13, 14

*Marino v. Nat'l Oceanic & Atmospheric Admin.*,
  No. 18-CV-2750-DLF, 2020 WL 1479515 (D.D.C. 2020) .............................................14

*Nat'l Women's L. Ctr. v. OMB*,
  No. 19-5130 (D.C. Cir. 2020) ..................................................................................1, 7, 10

*Planned Parenthood of Wis., Inc. v. Azar*,
  942 F.3d 512 (D.C. Cir. 2019) ..........................................................................................8

*Spirit of the Sage Council v. Norton*,
  411 F.3d 225 (D.C. Cir. 2005) ..........................................................................................9

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
  513 U.S. 18 (1994) .................................................................................................. *passim*

*United States v. Garde*,
  848 F.2d 1307 (D.C. Cir. 1988) ..............................................................................8, 9, 12

*United States v. Munsingwear, Inc.*,
  340 U.S. 36 (1950) ............................................................................................................7

**Other Authorities**

81 Fed. Reg. 45,479 (July 14, 2016) .................................................................................................12

Federal Rule of Civil Procedure 60(b)(6) ..........................................................................................7

# INTRODUCTION

Plaintiffs, National Women's Law Center and the Labor Council for Latin American Advancement, hereby oppose Defendants' Motion for Relief pursuant to Federal Rule of Civil Procedure 60(b).

As the D.C. Circuit reiterated in its remand order, the government is seeking an extraordinary remedy in its request for vacatur. Order, *Nat'l Women's L. Ctr. v. OMB*, No. 19-5130 (D.C. Cir. June 9, 2020). Vacatur of an underlying decision when the appeal becomes moot before resolution is a question of equity; it is not an automatic right. *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). As the party seeking relief from this Court's summary judgment decision and the order implementing that judgment, it is the government's burden to demonstrate "equitable entitlement to the extraordinary remedy of vacatur." *Id*. The government has not done so. Indeed, it "voluntarily forfeited" any "claim to th[is] equitable remedy." *Id*. at 25.

First, the government's appeal became moot as a foreseeable result of its own voluntary actions—namely not seeking a stay or expedited consideration of its appeal. The case also became moot based on the government's voluntary decision to collect two years of the missing Component 2 pay data simultaneously, rather than over the course of two years permitted by this Court—in 2019 and 2020. Notably, the government had opined that collecting the missing two years of data sequentially would be more likely to be accurate and yet, it decided to conduct the faster simultaneous collection. Said plainly, if the government had decided to collect pay data from employers in 2019 and 2020, this case would *not* now be moot. As such, because the government has not been "frustrated by the vagaries of circumstance," but rather affirmatively chose to collect two years of data in 2019, and then failed to act to exercise control over the

1

timing of its appeal, it is not entitled to vacatur. *Bancorp*, 513 U.S. at 25. Further, leaving the orders in place has no preclusive or other prejudicial effect on the government, but it does retain useful persuasive precedent on complex and novel questions of law, and so is in the public interest.

## BACKGROUND

In 2016, the Office of Management and Budget ("OMB") unlawfully stayed an information collection that the Equal Employment Opportunity Commission ("EEOC") planned to conduct to obtain employee pay data aggregated by race, gender, ethnicity, and job category (the Component 2 data). Mem. Op. at 32, Dkt. No. 45. Plaintiffs successfully challenged that stay. This Court granted summary judgment in their favor on March 4, 2019, ordering that OMB's prior approval be in effect. *Id*. at 40-41. In its subsequent appeal, the government did not dispute that the challenged stay was unlawful.

As the Court is well aware, when the EEOC did not open the data collection as expected in March 2019, the Court conducted a series of hearings and received briefing from the parties on the scope of the EEOC's obligations following the summary judgment decision. Thereafter, on April 25, 2019, the Court entered an order setting forth in detail EEOC's obligations pursuant to the summary judgment order. Dkt. No. 71. The Court explained its reasoning in an oral ruling on the same day. Tr. Oral Ruling Hr'g, Dkt. No. 70. As the Court stated, the remedial order was necessary because "the Government has not demonstrated a commitment to efficiently collect the Component 2 pay data, and over the course of several months has affirmatively left both the Court and Plaintiffs to labor under the misimpression about when and how the Government could collect this information." *Id*. at 10-11.

