**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

NATIONAL WOMEN'S LAW CENTER, *et al.*,

      Plaintiffs,

            v.

OFFICE OF MANAGEMENT AND BUDGET,
*et al.*,

      Defendants.

---

Civil Action No. 17-cv-2458 (TSC)

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RELIEF**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b)**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

DISCUSSION ................................................................................................................. 1

A.      The Government Did Not Cause Mootness By Any Voluntary Action. ............................ 1

B.      The Public Interest Would Be Served By Vacatur. ............................................................. 8

CONCLUSION ................................................................................................................. 8

# TABLE OF AUTHORITIES

## Cases

*Alfa Int'l Seafood, Inc. v. Ross*,
   320 F. Supp. 3d 184, 187 (D.D.C. 2018) ............................................................................. 1, 8

*Clarke v. Office of Fed. Hous. Enter. Oversight*,
   171 F. App'x 864 (D.C. Cir. 2005) ........................................................................................ 3

*Clarke v. United States*,
   915 F.2d 699 (D.C. Cir. 1990) ............................................................................................... 2

*Humane Soc'y of U.S. v. Kempthorne*,
   527 F.3d 181 (D.C. Cir. 2008) ......................................................................................... 1, 6, 7

*Mahoney v. Babbitt*,
   113 F.3d 219 (D.C. Cir. 1997) ............................................................................................... 3

*McClendon v. City of Albuquerque*,
   100 F.3d 863 (10th Cir. 1996) ............................................................................................... 7

*M.M.V. v. Barr*,
   No. CIV. A. 19-2773 (ABJ), 2020 WL 2119744 (D.D.C. May 1, 2020) ................................ 3

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
   601 F.3d 1096 (10th Cir. 2010) ............................................................................................. 7

*Rubin v. The Islamic Republic of Iran*,
   563 F. Supp. 2d 38 (D.D.C. 2008) ......................................................................................... 8

*Spirit of the Sage Council v. Norton*,
   411 F.3d 225 (D.C. Cir. 2005) ......................................................................................... 2, 3, 8

*St. Lawrence Seaway Pilots' Ass'n v. Collins*,
   No. CIV. A. 03-1204 (RBW), 2005 WL 1138916 (D.D.C. May 13, 2005) .............................. 8

*United States v. Garde*,
   848 F.2d 1307 (D.C. Cir. 1988) ........................................................................................... 2, 3

*United States v. Munsingwear, Inc.*,
   340 U.S. 36 (1950)............................................................................................................... 1, 3

*U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,
   513 U.S. 18 (1994)........................................................................................................... 1, 3, 6

## Rules

Fed. R. Civ. P. 60(b) .............................................................................................................. 1, 8

## INTRODUCTION

Vacatur is the presumptive remedy when a case becomes moot on appeal as a result of circumstances other than the voluntary action of the party seeking review. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39-40 (1950). A narrow exception exists to prevent manipulation of the judicial process. *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 188 (D.C. Cir. 2008). Here, Defendants plainly were not seeking to manipulate that process by taking actions mandated by the Court's Orders while their appeal was pending. Indeed, it was far from clear when the appeal was filed that taking such actions would render the appeal moot. Plaintiffs long insisted that the required collection of information should not be deemed complete until EEOC received a near-perfect rate of response from employers—a rate Defendants reasonably expected would take a year or more to reach, if such a response rate were even attainable. Ultimately, the case became moot only after Plaintiffs changed their view regarding the required response rate and this Court agreed. Under the circumstances, vacatur of the Court's opinion and Orders is warranted pursuant to Federal Rule of Civil Procedure 60(b).

## DISCUSSION

### A.    The Government Did Not Cause Mootness By Any Voluntary Action.

When a case becomes moot on appeal, the general rule is that vacatur of the district court's judgment is appropriate, *Munsingwear*, 340 U.S. at 39-40, unless the party seeking relief caused the mootness through its voluntary and deliberate actions, *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-25 (1994). *See also, e.g.*, *Alfa Int'l Seafood, Inc. v. Ross*, 320 F. Supp. 3d 184, 187, 190 (D.D.C. 2018). Plaintiffs do not dispute the general rule favoring vacatur but instead urge that EEOC's collection of pay information as required by the Court's

Orders should be viewed as the type of voluntary action that falls within the exception. There is no merit to that contention.