Among other requirements, the Court ordered the EEOC to "take all steps necessary" to complete the Component 2 collection for the 2019 collection cycle by September 30, 2019. Dkt. No. 71 at 1. It also confirmed that its summary judgment order required collection of the two years of Component 2 data not collected because of the unlawful stay. *Id*. The Court gave the EEOC the option to collect those missing years simultaneously, during the 2019 collection cycle, which the EEOC had argued would be more difficult and less likely to produce high quality data, or sequentially, during the 2019 and 2020 collection cycles, which the EEOC had agreed would eliminate its alleged data reliability concerns. Dkt. No. 70 at 12-13, Tr. Hr'g Submissions at 54-55, Dkt. No. 66.

Given the EEOC's recalcitrance, and in light of the EEOC's assertion that it believed itself powerless to seek data from employers that did not comply by the scheduled end of the collection, Dkt. No. 66 at 71, 88, the Court also determined that a measure of completeness was required, Dkt. No. 70 at 17. Based on Plaintiffs' suggestion, and without a contrary proposal from the government, the Court ordered that the data collection would be deemed complete when "the percentage of EEO-1 reporters that have submitted their required EEO-1 Component 2 reports equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports [for the longstanding Component 1 of the EEO-1 collection] in each of the past four reporting years." Dkt. No. 71 at 2.

The Court also determined that the expiration of the original Paperwork Reduction Act ("PRA") approval of the information collection (September 30, 2019) was equitably tolled for the period of the unlawful stay. Dkt. No. 70 at 14-15. The Court explained that tolling the PRA approval for the period of the stay was consistent with the language and purpose of the PRA, was

3

appropriate as a matter of equity, and was required to avoid incentivizing the government and employers to "further slow-roll" the Component 2 data collection. *Id*. at 16.

The government filed its notice of appeal of the summary judgment order and the subsequent remedial order on May 3, 2019, the last possible date to do so under Federal Rule of Appellate Procedure 4(a)(1)(B) as to the summary judgment order. Notice of Appeal, Dkt. No 72. It did not move for a stay of this Court's orders pending appeal or seek expedition of the appeal.

The EEOC began to implement the Component 2 data collection in the summer of 2019. Although the EEOC was permitted to conduct the collection across a multi-year period ending in September 2020, and although the EEOC had previously asserted that that approach would be more reliable and less challenging than collecting all data in a single year, the agency instead chose to collect all the missing data in the 2019 collection period. Def. EEOC's Report at 2, Dkt. No. 73-1.

On August 30, 2019, the EEOC provided a report setting forth its response rates for Component 1 of the information collection over the prior four years, as was necessary to determine "the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports in each of the past four reporting years," Dkt. No. 71 at 2, pursuant to the Court's order. Interim Status Report, Dkt. No. 83-1. Omitting one year that had an "artificially low" response rate, the EEOC determined that the mean percentage of EEO-1 reporters that submitted EEO-1 reports by the filing deadline each year was 72.7%. *Id*. at 2. In a footnote, however, the EEOC acknowledged that figure was only the mean for submissions provided by the filing deadline, and the actual mean response rate for *total* submissions, including submissions received after the deadline, was 98.3%. *See id*. at 2 n.5.

On October 8, 2019, the EEOC first sought leave to close the Component 2 collection. Defs.' Mot. Order, Dkt. No. 88. By that point, approximately 76% of filers had submitted Component 2 reports. *Id*. at 3. Plaintiffs opposed the request for closure, on the ground that the measure of completeness—"the mean percentage of EEO-1 reporters that *actually submitted* EEO-1 reports in each of the past four reporting years"—had not been met. Dkt. No. 71 at 2. (emphasis added). Plaintiffs argued that this Court's remedial order called for calculating the measure of completeness based on the number of reports actually submitted in the comparator years, not limited to the ones that came in before the filing deadline. Pls.' Resp. Defs.' Mot. Order at 2, Dkt. No. 89. Plaintiffs also pointed out that the proportion of on-time filers was not a valid measure of completeness, because the EEOC had always previously permitted an automatic 30-day extension to the deadline. They argued that, "if the Court were inclined to adjust the terms of its remedial order, the appropriate comparators would be, at a minimum, the percentages of reporters who had filed their EEO-1 reports within the prior automatic extension window, *e.g.*, within 30 days after the prior filing deadlines." *Id*. at 3.