In opposing Defendants' motion, Plaintiffs first err in suggesting that vacatur is unwarranted any time a case becomes moot as a result of compliance with a court order. Pls.' Opp. to Defs.' Mot. at 8, Dkt. No. 107 ("Opp."). That position cannot be reconciled with the D.C. Circuit's decision to grant vacatur in *Spirit of the Sage Council v. Norton*, in which the appeal became moot "because the [government] ha[d] fully complied with the district court's orders." 411 F.3d 225, 227 (D.C. Cir. 2005). This is the only published decision cited by the parties that is on all fours with this case, and its outcome should govern the Court's decision. *Sage Council* confirms that when a party complies with a court order, its conduct is not voluntary in the relevant sense, and vacatur is the appropriate result. Plaintiffs address *Sage Council* only in a footnote, and even there do not explain why this case should be resolved differently; they instead appear to urge that *Sage Council* was wrongly decided. Opp. at 9 n.1.

The D.C. Circuit's decision in *United States v. Garde*, 848 F.2d 1307, 1310 (D.C. Cir. 1988) (per curiam), does not compel a contrary result. As Plaintiffs acknowledge, "in *Garde* the government was not subject to an injunction (in contrast to the instant case)," and the court's order did not require any government action. Opp. at 9. Nevertheless, the parties reached a compromise pursuant to which the government would establish certain safeguards and obtain much of the information it originally sought. 848 F.2d at 1309. In light of these circumstances, the *Garde* court's statement that it did "not wish to encourage litigants who are dissatisfied with the decision of the trial court 'to have them wiped from the books' by merely filing an appeal, then complying with the order or judgment below and petitioning for a vacatur of the adverse trial court decision," *id*. at 1311 (citation omitted); *see Clarke v. United States*, 915 F.2d 699,

707 (D.C. Cir. 1990) (en banc) (discussing *Garde*), is best read as reaffirming that vacatur may be unavailable if a party notices an appeal with no intention of seeing it through to a final decision.  It also anticipates the rule later adopted in *Bancorp*, 513 U.S. at 24-25, that vacatur is not appropriate when mootness results from the parties' decision to settle.  In any event, the language is dicta, and the D.C. Circuit's later grant of vacatur in *Sage Council* confirms that, even if the *Garde* language could be read to address circumstances like this case (unlike those of *Garde* itself), it at most makes the government's compliance one among many factors to be considered in granting vacatur.

Plaintiffs also err in suggesting that vacatur is unwarranted whenever a party declines to seek a stay or expedite the proceedings.  Opp. at 10.  A stay is an extraordinary remedy that is seldom granted, *see M.M.V. v. Barr*, No. CIV. A. 19-2773 (ABJ), 2020 WL 2119744, at *1 (D.D.C. May 1, 2020), and Plaintiffs cite no authority suggesting that the equitable principles espoused in *Munsingwear* and *Bancorp* require parties to request such relief in every case or risk leaving an order on the books if the appeal later becomes moot.  *Mahoney v. Babbitt*, 113 F.3d 219, 222 (D.C. Cir. 1997), on which Plaintiffs principally rely, Opp. at 10-11, announced no such rule.  That case concerned displays during the Inaugural Parade, and the D.C. Circuit issued its emergency order the day before the scheduled parade.  As the court explained, the case became moot because "the losing parties . . . elected not to seek further relief" and instead "accepted the effects of" the court's order.  *Id*. at 221.  The court's denial of vacatur was based on the fact that the losing party "declined to pursue its appeal." *Id*. at 222.  And although it was clear that the case would become moot unless the losing party sought immediate review, the party did not do so.  The court held that vacatur was unwarranted in those circumstances, though it described the question as "a close one." *Id*.; *see Clarke v. Office of Fed. Hous. Enter.*

3

*Oversight*, 171 F. App'x 864, 865 (D.C. Cir. 2005) (per curiam) (denying vacatur when actions taken pending appeal had been assured to moot the appeal).