In late October, this Court required the government to keep the collection open, declining to amend its prior order, but it did not adopt the 98.3% completion measure proposed by Plaintiffs. As it explained:

> The court recognizes the burden the possibility of collecting data from every reporter imposes on the EEOC. But at this stage, the EEOC has not even collected the average response rate it calculates for reporters who submitted data within the grace period (rather than at the deadline) in previous years. . . . [T]he EEOC must continue to take all steps necessary to complete the EEO-1 Component 2 data collection for calendar years 2017 and 2018 by January 31, 2020.

Order at 3, Dkt. No. 91.

In mid-December 2019, the EEOC again sought to close the collection, because by that point it had received Component 2 reports from approximately 85% of filers, the mean of prior

filers submitting reports during the automatic extension period. Defs.' Second Mot. Order at 5, Dkt. No. 95. Plaintiffs responded that the Court's prior schedule (extending the collection through January 31, 2020) should remain in place and suggested that, even if the Court were inclined to accept a benchmark lower than Plaintiffs' preferred 98.3%, there was good reason to keep the collection open at least through the month of January. *See* Pls.' Resp. Defs.' Second Mot. Order at 2-3, Dkt. No. 96 (explaining that continuing the collection through January would give the contractor time to contact certain remaining filers as it had planned and provide filers who intended to file in January based on the district court's earlier order time to do so). Plaintiffs proposed continuing the collection through the month of January, and then providing a status report as previously ordered by the Court. *Id*. at 3.

The court of appeals heard oral argument on January 24, 2020. Consistent with their suggestion in their January 2, 2020 filing with this Court, during argument Plaintiffs agreed that continuing the collection past the end of January would likely result in "diminishing returns." *Id*. at 2. On February 7, in their joint status report to this Court, the parties agreed that the Component 2 collection could be deemed complete, as signaled by Plaintiffs in their prior filing and at oral argument. Dkt. No. 101. On February 10, 2020, the Court ordered that the Component 2 data collection was complete and that, with the exception of one final status report (which the government has since filed), Defendants had no remaining obligations under the Court's prior orders. Order, Dkt. No. 102.

Thereafter, the government and Plaintiffs agreed that the appeal was moot. The government moved to dismiss the appeal and vacate this Court's orders before the court of appeals. The court of appeals ordered that the appeal be dismissed as moot and further:

> [T]hat the case be remanded to the district court with instructions to consider the appellants' request for vacatur as a motion for relief from an order pursuant to Federal Rule of Civil Procedure 60(b). *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994). The district court is well positioned to assess whether the government has carried its burden to show "equitable entitlement to the extraordinary remedy of vacatur," *id*. at 26, including whether the government's failure to seek a stay pending appeal or take similarly protective measures amounts to an omission that "voluntarily forfeited" any "claim to the equitable remedy of vacatur," *id*. at 25.

Order, *Nat'l Women's L. Ctr.*, (June 9, 2020).

## ARGUMENT

The government requests vacatur of the Court's summary judgment decision, Dkt. Nos. 45, 46, and its April 25, 2019 remedial order, Dkt. No. 71, under Federal Rule of Civil Procedure 60(b)(6). This Rule permits a district court to grant relief from an order or judgment for "any . . . reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Mootness upon appeal may provide such a reason. *Alfa Int'l Seafood, Inc. v. Ross*, 320 F. Supp. 3d 184, 187 (D.D.C. 2018). In reviewing such a request for relief, courts typically apply the standards articulated by *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18 (1994), and subsequent cases. As held by the Supreme Court and as the court of appeals reminded the parties in this case, this is a form of extraordinary relief. *Bancorp*, 513 U.S. at 26.

Under these standards, the government has not met its burden to obtain the equitable remedy of vacatur. It was not "prevented through happenstance" or through "circumstances unattributable to any of the parties" from obtaining a decision on the merits of its appeal prior to the completion of the Component 2 data collection. *Bancorp*, 513 U.S. at 23 (quoting *Munsingwear*, 340 U.S. at 40, and *Karcher v. May*, 484 U.S. 72, 82, 83 (1987)).

Instead, the government's voluntary actions rendered the appeal moot. When "the appellant complie[s] with the judgment, [and thereby moots the appeal] . . . the trial court's

7

determinations ought to have the same conclusive effects that they would have if the appellant had not appealed at all." *United States v. Garde*, 848 F.2d 1307, 1310 n.7 (D.C. Cir. 1988) (quoting 1B Moore's Federal Practice ¶ 0.416[6], at 543–44 (2d ed. 1984)). The government exercised control over the timing of the Component 2 collection relative to the timing of the appeal—choosing the briefest possible period of time in which to complete the collection, while declining to seek a stay pending appeal or to request expedition of the appeal.