Here, by contrast, Defendants seek vacatur of a decision that became moot after an appeal in the D.C. Circuit had been fully briefed and argued (and then only because Plaintiffs, not Defendants, changed their position). Plaintiffs' contention that it was "all but guaranteed that the collection would be completed before the appeal could be resolved[,]" Opp. at 9, ignores the facts of the case and Plaintiffs' own prior view of the collection. The Court's Order stated that the collection would "not be deemed complete" until the percentage of employers responding "equals or exceeds the mean percentage of EEO-1 reporters that actually submitted EEO-1 reports in each of the past four reporting years." Dkt. No. 71, at 2. The Court also tolled the expiration date for the collection until April 5, 2021, expressly contemplating that the collection could extend until that time. *Id.* at 1.

Defendants appealed eight days after the Order issued, *see* Dkt. No. 72, at which point there was substantial uncertainty regarding both the rate at which employers would respond and the percentage response the Court would ultimately require. It is plain that Defendants were appealing not to wipe this Court's opinion from the books after the case became moot, but rather to obtain relief from the Court's Orders and the substantial monetary costs that EEOC continued to incur up until February 2020 when the case became moot.

Plaintiffs downplay the uncertainty associated with the length of time it would have taken for EEOC to attain the type of response rate for the collection that Plaintiffs had urged was required. Up until their presentation at oral argument in the D.C. Circuit, Plaintiffs had taken the position that the collection would not be complete until 98.25% of employers submitted Component 2 pay data. Dkt. No. 89, at 2-3; Dkt. No. 96, at 1. Indeed, as recently as January 2,

2020, Plaintiffs had asked this Court to require that the collection continue even though EEOC had received responses from more than 85% of covered employers, arguing that the Court's Orders "plainly require that the Component 2 pay data collection only be deemed complete when the filing rate reaches 98.25%," and asking the Court to deny EEOC's "attempt to close the Component 2 pay data collection prematurely." Dkt. No. 96, at 1.

Had EEOC been forced to continue the collection, it is unclear when the Commission would have attained the 98.25% response rate on which Plaintiffs long insisted. Even with collections of Component 1 information, with which employers have decades of experience, it had typically taken EEOC almost a year to attain a near-perfect rate of response. Dkt. No. 83-1, at 2 n.5. Not only was the Component 2 collection unfamiliar to employers, the volume of data required by the collection exceeded by an order of magnitude the volume of data required for Component 1 collections. Decl. of Samuel C. Haffer ¶ 20, Dkt. No. 54-1. Accordingly, at the time Defendants filed their appeal in May 2019, it was reasonable to expect that it would take far longer than a year for employers to comply with the Component 2 collection to the degree that Plaintiffs urged was required. Indeed, the diminishing returns that EEOC saw during the months following the September 30, 2019 submission deadline confirm that it likely would have taken a very long time to achieve that rate of response. *See* Dkt. No. 94-1, at 1, and Dkt. No. 100-1, at 2 (showing that between December 13, 2019, and January 24, 2020, the response rate increased by just under 2%).

Plaintiffs' assertion that "the Court already rejected the supposed increase in burden in its un-appealed decision on the merits[,]" Opp. at 12, conflates two unrelated points. There is no dispute that whereas EEOC's Component 1 collection requires employers to submit demographic data in 140 data fields, the Component 2 collection required the submission of pay data in 3,360

data fields.  Haffer Decl. ¶ 20.  Rather than acknowledge this fact, Plaintiffs refer to the data-format changes that were effected between the time the Component 2 collection was first announced and when OMB made its stay decision, which the Court deemed insufficient to justify OMB's conclusion that circumstances had materially changed.  *See* Opp. at 12 (citing Dkt. No. 45, at 38).  But those changes relate only to the particular format in which information was to be submitted, Dkt. No. 45, at 31, not to the volume of information required, and the Court's finding in no way supports Plaintiffs' extraordinary suggestion that the collection of Component 2 information was insubstantial.

Plaintiffs seek to characterize their change of position regarding when the collection should be viewed as complete—along with Defendants' adherence to their own position—as "the type of joint resolution found to make vacatur inappropriate in *Bancorp*."  Opp. at 11.  Had Defendants changed their position so as to moot the case, Plaintiffs' argument would have greater force.  But here, it was Plaintiffs' altered view of when the collection was sufficiently complete that caused the case to become moot.  The characterization of Plaintiffs' ultimate acquiescence in Defendants' longstanding position as a "joint resolution" both mischaracterizes the parties' conduct and elides the rule that the D.C. Circuit "interpret[s] *Bancorp* narrowly." *Humane Soc'y*, 527 F.3d at 185.  Just as defendants cannot erase an adverse decision by appealing and then settling a case, plaintiffs should not be permitted to abandon their injunction, moot the case, and preserve a decision that the other side was trying to appeal.