Denying the vacatur request is also consistent with the public interest. As the Supreme Court recognized, leaving the underlying decision in place makes valuable legal analysis available to the legal community, *Bancorp*, 513 U.S. at 26, and here, would have no prejudicial or collateral effects.

Accordingly, Plaintiffs respectfully request that the Court deny the government's motion.

### A.     The government mooted the appeal through its voluntary actions.

"The decision to vacate reflects equity practice, so vacating is inappropriate when the appellant 'caused the mootness by voluntary action.'" *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 519 (D.C. Cir. 2019) (quoting *Bancorp*, 513 U.S. at 24-25). The government has taken several voluntary actions since this Court's summary judgment decision and subsequent remedial order that make vacatur inequitable, namely its decisions about how to conduct the appeal and its decisions about how and when to collect the missing pay data.

Just as in *United States v. Garde*, the government complied with the district court's orders, mooting the case by its own action. In *Garde*, the government sought to enforce a subpoena, but was rejected by the district court, which "advised the [government] that it must pursue less intrusive alternatives to obtain the information sought." 848 F.2d at 1308 (citation omitted). Thereafter the government modified its records request and was able to obtain the

8

records voluntarily. *Id*. After determining that the appeal was moot, the court rejected the government's request for vacatur of the district court opinion, explaining:

> We do not wish to encourage litigants who are dissatisfied with the decision of the trial court "to have them wiped from the books" by merely filing an appeal, then complying with the order or judgment below and petitioning for a vacatur of the adverse trial court decision.

*Id.* at 1311 (quoting *Ringsby Truck Lines, Inc. v. W. Conf. of Teamsters*, 686 F.2d 720, 721 (9th Cir. 1982)).

While in *Garde* the government was not subject to an injunction (in contrast to the instant case), its modification of its subpoena was the direct result of court order. *Cf. Clarke v. United States*, 915 F.2d 699, 707 (D.C. Cir. 1990) (describing *Garde* as a case "where a government agency appealed a district court decision, and then complied with its requirements and applied for its vacatur"). Furthermore, the fact that the appellant took the action to moot the appeal (just as here) was of prime importance—"[t]he distinction between litigants who are and are not responsible for the circumstances that render the case moot is important." *Garde*, 848 F.2d at 1311; *cf. Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 188 (D.C. Cir. 2008) ("[B]ecause the party seeking appellate relief is not the party responsible for mooting the case, the orderly operation of the appellate system is not being frustrated." (quoting *Wyoming v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1213 (10th Cir. 2005))).[1]

Similarly, in this case, the government's voluntary actions all but guaranteed that the collection would be completed before the appeal could be resolved. Defendants exercised their discretion under the Court's remedial order to complete both years of the Component 2 data

---

[1] *Spirit of the Sage Council v. Norton*, 411 F.3d 225, 230 (D.C. Cir. 2005), cited by the government, does not change this conclusion because that opinion does not explain why the court decided to vacate the underlying decision, much less how it viewed the facts of that case in the light of precedent set forth by *Bancorp* and *Garde*.

9

collection by September 30, 2019. Dtk. No. 71 at 1.[2] Having made this choice, the government should have reasonably expected the Component 2 collection to last until September 30, 2019 (the scheduled date for closure) or for a period of months, not years, thereafter.[3] Yet, briefing in the appeal was not even scheduled to conclude by then. Order, *Nat'l Women's L. Ctr.*, (July 8, 2019). Even if the deadline for Component 2 were extended by a period of months (as indeed happened, despite the government's opposition), considering the time required to complete briefing, set the case for oral argument, and for the Court to issue its decision, there was no reasonable expectation that the appeal could be resolved with an ordinary schedule before the voluntarily compressed Component 2 collection concluded. Despite the reality of the timing of the appeal vis-a-vis completion of the data collection, the government took no action to expedite the case or to seek a stay of the order pending appeal. This decision "voluntarily forfeit[ed]" its opportunity for appellate review. *Bancorp*, 513 U.S. at 26.