There is likewise no merit to Plaintiffs' contention that Defendants' conduct should be viewed as voluntary because EEOC collected two years of data (2017 and 2018) at the same time—something the Court's Order expressly contemplated, Dkt. No. 71, at 1—rather than having employers go through two separate collection cycles (for 2018 and 2019 data).  *See* Opp.

at 9-10.  The Court's Order mandated that EEOC collect pay data from two years, and the
Commission did so.  Dkt. No. 71, at 1.  As Plaintiffs note, Opp. at 10 n.2, EEOC had expressed
concern that collecting 2017 and 2018 data simultaneously could undermine data quality and
explained that a single collection of 2018 information would be a better option, Tr. of April 16
Hrg. at 54.  While EEOC stated in response to the Court's questions that collecting 2018 and
2019 data in separate collections could potentially mitigate these data-quality concerns, the Court
did not ask about other potential downsides of conducting two separate collections, such as
increased costs.  *Id.* at 55-56.  Plaintiffs' suggestion that EEOC should have collected 2018 and
2019 data in separate collections to ensure that the appeal would not be rendered moot—rather
than basing the decision on which years of data to collect on other relevant considerations—is
without merit.

      EEOC's decision to collect two years of data simultaneously in no way transforms its
compliance with the Court's Orders into a voluntary action, much less one designed to
"manipulate the courts."  *Humane Soc'y*, 527 F.3d at 188.  Indeed, Plaintiffs' suggestion that the
government should have dragged its feet in conducting the required collections is contrary to the
general principles of equity that govern this analysis.  Notably, the Tenth Circuit has found
vacatur appropriate when a case became moot on appeal as a result of "responsible governmental
conduct to be commended," reasoning that a party should not be penalized for making decisions
consistent with the public interest.  *McClendon v. City of Albuquerque*, 100 F.3d 863, 865-66
(10th Cir. 1996); *see Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096,
1131 (10th Cir. 2010).

**B.      The Public Interest Would Be Served By Vacatur.**

Plaintiffs also contend that vacatur is unwarranted because the Court's Orders will not have preclusive effect in future litigation.  Opp. at 13.  Defendants are heartened that Plaintiffs have disclaimed such reliance on these Orders.  But the way to ensure that the Orders will not have preclusive effect is to vacate them.  Plaintiffs cite no case for the proposition that the absence of preclusive effect is a reason not to vacate orders that have become moot through happenstance rather than the voluntary conduct of the party seeking review.  Instead, the general rule holds that vacatur is warranted in such circumstances.  *See, e.g.*, *Sage Council*, 411 F.3d at 230.  Although Plaintiffs urge that "[t]he value of the Court's analysis also counsels against vacatur," Opp. at 13, the Court's opinion is not binding precedent, and as such its vacatur would not slow the development of the law.  Plaintiffs also offer no response to the decisions previously cited by Defendants, *see* Dkt. No. 106-1, at 11-12, which confirm that "retaining a potentially useful judicial precedent," Opp. at 13, is not a basis to deny relief under Rule 60(b), *see Alfa Int'l Seafood*, 320 F. Supp. 3d at 191; *Rubin v. The Islamic Republic of Iran*, 563 F. Supp. 2d 38, 41 (D.D.C. 2008); *cf. St. Lawrence Seaway Pilots' Ass'n v. Collins*, No. CIV. A. 03-1204 (RBW), 2005 WL 1138916, at *2 (D.D.C. May 13, 2005).

## CONCLUSION

For the foregoing reasons, the Court's opinion and Orders should be vacated.

Dated:  October 29, 2020                                    Respectfully submitted,

                                                                        JEFFREY BOSSERT CLARK
                                                                        Acting Assistant Attorney General

                                                                        JENNIFER D. RICKETTS
                                                                        Branch Director

CARLOTTA WELLS
Assistant Branch Director

*/s/Stuart J. Robinson*
STUART J. ROBINSON
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave.
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov
Cal. Bar No. 267183

*Counsel for Defendants*