The fact that seeking expedition or a stay required the government to act outside the ordinary schedule of appellate litigation does not change that conclusion. Indeed, the D.C. Circuit has refused vacatur when a party failed to apply to the Supreme Court for an emergency stay of an injunction, even though only *one day* elapsed between the challenged order and the

---

[2] Based on the government's testimony that collecting both years of data in the 2019 collection period would be difficult and would increase the likelihood of unreliable data, this Court allowed collection of the two years of data sequentially (one collection in 2019 and one in the 2020 reporting period). Dkt. No. 70 at 13-14, Dkt. No. 66 at 54-55. The government agreed that this timing would eliminate its stated concerns about simultaneous collection. Dkt. No. 70 at 13. Nevertheless, the EEOC decided to collect both years of missing data simultaneously, hastening the completion of the data collection.

[3] The government claims that the Component 2 collection could have extended as far as April 2021. *See* Mem. Supp. Defs.' Mot. Relief at 10, Dkt. No. 106-1. On the contrary, the Court selected that date as the expiration of the tolling period because it accounted for the number of days that the unlawful stay lasted, not because it represented an estimated time for completion of the collection. Dkt. No. 71 at 1.

event that mooted the case (the passage of Inauguration Day). *Mahoney v. Babbitt*, 113 F.3d 219, 222 (D.C. Cir. 1997). In *Mahoney*, the court explained that this one-day lapse meant that the losing party "accepted the effects of our emergency order" without pursuing its appeal, making the mootness the result of its own inaction. *Id*. at 221. The principle that a losing party must act expeditiously prior to the expiration of the event or act at issue applies with full force here. *Id*.; *see also Clarke v. Off. of Fed. Hous. Enter. Oversight*, 171 F. Appx. 864, 865 (D.C. Cir. 2005) (per curiam) (unpublished order declining to vacate a preliminary injunction when "the appellants, rather than seeking a stay, complied with the court order" thereby mooting the appeal).

The government's emphasis on Plaintiffs' eventual agreement that the collection should be deemed complete, far from supporting vacatur, underscores *Bancorp*'s applicability. After repeated unilateral efforts by the government to conclude the case, in February 2020, the parties ultimately "agree[d] that the EEOC may wind down its collection of Component 2 data on the timetable of its choosing." Dkt. No. 101 at 1. This is the type of joint resolution found to make vacatur inappropriate in *Bancorp*. As the Supreme Court explained:

> That the parties are jointly responsible for settling may in some sense put them on even footing, but petitioner's case needs more than that. Respondent won below. It is petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur. Petitioner's voluntary forfeiture of review constitutes a failure of equity that makes the burden decisive, whatever respondent's share in the mooting of the case might have been.

*Bancorp*, 513 U.S. at 26. That Plaintiffs ultimately stopped opposing what the government sought—the termination of the government's obligations under this Court's orders prior to resolution of the appeal—does not change the fact that the government chose to push for an early resolution of its obligations in this Court rather than pressing for expeditious resolution of its

11

appeal. If anything, the fact that the government sought to wind up the collection even earlier shows that it could reasonably have expected the matter to be mooted even earlier, yet it took no action to expedite its appeal. That is precisely the kind of "voluntary forfeiture" that the D.C. Circuit remand order contemplates could undermine any claim to the equitable remedy of vacatur.

Similarly, the government's argument that it did not have control over the completion of the information collection because third-party companies had a role in submitting their EEO-1 reports does not support its request for vacatur. So too, mootness in *Garde* depended on the opposing party's agreement to provide the records that the government sought. *Garde*, 848 F.2d at 1309. This third-party involvement did not in any way impact the court's determination that the government's actions had mooted the case, thereby precluding equitable vacatur.

The government's arguments that it could not have foreseen that its appeal would be mooted before its anticipated resolution are not persuasive. First, the EEOC assured this Court that it would complete the Component 2 collection by September 30, 2019, arguing that the Court need not consider any provision for completion beyond that date. Dkt. No. 70 at 18. Given that argument, it could not have been surprised that the case went moot several months after that. Further, the argument that the collection timing was unknowable because the Component 2 collection was new ignores the EEOC's earlier precise burden estimates associated with reporting Component 2 data. *See* Revision of the Employer Information Report (EEO-1), 81 Fed. Reg. 45,479, 45,494 (July 14, 2016). And the government's reliance on the increase in data fields fares no better, as the Court already rejected the supposed increase in burden in its un-appealed decision on the merits. *See* Dkt. No. 45 at 38 ("The government's position rests on hyper-technical formatting changes that have no real consequences for employers.").

Nor did this Court's adoption of a standard to measure completeness make it likely that Component 2 would remain open for a prolonged period after September 30, 2019. In particular, when the EEOC first moved to close the collection, shortly after the September 30, 2019 deadline, this Court suggested that obtaining 85% completion (the mean reporting rate including the grace period in prior years) could be adequate, a small increase from the 81% of reporters that had filed by that point. *See* Dkt. No. 91.

The government took multiple voluntary actions that made virtually certain that the pay data collection would conclude before its appeal could be resolved, and accordingly forfeited any claim to equitable vacatur.

### B. Leaving this Court's opinion and orders in place will not have any unfair preclusive effect on the government.

The opinion and orders at issue should also be left in place because "the prime reason for vacatur—to protect the losing party from the collateral effects of a judgment that it might have been able to have overturned but for the mooting event"—does not apply in this case. *Clarke*, 915 F.2d at 707. The government does not even assert that this Court's orders could have any collateral effects on it. That cuts against vacatur. *See Mahoney*, 113 F.3d at 224; *Jewish War Veterans of the U.S.A., Inc. v. Mattis*, 266 F. Supp. 3d 248, 253 (D.D.C. 2017) ("[C]ourts 'vacate unappealable decisions[ ] to prevent them from having a preclusive effect. [Courts] do not vacate opinions[ ] to prevent them from having a precedential effect.'" (quoting *In re Smith v. State Farm Mut. Auto. Ins. Co.*, 964 F.2d 636, 638 (7th Cir. 1992)).

### C. The value of the Court's analysis also counsels against vacatur.

The Supreme Court has cautioned that, in considering vacatur, courts should also consider the public interest of retaining a potentially useful judicial precedent. "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are

13

not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Bancorp*, 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)). Indeed, "there is no particular reason to assume that a decision, later mooted, is any less valid as precedent than any other opinion of a court. 'So long as the court believed that it was deciding a live controversy, its opinion was forged and tested in the same crucible as all opinions.'" *Mahoney*, 113 F.3d at 222 (quoting 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3533.10 (2d ed. 1984)). Here, the value of the Court's opinion and orders as persuasive precedent reinforces the conclusion that vacatur is not warranted.

The decisions at issue provide thoughtful analysis of several complex or novel issues of law. Among these are whether Article III standing exists when a plaintiff establishes actual injury consistent with *Havens Realty* requirements for organizational standing, but the injury resulted from the deprivation of information not required to be disclosed by statute, Dkt. No. 45 at 12-18, an issue that the government has recently disputed in this and other cases. *Cf. Marino v. Nat'l Oceanic & Atmospheric Admin.*, No. 18-CV-2750-DLF, 2020 WL 1479515, at *5 (D.D.C. Mar. 26, 2020). The Court applied the Administrative Procedure Act's arbitrary and capricious standard of review in a unique circumstance, and it interpreted and applied OMB's regulations providing for a stay of a previously approved information collection, Dkt. No. 45 at 30-34, and analyzed when equitable tolling applied to such a stay, Dkt. No. 70 at 14-17,—issues never previously addressed by a court so far as Plaintiffs have been able to determine. *Cf. Jewish War Veterans*, 266 F. Supp. 3d at 253 ("The value of clear judicial opinions, especially in areas that are not frequently litigated, has led the D.C. Circuit to state that . . . 'the establishment of

precedent argues against vacatur, not in favor of it.'" (quoting *Mahoney*, 113 F.3d at 223)); *Comm. on Oversight & Gov't Reform, U.S. H.R. v. Sessions*, 344 F. Supp. 3d 1, 13 (D.D.C. 2018) (when the issues addressed "fall within the 'rarely-litigated' category, . . . that militates against vacatur.").

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Motion for Relief Pursuant to Federal Rule of Civil Procedure 60(b).

October 9, 2020

Respectfully submitted,

/s/ *Robin F. Thurston*
Robin F. Thurston (DC Bar No. 1531399)
Jeffrey B. Dubner (DC Bar No. 1013399)
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
rthurston@democracyforward.org
jdubner@democracyforward.org

Fatima Goss Graves (DC Bar No. 481051)
Emily J. Martin (DC Bar No. 991968)
Sunu Chandy (DC Bar No. 1026045)
Maya Raghu (DC Bar No. 1035558)
National Women's Law Center
11 Dupont Circle, NW, Ste 800
Washington, DC 20036
(202) 588-5180
fgraves@nwlc.org
emartin@nwlc.org
schandy@nwlc.org
mraghu@nwlc.org

*Attorneys for Plaintiffs*

15